UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOSEPH COOPER<br>plaintiff | § | |
| | § | |
| | § | |
| v. | § | CASE NO. _____ |
| | § | |
| BRODERICK STEVEN "STEVE" HARVEY<br>defendant | § | |
| | § | |

COMPLAINT AND JURY DEMAND

Joseph Cooper complains of Broderick Steven "Steve" Harvey and demands a trial by jury.

1. This is a civil action seeking damages, declaratory judgment, 28 U.S.C. §§ 2201, 2202, and injunctive relief, 17 U.S.C. § 502, for copyright infringement under the copyright laws of the United States, 17 U.S.C. § 101 *et seq.*, and for breach of contract and tortious interference under Texas law.

***Jurisdiction and Venue***

2. This Court has jurisdiction under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1338(a) (copyright).

3. Cooper is a resident of Dallas County, Texas.

4. Harvey is a citizen either of Chicago, Illinois or Atlanta, Georgia. The amount in controversy is in excess of $75,000. This Court has diversity jurisdiction under 28 U.S.C. § 1332.

5. Venue is proper in this District as a substantial part of the events or omissions giving rise to the claims occurred in this District, 28 U.S.C. § 1391, and Harvey may be found in this District. 28 U.S.C. § 1400.

***Parties***

6. Joseph Cooper resides in this District and Division. Cooper does business as Close Up Video Productions in Dallas, Texas, and did so in 1993.

7. Broderick Steven "Steve" Harvey rents a residence in Chicago, Illinois and owns a house in Atlanta, Georgia. Harvey's address in Atlanta, Georgia is 8330 Jett Ferry Road, Atlanta, GA 30350. Harvey's address in Chicago, Illinois is 401 N. Wabash Ave., Chicago, Illinois 60611.

***Facts***

8. In 1993 and for a period of time thereafter, Harvey did business in Dallas County as Steve Harvey Comedy Club under an assumed name filing with the Dallas County Clerk dated August 19, 1992.

9. Harvey does business in Dallas, Texas, through, among other things, The Steve Harvey Morning Show (KRNB-FM 105.7), Steve Harvey Talk Show (KXAS), Family Feud (WFAA, KDFA), and Steve Harvey Mentoring National Camp in Dallas, Steve Harvey Radio Network, Inc., and sells products in Dallas, Texas, through the Steve Harvey Collection, SH Young Kings by Steve Harvey, and Steve Harvey Celebrity Edition.

10. In 1998, Harvey filed a lawsuit in the 193rd Judicial District Court, Dallas County, Texas, against Cooper. In the State Court lawsuit, Harvey identified himself as an individual located in Collin County, Texas.

11. Harvey owns real property in Denton County, Texas.

12. Harvey opened the Steve Harvey's Comedy Club in 1993. Harvey performed "stand-up" comedy at Steve's Harvey Comedy Club.

13. On March 30, 1993, Cooper, doing business as Close Up Video Productions, and Harvey, doing business as Steve Harvey Comedy Club, entered into a written contract styled the Video Contract pursuant to which Cooper agreed to

> Produce video tape (s) of promotional material from the facility including exterior shots, audience, stage performances and graphics with official logos. Tape will also include names, dates and music soundtracks. Tapes will be taped for continuous play before, during and after show performances. Video footage from KKDA Apollo Night, buffet and lobby area mingling with Mr. Harvey & guest. Business networking footage included.

14. The Video Contract further provided:

> 1. It is understood this studio [Cooper] is the exclusive official videographer, and others taking videos will be permitted only at our discretion.
>
> 3. The studio [Cooper] reserves the right to use the original tape and/or reproductions for display, publication or other purposes. Original videotapes remain the exclusive property of the studio.

15. In addition, Cooper provided advertising and marketing services on behalf of Harvey and incurred debts on behalf of Harvey that Harvey never paid.

16. Harvey was successful doing business as the Steve Harvey Comedy Club.

17. Cooper fully complied with his obligations under the Video Contract. All conditions precedent to Cooper's recovery under the Video Contract have been satisfied.

18. Cooper produced approximately 120 hours of video under the Video Contract.

19. Harvey knew that Cooper intended to use his videos of Harvey's performances to create videos that would be sold at retail. Harvey did not disagree with Cooper's plans, but requested that Cooper delay in selling videos using Harvey's performances.

