UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOSEPH COOPER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:14-CV-4152-B |
| | § | |
| BRODERICK STEVEN "STEVE" | § | |
| HARVEY, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Broderick Steven "Steve" Harvey's Motion to Dismiss, or in

the Alternative, Motion for a More Definite Statement (doc. 9), filed on January 26, 2015. For the

reasons set forth below, Defendant's Motion is **GRANTED in part** and **DENIED in part**.

## I.

## BACKGROUND[1]

A.    *Factual Background*

This case arises out of a dispute regarding video recordings of stand-up comedy performances.

Plaintiff Joseph Cooper is an individual who does business as Close Up Video Productions in Dallas,

Texas. Doc. 1, Compl. ¶¶ 3, 6. Defendant Broderick Steven "Steve" Harvey is a comedian who, most

relevant to this lawsuit, opened the Steve Harvey Comedy Club in 1993, where he performed stand-

up comedy acts. *Id.* at ¶ 12. On March 30, 1993, Plaintiff, doing business as Close Up Video

---

[1] The Court draws its factual account from the allegations contained in Plaintiff Joseph Cooper's
Complaint (doc. 1) and from the attachments and documents incorporated therein by reference. *Wolcott v.
Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).

Productions, and Defendant, doing business as Steve Harvey Comedy Club, allegedly entered into

a written contract (the "Video Contract"), pursuant to which Plaintiff agreed to

> [p]roduce video tape(s) of promotional material from the facility
> including exterior shots, audience, stage performances and graphics
> with official logos. Tape will also include names, dates and music
> soundtracks. Tapes will be taped for continuous play before, during
> and after show performances. Video footage from KKDA Apollo
> Night, buffet and lobby area mingling with Mr. Harvey [Defendant]
> & guest [sic]. Business networking footage included.

*Id.* at ¶ 13. The Video Contract further provided:

> 1. It is understood this studio [Plaintiff] is the exclusive official
> videographer, and others taking videos will be permitted only at our
> discretion.
>
> 3. The studio [Plaintiff] reserves the right to use the original tape
> and/or reproductions for display, publication or other purposes.
> Original videotapes remain the exclusive property of the studio.

*Id.* at ¶ 14.

In addition, Plaintiff alleges he provided advertising and marketing services—for which he

incurred debts yet to be paid—on behalf of Defendant. *Id.* at ¶ 15. Plaintiff insists he fully complied

with his obligations under the Video Contract, and that all conditions precedent to his recovery

under this agreement were satisfied. *Id.* at ¶ 17. According to Plaintiff, he produced approximately

120 hours of video recordings under this contract. *Id.* at ¶ 18. He maintains that Defendant was

aware of his intention to use the recordings of Defendant's performances to create videos to be sold

at retail. *Id.* at ¶ 19. Plaintiff notes that Defendant did not object to these plans, but only requested

that Plaintiff delay selling videos that included Defendant's stand-up comedy performances. *Id.*

Plaintiff understood that the release of the videos might interfere with Defendant's plans for his

career at that time. *Id.* at ¶ 20. He thus decided to delay releasing videos of Defendant, estimating that such recorded material would become more valuable as Defendant gained popularity. *Id.*

Plaintiff describes the television shows in which Defendant starred between 1994 and 2000, observing that the videos of his stand-up comedy performances recorded in the early years of the Steve Harvey Comedy Club reflect a comedy style that contrasts with Defendant's present image. *Id.* at ¶ 24. Plaintiff adds that he "has removed and plans to remove additional materials that could only serve to create scandal for [Defendant] rather than showing [Defendant's] earlier comedic style." *Id.*

In 1998, Plaintiff informed Defendant of his intention to distribute the videos he had produced pursuant to the Video Contract. *Id.* at ¶ 25. Plaintiff alleges that subsequently, in October 1998, he and Defendant orally agreed that Defendant would purchase the videos in question for the sum of $5,000,000, but that Defendant breached this agreement. *Id.* at ¶ 26. Plaintiff explains that Defendant filed a lawsuit against him in Dallas County State Court on December 16, 1998, to which Plaintiff submitted counterclaims. *Id.* Although Plaintiff does not detail the context and circumstances of this lawsuit, he indicates that he obtained a temporary restraining order against Defendant on June 28, 1999, which was extended by agreement on July 16, 1999 and again on August 12, 1999. *Id.* at ¶ 27. Specifically, the August 12, 1999 agreed temporary restraining order restrained Defendant, his agents, employees, attorneys or assigns from

