UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| JOSEPH COOPER § | |
| § | |
| v. § | CASE NO. 3:14-cv-04152-B |
| § | |
| BRODERICK STEVEN "STEVE" HARVEY § | |

SECOND AMENDED COMPLAINT AND JURY DEMAND

Joseph Cooper complains of Broderick Steven "Steve" Harvey and demands a trial by jury.

1. This is a civil action seeking injunctive relief, damages and a declaratory judgment, for breach of contract and tortious interference under Texas law.

*Jurisdiction and Venue*

2. This Court has jurisdiction under 28 U.S.C. § 1332.

3. Cooper is a resident of Dallas County, Texas.

4. Harvey is a citizen either of Chicago, Illinois or Atlanta, Georgia. The amount in controversy is in excess of $75,000. This Court has diversity jurisdiction under 28 U.S.C. § 1332. Harvey has been served.

5. Venue is proper in this District as a substantial part of the events or omissions giving rise to the claims occurred in this District, 28 U.S.C. § 1391.

*Parties*

6. Joseph Cooper resides in this District and Division. Cooper does business as Close Up Video Productions in Dallas, Texas, and did so in 1993.

SECOND AMENDED COMPLAINT AND JURY DEMAND - Page 1

7. Broderick Steven "Steve" Harvey rents a residence in Chicago, Illinois and owns a house in Atlanta, Georgia. Harvey's address in Atlanta, Georgia is 8330 Jett Ferry Road, Atlanta, Georgia 30350. Harvey's address in Chicago, Illinois is 401 N. Wabash Ave., Chicago, Illinois 60611.

*Facts*

8. In 1993 and for a period of time thereafter, Harvey did business in Dallas County as Steve Harvey Comedy Club under an assumed name filing with the Dallas County Clerk dated August 19, 1992.

9. Harvey does business in Dallas, Texas, through, among other things, The Steve Harvey Morning Show (KRNB-FM 105.7), Steve Harvey Talk Show (KXAS), Family Feud (WFAA, KDFA), and Steve Harvey Mentoring National Camp in Dallas, Steve Harvey Radio Network, Inc., and sells products in Dallas, Texas, through the Steve Harvey Collection, SH Young Kings by Steve Harvey, and Steve Harvey Celebrity Edition.

10. In 1998, Harvey filed a lawsuit in the 193rd Judicial District Court, Dallas County, Texas, against Cooper. Harvey opened the Steve Harvey's Comedy Club in 1993. Harvey and other comedians performed "stand-up" comedy at Steve's Harvey Comedy Club.

11. On March 30, 1993, Cooper, doing business as Close Up Video Productions, and Harvey, doing business as Steve Harvey Comedy Club, entered into a written contract styled the Video Contract pursuant to which Cooper agreed to

> Produce video tape (s) of promotional material from the facility including exterior shots, audience, stage performances and graphics with official logos.

SECOND AMENDED COMPLAINT AND JURY DEMAND - Page 2

Tape will also include names, dates and music soundtracks. Tapes will be taped for continuous play before, during and after show performances. Video footage from KKDA Apollo Night, buffet and lobby area mingling with Mr. Harvey & guest. Business networking footage included.

12. The Video Contract further provided:

1. It is understood this studio [Cooper] is the exclusive official videographer, and others taking videos will be permitted only at our discretion.

3. The studio [Cooper] reserves the right to use the original tape and/or reproductions for display, publication or other purposes. Original videotapes remain the exclusive property of the studio.

13. In addition, Cooper provided advertising and marketing services to Harvey and incurred debts on behalf of Harvey some of which Harvey never paid.

14. Harvey successfully operated as the Steve Harvey Comedy Club.

15. Cooper fully complied with his obligations under the Video Contract. All conditions precedent to Cooper's recovery under the Video Contract have been satisfied.

16. Pursuant to the Video Contract, Cooper produced and sold videos other comedians performing at the Steve Harvey Comedy Club.

17. Cooper produced approximately 120 hours of video of Steve Harvey performances under the Video Contract.

18. Harvey knew that Cooper intended to use the recordings of Harvey's performances to create videos that would be sold at retail. Harvey did not disagree with Cooper's plans, but requested that Cooper delay in selling videos using Harvey's performances.

19. Harvey was concerned and Cooper understood that the release of the videos might interfere with Harvey's plans for his career at that time. Cooper delayed

his Harvey video project because the videos would become more valuable if Harvey became a bigger celebrity.

20. Harvey starred in the 1994 ABC television show "Me and the Boys." Harvey starred in the WB show "The Steve Harvey Show" from 1996 to 2002. Harvey continued stand up comedy and was one of the Kings of Comedy featured in the movie "The Kings of Comedy" released in 2000.

21. On August 2, 2012, Harvey performed for the last time as a stand up comedian.

22. As reported in en.mediamass.net/people/steve-harvey/highest-paid.html, *People with Money* reported on November 9, 2014, that Harvey is the highest paid actor in the World.