20. Cooper understood that the release of the videos might interfere with Harvey's plans for his career at that time. Cooper decided to delay his Harvey video project because the videos would become more valuable if Harvey became a bigger celebrity.

21. Harvey starred in the 1994 ABC television show "Me and the Boys." Harvey starred in the WB show "The Steve Harvey Show" from 1996 to 2002. Harvey continued stand up comedy and was one of the Kings of Comedy featured in the movie "The Kings of Comedy" released in 2000.

22. On August 2, 2012, Harvey performed for the last time as a stand up comedian.

23. As reported in en.mediamass.net/people/steve-harvey/highest-paid.html, *People with Money* reported on November 9, 2014, that Harvey is the highest paid actor in the World.

24. The approximately 120 hours contain Harvey doing comedy in a manner that contrasts with his present image as Harvey was younger at the time and not as much as a public figure. Cooper has removed and plans to remove additional materials

that could only serve to create scandal for Harvey rather than showing Harvey's earlier comedic style.

25. In 1998, Cooper advised Harvey that Cooper intended to distribute the Harvey videos.

26. In October 1998, Cooper and Harvey orally agreed that Harvey would purchase the videos for $5,000,000. Harvey breached the agreement.On December 16, 1998, Harvey filed a lawsuit against Cooper, *Steve Harvey v. Joe Cooper, d/b/a Close Up Video Production,* Cause No. DV98-9501, 193rd Judicial District Court, Dallas County, Texas. Cooper filed a counterclaim.

27. Cooper obtained temporary restraining order against Harvey in the State Court lawsuit on June 28, 1999. The temporary restraining order was extended by agreement on July 16, 1999, and August 12, 1999.The August 12, 2009, agreed temporary restraining order entered restraining Harvey, his agents, employees, attorneys or assigns from the date of the agreed temporary restraining order until a hearing was held on the temporary injunction or until further agreement of the parties provided:

> Contacting any of Movant Joe Cooper's business associates or anyone with whom Movant has entered into negotiations with regarding the sale, production, distribution, advertising, or licensing of certain video tape which is the subject matter of the above referenced suit for the purpose of threatening them with legal action, any other negative action in the event they do business with Movant or for the purpose of intimidating them into refraining from doing business with Movant regarding certain video tape of Mr. Steve Harvey, Respondent, which is the subject matter of the above referenced suit, and from disparaging Movant or any of his employees, agents, assigns, companies or attorneys to any third parties.

28. Harvey violated the Agreed Temporary Restraining Order, but Cooper decided not to bring the violations to the Court.

29. During the time the State Court lawsuit was pending, Cooper and Harvey entered into an agreement regarding the Harvey videos. Harvey failed to perform under this agreement.

30. The State Court lawsuit was non-suited without prejudice with costs taxed against Harvey on October 13, 2000.

31. Cooper has sought to obtain financial benefits from his rights under the Video Contract. Harvey has stated that Cooper has threatened Harvey to distribute the videos. Cooper has sought to work with Harvey so that Harvey can purchase the videos with the alternative being Cooper distributing and selling the videos without Harvey's involvement.

32. Harvey embarked upon a concerted effort to prevent Cooper from using the videos produced under the Video Contract to Cooper's financial advantage. Cooper does not know why Harvey has acted to prevent Cooper from using the videos taken of Harvey at the Steve Harvey Comedy Club. Harvey has stated that (a) when the videos were created, he did a different type of comedy, and the videos embarrassed him, (b) the people told him that the lighting is bad, the sound is bad, (c) "he was afraid and didn't want the tapes out there," and (d) he was concerned about negative and harmful images.

33. In 2013, Cooper sought to market, distribute and sell the first volume of a five volume set of videos entitled "Steve Harvey 'Live, Raw & Uncensored.'"

34. Cooper negotiated with a number of companies who wished to distribute and sell Steve Harvey "Live, Raw & Uncensored."