> [c]ontacting any of Movant Joe Cooper's [Plaintiff's] business associates or anyone with whom Movant [Plaintiff] has entered into negotiations with regarding the sale, production, distribution, advertising, or licensing of certain video tape which is the subject matter of the above referenced suit for the purpose of threatening them with legal action, any other negative action in the event they do business with Movant [Plaintiff] or for the purpose of intimidating

> them into refraining from doing business with Movant [Plaintiff]
> regarding certain video tape of Mr. Steve Harvey, Respondent
> [Defendant], which is the subject matter of the above referenced suit,
> and from disparaging Movant [Plaintiff] or any of his employees,
> agents, assigns, companies or attorneys to any third parties.

*Id.* Plaintiff contends that Defendant violated this agreed temporary restraining order, but that

Plaintiff elected not to inform the court of such violations. *Id.* at ¶ 28.

Plaintiff explains that he sought to obtain financial benefits from his rights under the Video

Contract. *Id.* at ¶ 31. He avers that Defendant has accused him of threatening to distribute the

videos in question, but that Plaintiff has in fact attempted to cooperate with Defendant, offering him

the opportunity to purchase the videos. *Id.* Alternatively, if Defendant refused to purchase the

videos, Plaintiff planned to distribute and sell them without Defendant's involvement. *Id.*

Despite Plaintiff's purported attempt at cooperation, Defendant allegedly "embarked upon

a concerted effort to prevent [Plaintiff] from using the videos produced under the Video Contract."

*Id.* at ¶ 32. Plaintiff recounts that he is uncertain why Defendant wished to prevent him from using

the videos captured at the Steve Harvey Comedy Club, though he proceeds to speculate on possible

reasons for Defendant's behavior. *Id.* Undeterred by Defendant's alleged efforts to prevent the release

of the videos, Plaintiff sought to market, distribute, and sell the first volume of a five volume set

entitled "Steve Harvey 'Live, Raw & Uncensored'" in 2013. *Id.* at ¶ 33. Plaintiff contends that he

was prepared to execute a licensing and distribution agreement (the "Licensing and Distribution

Agreement") with Music Video Distributors, Inc., which would grant Music Video Distributors, Inc.

the rights to the videos and would award Plaintiff 75% of the videos' sales price less manufacturing

and marketing costs. *Id.* at ¶ 35. The proposed Licensing and Distribution Agreement allegedly

provided that Plaintiff "is the owner of all right [sic], title and interest, free and clear of all

judgments, claims and encumbrances" of "Steve Harvey 'Live, Raw & Uncensored.'" *Id.* at ¶ 36. Plaintiff notes that he disclosed his previous litigation with Defendant to Music Video Distributors, Inc. *Id.*

In May 2014, following Plaintiff's negotiations regarding the Licensing and Distribution Agreement, Defendant's attorney allegedly advised the attorney of Music Video Distributors, Inc. that Defendant had not agreed to give Plaintiff the rights to the videos he claimed to have, and that Defendant would "come after" Music Video Distributors, Inc. if it were to pursue the Licensing and Distribution Agreement. *Id.* at ¶ 37. Plaintiff insists that this statement is false and that Defendant and his attorney knew this statement to be false. *Id.* According to Plaintiff, Music Video Distributors, Inc. refused to enter into the Licensing and Distribution Agreement as a result of the statement made by Defendant's attorney. *Id.* at ¶ 38. Plaintiff subsequently attempted to interest other distribution companies in the videos, but has not entered into an agreement as of the filing of the present lawsuit. *Id.* at ¶ 39.

Plaintiff asserts that he owns the video rights that he attempted to assign to distribution companies, and he complains that Defendant falsely claimed to retain some of these rights. *Id.* at ¶ 41. Plaintiff explains that, by doing so, Defendant has violated the Video Contract and has infringed on his copyright to the videos. *Id.* at ¶ 47.