23. The approximately 120 hours contain Harvey doing comedy in a manner that contrasts with his present image as Harvey was younger at the time and not as much as a public figure. Cooper has removed and plans to remove additional materials that could only serve to create scandal for Harvey rather than showing Harvey's earlier comedic style.

24. In 1998, Cooper advised Harvey that Cooper intended to distribute the Harvey videos.

25. In October 1998, Cooper and Harvey orally agreed that Harvey would purchase the videos for $5,000,000. Harvey breached the agreement. On December 16, 1998, Harvey filed a lawsuit against Cooper, *Steve Harvey v. Joe Cooper, d/b/a Close*

*Up Video Production,* Cause No. DV-98-9501, 193rd Judicial District Court, Dallas County, Texas. Cooper filed a counterclaim.

26. Cooper obtained temporary restraining order against Harvey in the State Court lawsuit on June 28, 1999. The temporary restraining order was extended by agreement on July 16, 1999, and August 12, 1999. The August 12, 2009, agreed temporary restraining order entered restraining Harvey, his agents, employees, attorneys or assigns from the date of the agreed temporary restraining order until a hearing was held on the temporary injunction or until further agreement of the parties provided:

> Contacting any of Movant Joe Cooper's business associates or anyone with whom Movant has entered into negotiations with regarding the sale, production, distribution, advertising, or licensing of certain video tape which is the subject matter of the above referenced suit for the purpose of threatening them with legal action, any other negative action in the event they do business with Movant or for the purpose of intimidating them into refraining from doing business with Movant regarding certain video tape of Mr. Steve Harvey, Respondent, which is the subject matter of the above referenced suit, and from disparaging Movant or any of his employees, agents, assigns, companies or attorneys to any third parties.

27. Harvey violated the Agreed Temporary Restraining Order, but Cooper decided not to bring the violations to the court.

28. During the time the State Court lawsuit was pending, Cooper and Harvey entered into an agreement regarding the Harvey videos. Harvey failed to perform under this agreement.

29. The State Court lawsuit was non-suited without prejudice with costs taxed against Harvey on October 13, 2000.

SECOND AMENDED COMPLAINT AND JURY DEMAND - Page 5

30. Cooper has sought to obtain financial benefits from his rights under the Video Contract. Harvey has stated that Cooper has threatened Harvey to distribute the videos. Cooper has sought to work with Harvey so that Harvey can purchase the videos with the alternative being Cooper distributing and selling the videos without Harvey's involvement.

31. Harvey embarked upon a concerted effort to prevent Cooper from using the videos produced under the Video Contract to Cooper's financial advantage. Harvey has made public statements that Cooper has no rights to the videos and accusing Cooper of improper and illegal activities with regard to Cooper's efforts with regard to the videos. Harvey has defamed Cooper by Harvey's acts of libel and slander. Harvey engaged in business disparagement.

32. Cooper does not know why Harvey has acted to prevent Cooper from using the videos taken of Harvey at the Steve Harvey Comedy Club. Harvey has stated that (a) when the videos were created, he did a different type of comedy, and the videos embarrassed him, (b) the people told him that the lighting is bad, the sound is bad, (c) "he was afraid and didn't want the tapes out there," and (d) he was concerned about negative and harmful images.

33. In 2010-2013, Cooper sought to market, distribute and sell the first volume of a five volume set of videos entitled "Steve Harvey 'Live, Raw & Uncensored.'"

34. Harvey learned of efforts and attempted to interfere with Cooper's demands by making unfounded accusations against Cooper and interfering with Cooper's efforts to market, distribute and sell the Harvey videos.

35. Cooper attempted to create interest in and market the Harvey videos on the Internet and Harvey interfered with those efforts in 2013. Based on information and belief, Harvey's efforts involved Harvey and his representatives making false and defamatory statements about Cooper.

36. Cooper believes that Harvey and his representatives took other steps now unknown to Cooper to prevent Cooper from marketing, distributing and selling the Harvey videos.

37. Cooper negotiated with a number of companies who wished to distribute and sell Steve Harvey "Live, Raw & Uncensored."

38. Cooper negotiated and was prepared execute a Licensing and Distribution Agreement with Music Video Distributors, Inc. made effective January 20, 2014, granting Music Video Distributors an exclusive Worldwide license to promote, advertise, sell and distribute Steve Harvey "Live, Raw & Uncensored," and to promote, advertise, sell, transfer and distribute the video. Cooper was to receive a royalty 75% of the sales price of the videos less the actual manufacturing and approved marketing costs.

39. The proposed Licensing and Distribution Agreement provides that Cooper "is the owner of all right, title and interest, free and clear of all judgments, claims and encumbrances" of Steve Harvey "Live, Raw & Uncensored." Cooper disclosed to Music Video Distributors his previous litigation with Harvey.

40. In May 2014, Harvey's attorney, Ricky Anderson, advised Music Video Distributors' attorney that "Steve has not agreed to give Cooper the rights he claims and will come after us if we distribute the footage." The statement is false and is known to

be false by Harvey and his attorney. The statements defamed Cooper. Harvey disparaged Cooper's business.