35. Cooper negotiated and was prepared execute a Licensing and Distribution Agreement with Music Video Distributors, Inc. made effective January 20, 2014, granting Music Video Distributors an exclusive Worldwide license to promote, advertise, sell and distribute Steve Harvey "Live, Raw & Uncensored," and to promote, advertise, sell, transfer and distribute the video. Cooper was to receive a royalty 75% of the sales price of the videos less the actual manufacturing and approved marketing costs.

36. In the proposed Licensing and Distribution Agreement it provides that Cooper "is the owner of all right, title and interest, free and clear of all judgments, claims and encumbrances" of Steve Harvey "Live, Raw & Uncensored." Cooper disclosed to Music Video Distributors his previous litigation with Harvey.

37. In May 2014, Harvey's attorney, Ricky Anderson, advised Music Video Distributors' attorney that "Steve has not agreed to give Cooper the rights he claims and will come after us if we distribute the footage." The statement is false and is known to be false by Harvey and his attorney.

38. Music Video Distributors advised Cooper it could not enter into the agreement in light of the statement made by Harvey's attorney.

39. Cooper attempted to interest other distribution companies in the Harvey videos. Cooper disclosed to the potential distributors the 1998 State Court lawsuit. Cooper has not entered into an agreement at the time of the filing of this lawsuit.

40. Cooper attempted to market the videos and information about Harvey to others who would have used the videos and information to create sensational stories about Harvey. Cooper decided not to do so without restrictions that the potential purchasers did not find acceptable.

41. Cooper owns the rights he agreed to have distributed. Harvey falsely asserted that he had rights that needed to be given to Cooper.

42. As a result of Harvey's false statements made by Harvey through his agent and attorney, Music Video Distributors said it could not complete the agreement with Cooper.

43. Cooper intends to distribute and sell the first volume of Steve Harvey "Live, Raw & Uncensored."

44. Cooper intends to produce and attempt the remaining four volumes of the Steve Harvey videos to create, distribute and sell the five volume set of Steve Harvey "Live, Raw & Uncensored."

45. Cooper advised Harvey that Harvey had infringed upon Cooper's copyright to the videos taken under the terms of the Video Contract and made demand on Harvey.

46. Cooper has been since the time that videos were created under the Video Contract the sole owner of the videos.

47. Harvey has infringed on Cooper's rights under the Video Contract and violated the Cooper's copyright in the videos.

48. The foregoing acts of infringement and interference have been intentional, in disregard of and with indifference to Cooper's rights.

***Copyright Infringement***

*Injunctive Relief*

49. *Preliminary Injunction.* Cooper believes that it may become necessary to seek preliminary injunctive relief during the course of this litigation and will file a motion seeking such relief as necessary.

50. *Permanent Injunction.* Harvey's conduct is causing and, unless enjoined and restrained by this Court, will continue to cause Cooper's great and irreparable injury that cannot fully be compensated or measured in money. Cooper has no adequate remedy at law. Pursuant to 17 U.S.C. §§ 502 and 503, Cooper is entitled to injunctive relief prohibiting Harvey from further infringing Cooper's copyrights

51. Cooper requests that Harvey be enjoined from directly or indirectly infringing upon Cooper's rights in the videos created under the terms of the Video Contract, including without limitation telling or otherwise advising any person, directly or indirectly, that Cooper does not own or have any or all rights to the videos created under the terms of the Video Contract or otherwise interfering with Cooper's rights to to use the original videos and/or reproductions for display, publication or other purposes.

52. *Damages.* Cooper seeks to recover damages from Harvey sustained as a result of Harvey's infringement of Cooper's copyright and Harvey's unfair trade practices in a sum equal to moneys expended by Cooper to protect his copyright, damages suffered due Cooper's inability to enter to an agreement for the sale and distribution of the videos created pursuant to the Video Contract.

53. Cooper cannot accurately estimate that sum that he lost from Harvey's wrongful actions but estimates that such damages at the time of the filing of this Complaint are approximately $5,000,000. Unless enjoined, Cooper estimates that income he has lost through trial may be $20,000,000. Due to Harvey's wrongful actions, Cooper cannot at this time mitigate his damages.

***Breach of Contract***

54. Harvey's actions, as alleged above, preventing Cooper from making full and free use of the videos created pursuant to the Video Contract.