Based on these alleged facts, Plaintiff brings the following claims against Defendant: (1) breach of contract; (2) tortious interference with business relations; and (3) copyright infringement. *Id.* at ¶¶ 49–57. He further requests that Defendant be enjoined from directly or indirectly infringing on his copyright to the videos created under the terms of the Video Contract. *Id.* at ¶ 60. Lastly,

Plaintiff seeks a declaratory judgment establishing his and Defendant's respective rights to the videos under the Video Contract. *Id.* at ¶ 62.

B.      *Procedural Background*

Plaintiff brought this lawsuit against Defendant on November 21, 2014. *See* Compl. On January 26, 2015, Defendant filed the present Motion to Dismiss, or in the Alternative, Motion for a More Definite Statement (doc. 9), requesting that Plaintiff's claims for (1) breach of contract; (2) tortious interference with business relations; and (3) copyright infringement be dismissed, or, in the alternative, that they be supplemented by more detailed factual allegations. Plaintiff submitted his Response (doc. 11) on February 9, 2015, to which Defendant has not replied. As such, the Motion is now ripe for the Court's review.

## II.

## LEGAL STANDARD

A.      *Rule 12(b)(6) Motion to Dismiss*

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) authorizes the court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). The court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert.*

- 6 -

*denied*, 530 U.S. 1229 (2000). To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* When well-pleaded facts fail to achieve this plausibility standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks and alterations omitted).

B.      *Rule 12(e) Motion for a More Definite Statement*

Rule 12(e) allows a party to "move for a more definite statement of a pleading to which a responsive pleading is allowed" when it is "so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). "When a party moves for a more definite statement, a court must determine whether the complaint is such that a party cannot reasonably be required to frame a responsive pleading." *Ash Grove Tex., L.P. v. City of Dall.*, No. 3:08-CV-2114-O, 2009 WL 3270821, at *7 (N.D. Tex. Oct. 9, 2009) (citing *Mitchell v. EZ Way Towers, Inc.*, 269 F.2d 126, 130 (5th Cir. 1959))."[M]otions for a more definite statement are generally disfavored," and district courts have "significant discretion" when considering them. *Id.* (internal citations and quotations omitted).

## III.

## ANALYSIS

Defendant seeks the dismissal of Plaintiff's claims, or, in the alternative, a more definite statement of the allegations supporting these claims. Doc. 9, Def.'s Mot. to Dismiss ("Def.'s Mot.") 1. Specifically, Defendant contends that Plaintiff fails to provide sufficient factual allegations of his claims for: (1) breach of contract; (2) tortious interference with business relations; and (3) copyright infringement. *Id.* at 1–2. The Court addresses the parties' respective arguments regarding each claim, in turn, below.[2]

### A.    *Breach of Contract*

Plaintiff's breach of contract claim, as well as his entire lawsuit against Defendant, is anchored in the allegation that he owns rights to videos he recorded during Defendant's stand-up comedy performances pursuant to an agreement the parties entered into on March 30, 1993 (the "Video Contract"). *See* Compl. ¶¶ 12–15. Plaintiff complains that comments made by Defendant's attorney to Music Video Distributors, Inc. prevented him "from making full and free use of the videos created pursuant to the Video Contract," which, according to his estimates, resulted in $5,000,000

_____

[2] In addition, Defendant objects to this Court's subject matter jurisdiction over the present lawsuit. Def.'s Mot. 6–7. Defendant argues that, because Plaintiff is unable to state a claim for copyright infringement, and because the remaining claims do not arise under the United States Constitution or federal laws, the Court lacks federal question jurisdiction under 28 U.S.C. § 1331. Despite the fact that Plaintiff's copyright infringement claim must be dismissed, as discussed below, the Court nevertheless retains subject matter jurisdiction because this is a case involving parties of diverse citizenship. *See* 28 U.S.C. § 1332(a). As Plaintiff has indicated in his Complaint, he is a citizen of Texas, whereas Defendant is either a citizen of Illinois or Georgia. Compl. ¶¶ 3–4. Moreover, Plaintiff asserts that the amount in controversy exceeds $75,000, and he later claims damages in the amount of $5,000,000. *Id.* at ¶¶ 4, 61. Because Defendant does not challenge these assertions, the Court concludes that the requirements of 28 U.S.C. § 1332(a) have been satisfied, thus allowing the exercise of diversity jurisdiction.