41. Music Video Distributors advised Cooper it could not enter into the agreement in light of the statement made by Harvey's attorney.

42. Cooper attempted to interest other distribution companies in the Harvey videos. Cooper disclosed to the potential distributors the 1998 State Court lawsuit. Cooper has not entered into an agreement at the time of the filing of this lawsuit.

43. Cooper attempted to market the videos and information about Harvey to others who would have used the videos and information to create sensational stories about Harvey. Cooper decided not to do so without restrictions that the potential purchasers did not find acceptable.

44. Cooper owns the rights he agreed to have distributed. Harvey falsely asserted that he had rights that needed to be given to Cooper.

45. As a result of Harvey's false statements made by Harvey through his agent and attorney, Music Video Distributors said it could not complete the agreement with Cooper.

46. Cooper intends to distribute and sell the first volume of Steve Harvey "Live, Raw & Uncensored."

47. Cooper intends to produce and attempt the remaining four volumes of the Steve Harvey videos to create, distribute and sell the five volume set of Steve Harvey "Live, Raw & Uncensored."

45. Cooper also intends to produce a movie about the beginning of Steve Harvey's career utilizing the videos. Cooper has been the sole owner of the recordings since the time that videos were created under the Video Contract.

### *Breach of Contract*

46. Harvey's actions, as alleged above, prevented Cooper from making full and free use of the videos created pursuant to the Video Contract constitute breach of contract.

47. *Damages.* Cooper seeks damages resulting from the breach of contract.

### *Tortious Interference with Business Relations*

48. Harvey intentionally and knowingly interfered with Cooper's actual and perspective business relations with persons who would have done business with Cooper but for Harvey's interference with Cooper's efforts on the Internet. Defamation and business disparagement of Cooper constitute independent torts required for tortious interference with Cooper's business relations.

49. Harvey intentionally and knowingly interfered with Cooper's actual and perspective business relations with Music Video Distributors, Inc. Defamation and business disparagement of Cooper constitute independent torts required for tortious interference with Cooper's business relations.

50. Music Video Distributors, Inc. to withdraw from entering a contract with Cooper for the sale and distribution of the videos created pursuant to the Video Contract.

51. Harvey's tortious interference proximately caused Google and YouTube to take down ten (10) videos Cooper posted on the Internet in connection with his efforts to market, distribute and sell the Harvey videos. Google and YouTube took down videos placed by Cooper preventing Cooper from selling and distributing the Harvey Videos.

*Injunctive Relief*

52. *Permanent Injunction.* Harvey's conduct is causing and, unless enjoined and restrained by this Court, will continue to cause Cooper's great and irreparable injury that cannot fully be compensated or measured in money. Cooper has no adequate remedy at law. Cooper is entitled to injunctive relief prohibiting Harvey from further infringing Cooper's copyrights

53. Cooper requests that Harvey be enjoined permanently from directly or indirectly infringing Cooper's rights in the videos created under the terms of the Video Contract, including without limitation telling or otherwise advising any person, directly or indirectly, that Cooper does not own or have any or all rights to the videos created under the terms of the Video Contract or otherwise interfering with Cooper's rights to to use the original videos and/or reproductions for display, publication or other purposes.

54. *Damages.* Cooper seeks an award for actual damages equal to the lost benefits of the contract consisting of lost profits.

55. Cooper seeks damages for the lost use of moneys that would have been earned from the sale of the videos from the time of Music Video Distributor contract would have been entered. Such lost use of money is at least $1,000,000.

56. Cooper seeks the lost value of the videos due to Harvey's actions, including lost profits from the sale of the videos which is at least $40,000,000.

57. Due to Harvey's wrongful actions, Cooper cannot at this time mitigate his damages.

### *Declaratory Judgment*

58. Cooper seeks a declaratory judgment establishing Cooper and Harvey's rights to the videos under the March 30, 1993, Video Contract.

### *Attorney's Fees*

59. Cooper has retained the undersigned to represent him in this action and has agreed to pay a reasonable attorney's fees. Cooper sues for such fees.

### *Exemplary Damages*

60. Cooper seeks exemplary damages of $10,000,000.00 from Harvey for Harvey's outrageous, malicious and illegal conduct.

Therefore, Joseph Cooper demands judgment against Broderick Steven "Steve" Harvey for injunctive relief, a declaratory judgment and the sums set forth above, plus attorney's fees, interest and costs.

Respectfully submitted,
BENNETT, WESTON, LAJONE & TURNER, P.C.

s/ J. Michael Weston
_____
J. Michael Weston
SBN: 21232100
1603 LBJ Freeway, Suite 280
Dallas, Texas 75234
214.691.1776
Fax: (214) 373-6810
jmweston@bennettweston.com

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing First Amended Complaint and Jury Demand was served on all counsel of record on this 2nd day of July 2015.

/s/ J. Michael Weston
J. Michael Weston