55. *Damages*. Cooper seeks damages resulting from the breach of contract. Cooper cannot accurately estimate that sum that he lost from Harvey's wrongful actions but estimates that such damages at the time of the filing of this Complaint are approximately $5,000,000. Unless enjoined, Cooper estimates that income he has lost through trial may be $20,000,000. Due to Harvey's wrongful actions, Cooper cannot at this time mitigate his damages.

***Tortious Interference with Business Relations***

56. Harvey intentionally and knowingly interfered with Cooper's actual and perspective business relations with Music Video Distributors, Inc. The infringement of Cooper's copyrights constitutes a tort independent with Cooper's interfered business relations.

57. Harvey's tortious interference proximately caused Music Video Distributors, Inc. to withdraw from entering a contract with Cooper for the sale and distribution of the videos created pursuant to the Video Contract.

*Injunctive Relief*

58. *Preliminary Injunction*. Cooper believes that it may become necessary to seek preliminary injunctive relief during the course of this litigation and will file a motion seeking such relief as necessary.

59. *Permanent Injunction*. Harvey's conduct is causing and, unless enjoined and restrained by this Court, will continue to cause Cooper's great and irreparable injury that cannot fully be compensated or measured in money. Cooper has no adequate remedy at law. Cooper is entitled to injunctive relief prohibiting Harvey from further infringing Cooper's copyrights

60. Cooper requests that Harvey be enjoined from directly or indirectly infringing Cooper's rights in the videos created under the terms of the Video Contract, including without limitation telling or otherwise advising any person, directly or indirectly, that Cooper does not own or have any or all rights to the videos created under the terms of the Video Contract or otherwise interfering with Cooper's rights to to use the original videos and/or reproductions for display, publication or other purposes.

61. *Damages*. Cooper seeks an award for actual damages equal to the lost benefits of the contract consisting of lost profits. Cooper cannot accurately estimate that sum that he lost from Harvey's wrongful actions but estimates that such damages at the time of the filing of this Complaint are approximately $5,000,000. Unless enjoined, Cooper estimates that income he has lost through trial may be $20,000,000. Due to Harvey's wrongful actions, Cooper cannot at this time mitigate his damages.

***Declaratory Judgment***

62. Cooper seeks a declaratory judgment establishing Cooper and Harvey's rights to the videos under the March 30, 1993, Video Contract and under the Copyrights laws of the United States.

***Attorney's Fees***

63. Cooper has retained the undersigned to represent him in this action and has agreed to pay a reasonable attorney's fees. Cooper sues for such fees.

***Exemplary Damages***

64. Cooper seeks exemplary damages of $10,000,000.00 from Harvey for Harvey's outrageous, malicious and illegal conduct.

Therefore, Joseph Cooper demands judgment against Broderick Steven "Steve" Harvey for the sums set forth above, plus attorney's fees, interest and costs.

Respectfully submitted,

BENNETT, WESTON, LAJONE & TURNER, P.C.

/s/ J. Michael Weston

J. Michael Weston
SBN: 21232100
1603 LBJ Freeway, Suite 280
Dallas, TX 75234
214.691.1776
Fax: (214) 373-6810
jmweston@bennettweston.com

JS 44-TXND (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

JOSEPH COOPER

(b) County of Residence of First Listed Plaintiff DALLAS
*(EXCEPT IN U.S. PLAINTIFF CASES)*

(c) Attorneys *(Firm Name, Address, and Telephone Number)*
J. Michael Weston, Bennett, Weston, LaJone & Turner, PC, 1603 LBJ Freeway, Suite 289, Dallas, Texas 75234, 214-691-1776, ext 262

## DEFENDANTS

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*

*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

Other:
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☒ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

☐ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from Another District *(specify)* ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing ***(Do not cite jurisdictional statutes unless diversity)***:
17 U.S.C. Sections 501-502, 504-505

Brief description of cause:
infringement of copyright to videos, breach of contract and tortious interference

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $** 20,000,000.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED PENDING OR CLOSED CASE(S) IF ANY

*(See instructions):* JUDGE DOCKET NUMBER

DATE 11/21/2014

SIGNATURE OF ATTORNEY OF RECORD /s/ J. Michael Weston

**FOR OFFICE USE ONLY**

RECEIPT # AMOUNT APPLYING IFP JUDGE MAG. JUDGE