in damages. *Id.* at ¶¶ 54–55.[3]

Defendant moves to dismiss Plaintiff's breach of contract claim, insisting that the Complaint lacks sufficient allegations to indicate the existence of a contract or its breach. Def.'s Mot. 4–6. Defendant acknowledges Plaintiff's assertion that the parties "entered into a written contract" and that Plaintiff "fully complied with his obligation under the Video Contract." *Id.* at 4 (quoting Compl. ¶¶ 13, 17). Nevertheless, the claim is deficient, in Defendant's view, due to the absence of facts regarding the acceptance of an offer, the parties' consent to the terms of the agreement, the existence of consideration, and the execution and delivery of the contract. *Id.* at 5. In addition, Defendant claims that Plaintiff fails to articulate what provision of the contract was breached and how such breach occurred it. *Id.* at 6. In response, Plaintiff clarifies that Defendant breached the Video Contract by contesting Plaintiff's ownership of the videos and by preventing him from entering into a contract for the distribution of such videos. Doc. 11, Pl.'s Resp. 10.

The elements of a claim for breach of contract under Texas law are: (1) the existence of a valid contract; (2) the plaintiff's performance or tendered performance; (3) the defendant's breach of the contract; and (4) damages to the plaintiff resulting from the breach. *Lewis v. Bank of Am. NA*, 343 F.3d 540, 545 (5th Cir. 2003) (citing *Palmer v. Espey Hous. & Assocs.*, 84 S.W.3d 345, 353 (Tex. App.—Corpus Christi 2002, pet. denied)).

The Court therefore considers the sufficiency of the allegations supporting Plaintiff's claim that Defendant breached the March 30, 1993 Video Contract. Plaintiff asserts that he and Defendant entered into a valid written contract on March 30, 1993, (the "Video Contract"),

---

[3] Elsewhere in the Complaint, Plaintiff asserts that, in October 1998, he and Defendant orally agreed that Defendant would purchase the videos in question for the sum of $5,000,000, but that Defendant breached this agreement. Compl. ¶ 26.

pursuant to which Plaintiff was to produce video tapes of promotional material from Defendant's Steve Harvey Comedy Club. Compl. ¶ 13. Plaintiff, in turn, was granted the "right to use the original tape and/or reproductions" for various uses. *Id.* (quoting Video Contract). Plaintiff avers that he fully complied with his obligations under the Video Contract, and that all conditions precedent to his recovery under the contract were satisfied. *Id.* at ¶ 17. According to Plaintiff, Defendant's comment to Music Video Distributors, Inc., in which he questioned Plaintiff's ownership of the rights to the videos, "prevent[ed] [Plaintiff] from making full and free use of the videos created pursuant to the Video Contract" and thus constitutes a breach. *Id.* at ¶¶ 37, 54. This alleged breach relates to the following specific provision of the Video Contract, which Plaintiff includes in the general allegations of his Complaint:

> 3. The studio [Plaintiff] reserves the right to use the original tape and/or reproductions for display, publication or other purposes. Original videotapes remain the exclusive property of the studio.

*Id.* at ¶ 14. Lastly, Plaintiff indicates that he suffered damages as a result of Defendant's breach, as he alleges Defendant's actions have prevented him from exercising the rights conferred to him by the Video Contract. *Id.* at ¶ 55.

Based on these facts, the Court concludes that Plaintiff has offered sufficient allegations to support a claim for breach of contract, as he has asserted that: (1) a contract existed between him and Defendant; (2) Plaintiff performed all requirements under this contract; (3) Defendant breached specific terms of the contract; and (4) this breach caused Plaintiff to incur damages. *See Tempur-Pedic Int'l Inc. v. Angel Beds LLC*, 902 F. Supp. 2d 958, 969–70 (S.D. Tex. 2012); *Spear Marketing Inc. v. BancorpSouth Bank*, No. 3:12-CV-3583-B, 2013 WL 3297593, at *10 (N.D. Tex. July 1, 2013). Taking Plaintiff's well-pleaded contentions as true, as is required when deciding a motion under Rule

12(b)(6), the Court finds that they are sufficient to state a claim for breach of contract. Defendant's Motion to Dismiss Plaintiff's breach of contract claim is therefore **DENIED**.

B.      *Tortious Interference with Business Relations*

Defendant next urges the Court to dismiss Plaintiff's claim for tortious interference with business relations, under which Plaintiff alleges that Defendant intentionally and knowingly interfered with Plaintiff's business relations with Music Video Distributors, Inc., thus causing Music Video Distributors, Inc. to withdraw from entering into a contract with Plaintiff for the sale and distribution of video recordings of Defendant's comedy performances. Compl. ¶¶ 56–57.

"The theory of tortious interference with business relations by a third person includes two causes of action: (1) tortious interference with existing contracts, and (2) tortious interference with prospective contractual relations." *Staton Holdings, Inc. v. Russell Athletic, Inc.*, No. 3:09-CV-0419-D, 2009 WL 4016117, at *2 (N.D. Tex. Nov. 20, 2009) (quoting *Dunn v. Calahan*, No. 03-05-00426-CV, 2008 WL 5264886, at *3 (Tex. App.—Austin 2006, pet. denied) (mem. op.)). The Complaint is unclear as to whether Defendant prevented Plaintiff from entering into a contract with Music Video Distributors, Inc., or whether Defendant interfered with an existing contract between these parties. *See* Compl. ¶ 56. Defendant, however, appears to construe this claim as one for tortious interference with prospective business relations, and proceeds to seek its dismissal. Def.'s Mot. 8–9. The Court thus only considers the sufficiency of Plaintiff's pleadings as to a claim for tortious interference with prospective business relations.

The elements of a claim for tortious interference with prospective business relations under Texas law are: "(1) a reasonable probability that the plaintiff would have entered into a business relationship; (2) an independently tortious or unlawful act by the defendant that prevented the

- 11 -

relationship from occurring; (3) the defendant did such act with a conscious desire to prevent the relationship from occurring or the defendant knew the interference was certain or substantially certain to occur as a result of the conduct; and (4) the plaintiff suffered actual harm or damages as a result of the defendant's interference." *Mary Kay, Inc. v. Weber*, 601 F. Supp. 2d 839, 863 (N.D. Tex. 2009) (quoting *Baty v. ProTech Ins. Agency*, 63 S.W.3d 841, 860 (Tex. App.—Hous. [14th Dist.] 2001, pet. denied)); *see also Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 713 (Tex. 2001). The Texas Supreme Court has defined "independently tortious" acts as "conduct that would violate some other recognized tort duty." *Wal-Mart Stores, Inc.*, 52 S.W.3d at 713.

Defendant challenges the sufficiency of Plaintiff's allegations with respect to this claim, arguing that Plaintiff fails to demonstrate how Defendant interfered with Plaintiff's business relations. Def.'s Mot. 9. Defendant acknowledges Plaintiff's allegation that Defendant's attorney made a false statement to Music Video Distributors, Inc., in which he claimed that Defendant never gave Plaintiff the video rights that were the focus of Plaintiff's proposed Licensing and Distribution Agreement. *Id.* However, he contends that these allegations fail to support a viable claim, as they are unclear and vague. *Id.* Defendant suggests that, "while . . . Plaintiff claims ownership rights to the use of certain videotapes under color of contract, this alone does not entitle Plaintiff to rights in Defendant's performance in its entirety." *Id.* Defendant submits that he is a "well known celebrity with value to his name and likeness." *Id.* Therefore, he argues, even if Plaintiff has the right to use the videos, Defendant reserves the right to protect these videos from use by third parties. *Id.*

In addition, Defendant insists that Plaintiff has neglected to provide facts indicating actual harm suffered as a result of the alleged interference. *Id.* at 10. Defendant argues that the $5,000,000 that Plaintiff seeks in damages is based on the alleged oral agreement that Defendant would purchase

the videos for this sum in exchange for Plaintiff refraining from selling his rights to the videos. *Id.* Defendant clarifies that this amount of damages in not reasonably related to the actual damages caused by the asserted claim. *Id.* Moreover, he maintains that Plaintiff fails to offer factual support for damages related to business lost as a result of the alleged interference. *Id.*

In response, Plaintiff reiterates that Defendant intentionally and knowingly interfered with his business relations with Music Video Distributors, Inc., as Defendant's attorney interfered with the agreement Plaintiff and Music Video Distributors, Inc. were set to enter into. Pl.'s Resp. 11. Plaintiff clarifies that, as a result, he did not receive the income that was due pursuant to the contract. *Id.*[4]

Despite Defendant's arguments to the contrary, Plaintiff has indeed stated a viable claim for tortious interference with prospective business relations. He describes the proposed Licensing and Distribution Agreement between him and Music Video Distributors, Inc. relating to the distribution of the video recordings, thus alleging "a reasonable probability that [he] would have entered into a business relationship." Compl. ¶ 36; *see Mary Kay, Inc.*, 601 F. Supp. 2d at 863. Next, Plaintiff avers that Defendant, through his attorney, prevented the formation of this agreement by making statements—known to be false—to Music Video Distributors, Inc. regarding Plaintiff's ownership of the rights to the videos. Compl. ¶¶ 37–38, 42. Plaintiff thus alleges that Defendant engaged in "an independently tortious or unlawful act . . . that prevented the relationship from occurring." *Mary*

---

[4] In his Response, Plaintiff adds that his allegations also contain facts supporting a claim for business disparagement and accordingly seeks leave of Court to amend his Complaint so as to include such a cause of action. Pl.'s Resp. 11. As this request is not presented in proper motion form, does not contain the requisite context, and is not accompanied by Defendant's response, the Court is unable to address it in deciding the present Motion to Dismiss. If Plaintiff wishes to amend his pleadings, he must file the appropriate motion seeking leave to do so.

*Kay, Inc.*, 601 F. Supp. 2d at 863. Moreover, Plaintiff clarifies that Defendant's acts were intentional, as he sought to "prevent [Plaintiff] from using the videos produced under the Video Contract to [Plaintiff's] financial advantage." Compl. ¶¶ 32, 48; *see Mary Kay, Inc.*, 601 F. Supp. 2d at 863. Lastly, Plaintiff explains that this interference caused him harm, as Music Video Distributors, Inc. declined to enter into the proposed contract, thus precluding Plaintiff from receiving the benefits the contract would have yielded. Compl. ¶¶ 35, 57; *see Mary Kay, Inc.*, 601 F. Supp. 2d at 863. While he later estimates his damages to be $5,000,000—a sum Defendant claims to be unrelated to his actual damages—Plaintiff has alleged sufficient facts, for the purpose of surviving a motion under Rule 12(b)(6), to support his claim that he incurred damages as a result of Defendant's tortious interference with his business relations. Moreover, Defendant's claim that he "reserves the right to protect [the] videos from use by third parties," without additional context or supporting authority, does not warrant the dismissal of Plaintiff's cause of action. Def.'s Mot. 9. This statement does not indicate that Defendant's attorney's comments to Music Video Distributors, Inc. were true or otherwise justified. While later discovery may reveal facts that validate Defendant's argument or the remarks his attorney made to Music Video Distributors, Inc., consideration of such issues is premature at this stage of the litigation.

Accordingly, the Court concludes that Plaintiff has stated a viable claim for tortious interference with prospective business relations and thus **DENIES** Defendant's Motion with respect to this claim.

C.      *Copyright Infringement*

Finally, the Court considers Plaintiff's claim for copyright infringement, under which Plaintiff alleges that Defendant infringed his copyright to the videos produced pursuant to the Video

Contract. Compl. ¶ 52. Defendant argues that Plaintiff fails to allege sufficient facts to support this claim and therefore urges the Court to dismiss it. Def.'s Mot. 7. Specifically, Defendant challenges Plaintiff's ownership of a valid copyright to the works in question, and he insists that Plaintiff fails to articulate what infringing acts have been committed. *Id.* at 8.

In his Response, Plaintiff clarifies that he possesses a copyright to the video recordings of Defendant's comedy performances pursuant to the Video Contract, which provides that "[Plaintiff] reserves the right to use the original tape and/or reproductions for display, publication or other purposes. Original videotapes remain the exclusive property of the studio [Plaintiff]." Pl.'s Resp. 6 (quoting Video Contract). He elaborates that his copyright infringement claim is based on the statement Defendant's attorney made to Music Video Distributors, Inc., which allegedly interfered with Plaintiff's exclusive distribution rights to the videos. *Id.* at 8–9. He thus specifies that Defendant violated 17 U.S.C. § 106(3), which provides that the owner of a copyright has the exclusive right "to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending," or to authorize such distribution. 17 U.S.C. § 106(3). With the aid of this clarification, the Court considers the viability of Plaintiff's claim that Defendant infringed his distribution rights. The Court first evaluates the allegation that an infringing act occurred, as this is the focus of the parties' arguments.

Under the Copyright Act, the owner of a copyright has the exclusive right to, among other things, "distribute copies . . . of the copyrighted work." 17 U.S.C. § 106(3). The Act provides that "[a]nyone who violates any of the exclusive rights of the copyright owner as provided in sections 106 through 122 . . . is an infringer of the copyright . . . ." *Id.* § 501(a); *Prostar v. Massachi*, 239 F.3d 669, 677 (5th Cir. 2001). Therefore, a plaintiff bringing a claim for copyright infringement must establish:

"(1) ownership of a valid copyright; and (2) that a defendant violated one or more of the plaintiff's exclusive rights under the Copyright Act." *Atl. Recording Corp. v. Anderson*, No. H-06-3578, 2008 WL 2316551, at *6 (S.D. Tex. Mar. 12, 2008) (citations omitted); *see Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991); *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 141 (5th Cir. 2004); *Randolf v. Dimension Films*, 630 F. Supp. 2d 741, 745 (S.D. Tex. 2009).

Generally, the "infringement of [the distribution right] requires an actual dissemination of either copies or phonorecords." *Atl. Recording Corp. v. Howell*, 554 F. Supp. 2d 976, 981 (D. Ariz. 2008) (quoting *Nat'l Car Rental Sys. v. Computer Assocs. Int'l, Inc.*, 991 F.2d 426, 434 (8th Cir. 1993)); *see also Arista Records LLC v. Greubel*, 453 F. Supp. 2d 961, 969 (N.D. Tex. 2006). Although the Copyright Act does not define "distribution," the Act does define the term "publication" as "the distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending," which also includes "[t]he offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display." 17 U.S.C. § 101; *see Atl. Recording Corp.*, 2008 WL 2316551, at *7.

According to Defendant, Plaintiff fails to articulate what infringing acts form the basis of his claim. Def.'s Mot. 8. The Court agrees. The sole factual assertion supporting Plaintiff's copyright infringement claim is that Defendant allegedly advised Music Video Distributors, Inc. that "[Defendant] has not agreed to give [Plaintiff] the rights he claims." *Id.* (quoting Compl. ¶ 37). Plaintiff neither alleges that Defendant made an unauthorized distribution of the videos, nor is there any indication that this may have occurred. Thus, Plaintiff's allegation that Defendant "interfered" with his rights by questioning the validity of his copyright to the videos in a discussion with Music Video Distributors, Inc. is insufficient to support a claim for infringement. The Copyright Act makes

- 16 -

"exclusive" certain rights of copyright holders and prevents others from asserting these same rights; it does not, however, provide a mechanism through which the holder of a copyright can exercise these exclusive rights free from any outside "interference" such as the comments allegedly made by Defendant.[5]

In an attempt to argue that preventing the exercise of one's right to distribute a work constitutes actionable copyright infringement, Plaintiff points to *Diversey v. Schmidly*, 738 F.3d 1196 (10th Cir. 2013). Pl.'s Resp. 9. However, this case offers no support for Plaintiff's claim. In contrast to the present scenario, *Diversey* does not involve a defendant's "interference" with plaintiff's exercise of his own distribution rights, but is rather based on a graduate student's claim that his university published his dissertation without being authorized to do so. *Diversey*, 738 F.3d at 1199, 1202. Thus, even if the plaintiff in *Diversey* were able to bring a claim for copyright infringement within the limitations period, such a claim would have been based on defendant's conduct in distributing the dissertation, rather than on any acts preventing plaintiff from doing so himself. Because Plaintiff offers no other authority to indicate that behavior similar to Defendant's "interference" qualifies as

---

[5] The present case does not relate to distribution in the context of online file-sharing. However, for illustrative purposes, the Court observes that disagreement exists as to whether actual distribution must be shown to prove infringement claims in such situations, or whether "making available" copies of a work can constitute copyright infringement. *Compare Atl. Recording Corp.*, 554 F. Supp. 2d at 983; *Warner Bros. Records, Inc. v. Payne*, No. W-06-CA-051, 2006 WL 2844415, at *3 (W.D. Tex. July 17, 2006) (requiring a showing of actual distribution and declining to extend liability for distribution infringement to defendants who "make available" works to which plaintiff owns a valid copyright); *with Universal City Studios Prods. LLLP v. Bigwood*, 441 F. Supp. 2d 185, 190–91 (D. Me. 2006); *Motown Record Co. v. DePietro*, No. 04-CV-2246, 2007 WL 576284, at *3 (E.D. Pa. Feb 16, 2007) (concluding that distribution infringement includes making a work available through an online file-sharing network). Although this debate does not pertain to the details of Plaintiff's claim, it reveals the underlying basis for claims of infringement of distribution rights: even under the less demanding "make available" standard in the online file-sharing context, infringement requires an effort to disseminate a work subject to another's copyright. No such activity has been alleged here.

copyright infringement, the Court **GRANTS** Defendant's Motion to Dismiss this claim.[6]

## IV.

## CONCLUSION

For the reasons stated above, Defendant Broderick Steven "Steve" Harvey's Motion to Dismiss, or in the Alternative, Motion for a Motion Definite Statement (doc. 9) is **GRANTED in part** and **DENIED in part**. Specifically, Defendant's Motion to Dismiss is **GRANTED** with respect to Plaintiff Joseph Cooper's claim for copyright infringement and is **DENIED** with respect to Plaintiff's claims for breach of contract and tortious interference with business relations.

Because the defects in Plaintiff's copyright infringement claim are incurable, the Court declines to afford Plaintiff the opportunity to replead so as to correct his pleading deficiencies. *See*

---

[6] Although Plaintiff insists that he owns a copyright in the videos in question, Defendant raises a brief argument questioning the existence of such copyright. Def.'s Mot. 8. The Copyright Act provides that "no action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made . . . ." 17 U.S.C. § 411(a). The Fifth Circuit has held that "registration with the copyright office is a *jurisdictional* prerequisite to filing a copyright infringement suit." *Creations Unlimited, Inc. v. McCain*, 112 F.3d 814, 816 (5th Cir. 1997) (emphasis in original) ("[T]he district court's judgment must be modified to make [the dismissal of the copyright infringement claim] for want of subject matter jurisdiction."); *see also Starr v. DaimlerChrysler Corp.*, 252 F. App'x 590, 590 (5th Cir. 2007) (per curiam). However, in a subsequent unpublished opinion discussing the Supreme Court's decision in *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010), the Fifth Circuit noted that "[i]f a plaintiff does not have a copyright registration, her claim may be dismissed for failure to state a claim but should not be dismissed for lack of subject matter jurisdiction." *Real Estate Innovations, Inc. v. Hous. Ass'n of Realtors, Inc.*, 422 F. App'x 344, 348 (5th Cir. 2011) (per curiam) (discussing *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 166 (2010), in which the Supreme Court held that section 411(a) of the Copyright Act "imposes a precondition to filing a claim that is not clearly labeled jurisdictional, is not located in a jurisdiction-granting provision, and admits of congressionally authorized exceptions.").

Here, Plaintiff has neglected to even allege that he has registered—or even attempted to register—a copyright in the videos. He further appears to concede his lack of copyright registration. *See* Pl.'s Resp. 9. Although Plaintiff assumes that the Video Contract grants him a valid copyright in the videos, such a conclusion is insufficient to satisfy this element of a claim for copyright infringement. Because the Court has already concluded that Plaintiff's copyright infringement claim must be dismissed due to Plaintiff's inability to allege any actionable infringement on behalf of Defendant, it need not decide whether Plaintiff's failure to register a copyright warrants dismissal on jurisdictional or nonjurisdictional grounds.

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d. 305, 329 (5th Cir. 2002) ("district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal"). Accordingly, Plaintiff's copyright infringement claim is **DISMISSED with prejudice**.

In light of the foregoing, the portion of Defendant's Motion requesting a more definite statement of Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(e) is deemed **MOOT**.

SO ORDERED.

SIGNED: May 18, 2015.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE