UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

JOSEPH COOPER                          §
                                       §
v.                                     §          CASE NO. 3:14-CV-04152-B
                                       §
BRODERICK STEVEN "STEVE" HARVEY        §

BRIEF IN SUPPORT OF COOPER'S
MOTION FOR PARTIAL SUMMARY JUDGMENT

Joseph Cooper submits this Brief in support of his Motion for Summary Judgment.

Cooper seeks judgment on all issues other than the relief to which he is entitled.

I.      FACTS

Since 1984, Cooper has operated the videotape/advertising company Close Up Video

Productions.  Cooper has created tapes and advertising for politicians, public figures, church

leaders, entertainers and others.  Cooper has taped performances of musicians, comedians and

other entertainers.  Cooper taped performances on an exclusive basis at the Longhorn Ballroom

and the Steve Harvey Comedy House ("Comedy House").

Steve Harvey is a producer, actor, writer, stand up comedian and host of The Steve

Harvey Show and Family Feud on television and his radio show.  Harvey started as a stand up

comedian in 1985 and, in 1993, Harvey owned the Comedy House in Dallas.

In March 1993, the Comedy House did not generate sufficient income for Harvey to

support himself or to advertise.  On March 20, 1993, Cooper and Harvey agreed that Cooper

would tape Comedy House performances to produce promotional materials.  The completed and

signed the instrument called the Video Contract.  ("Contract").  Cooper received $2,000, plus

taxes, in installments, designation as the exclusive official videographer of the Comedy House,

and "the rights to use the original tape and/or reproductions for display, publication or other

**BRIEF IN SUPPORT OF COOPER'S MOTION FOR SUMMARY JUDGMENT - Page 1**

purposes" and ownership of the original videotapes.  Harvey did not talk to Cooper about who owned the videos taken until this lawsuit arose.

Cooper created a video from Harvey's Comedy House performances and plans four more videos.  ("Harvey videos").  Harvey has prevented and wants to prevent Cooper from selling the Harvey videos.  Harvey testified that his comedy at the Comedy House was "edgier" than what he now does.  "You know, subject matter was -- I didn't have to concern myself with branding or imaging or anything.  You could just say -- I thought I was funnier."   Harvey testified that he talked to Cooper about not wanting the videos published:

A.      I don't know the exact date. But we've had many conversations about it.

Q.      Why didn't you want it published?

A.      I didn't think -- like it said right here, I didn't think the material was appropriate for where I was in my life at that time.

Q.      So why wouldn't telling Mr. Cooper that be important if Mr. Cooper didn't have a right to publish them in the first place?

A.      Well, if he had the right to publish it, why would he need my permission?

Q.      Did he ask for your permission?

A.      A bunch of times he proposed these proposals to me, that we take this public. He asked me over and over and over several times.

Q.      He asked you to assist him in promoting it, didn't he?

A.      He asked me to be a part of it.

Q.      Do you think that a video of Steve Harvey from the early days is more valuable with Steve Harvey's endorsement than without?

A.      Of course. That's the only way you can have value to it.

In 1998, Cooper attempted to sell the Comedy House tapes to Harvey and wanted to sell a video made from the tapes to the public.  In December 1998, Harvey sued Cooper over the

Contract in *Harvey v. Cooper,* No. 98-9501, 193rd Judicial District Court, Dallas County, Texas.

("State Court lawsuit").  Cooper counterclaimed.  Harvey agreed to the pleading styled "Agreed

Order to Extend Temporary Restraining Order" prohibiting him from

> [c]ontacting any of . . . Cooper's business associates or anyone with whom [Cooper] has entered into negotiations with regard to the sale, production, distribution, advertising, or licensing of a certain video tape . . . for the purpose of threatening them with legal action, any other negative action in the event they do business with [Cooper] . . . .

> IT IS FURTHER ORDERED that this Order is extended until a hearing for temporary injunction is held or until further agreement by the parties. . . .

("Agreed Order").  The State Court lawsuit was dismissed without prejudice.  By its terms, the

Agreed Order never expired.

In 2013-2014, Harvey thwarted Cooper's efforts to sell the Harvey video.  In May 2013,

Harvey, through his attorney, demanded that Google remove certain materials Cooper posted

about Harvey and the Harvey videos on YouTube.  In May 2014, Harvey, through his attorney,

told the attorney for a company through whom Cooper sought to distribute the Harvey videos

that Cooper not have rights to do so and that Harvey "would very likely take action to stop that

from happening."  Harvey's actions destroyed the value of the non-monetary consideration

Cooper received under the Contract.

Harvey breached the March 20, 1993 Contract and his obligations under the Agreed

Order, and interfered with Cooper's efforts to benefit from his rights under the Contract.  Cooper

sued Harvey for breach of contract and tortious interference with business relations.  Harvey

counterclaimed for invasion of privacy, violation of right to publicity and conversion.

II.     ARGUMENT

*A.      Applicable Law*

1.      *Texas Law*

Texas law supplies the rules of decision in this federal diversity action. *See* 28 U.S.C. § 1652, *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).

2.    *Rule 56*

Fed. R. Civ. P. 56(a) permits granting "summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Harvey takes contradictory positions regarding the Contract and Cooper.  Harvey denies he signed or agreed to the Contract, sued Cooper in 1998 based on the Contract, and contests the meaning of the Contract's language.  Harvey denies Cooper owns the Videos, and admits that he does not intend to prevent Cooper from asserting his ownership of the Videos.  Harvey agreed to the Agreed Order protecting Cooper's rights to the Videos, and denies Cooper has rights to the Videos.  Harvey agreed to the Agreed Order and denies knowledge of the Agreed Order.  Harvey agreed to the Agreed Order and admits that his agent told MVD that Cooper did not have the right to distribute the Videos.  Harvey denies committing defamation and admits that he consistently advanced the false position that Cooper does have not an ownership interest that allow him to sell or distribute the videos.  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris,* 550 U.S. 372, 380 (2007).

3.    *Breach of Contract*

Whether a contract was breached is a question of law.  *E.P. Towne Ctr. Partners, L.P. v. Chopsticks, Inc.*, 242 S.W.3d 117, 123 (Tex.App.-El Paso 2007, no pet.).  Cooper must show (a) existence of a valid contract, (b) Cooper performed or tendered performance, (c) Harvey

breached the contract, and (d) Cooper suffered damages as a result of the breach.  *Lewis v. Bank of Am. NA*, 343 F.3d 540, 545 (5th Cir.2003).  Harvey alleges that there was no contract and that the Contract does not mean what it says.

A legally enforceable contract consists of (1) an offer, (2) acceptance in strict compliance with the terms of the offer, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Parker Drilling Co. v. Romfor Supply Co.*, 316 S.W.3d 68, 72 (Tex.App.-Houston [14th Dist.] 2010, pet. denied).  Whether the instrument is called an invoice or the Contract, Cooper and Harvey entered into a contract.  *David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450 (Tex. 2008), *see One Beacon Ins. Co. v. Crowley Marine Services*, 648 F.3d 258 (5th Cir. 2011).  Cooper performed by taping performances as agreed.  Harvey breached the Contract by destroying the value of the non-monetary consideration Cooper received under the Contract.  *See TeleResource Corp. v. Accor North America,* 427 S.W.3d 511, 519-520 (Tex.App. - Fort Worth 2014, rev. denied).

> ### 4.      *August 12, 1999 Agreed Order to Extend Temporary Restraining Order*

Harvey agreed to Cooper's rights to sell, produce, distribute, advertise or license the Videos in the Agreed Order.  Harvey describes the Agreed Order as temporary and as terminating when the lawsuit was dismissed.  Document 127, ¶¶ 14-15.  By its language, the Agreed Order is effective "until a hearing on the temporary injunction is held or until further agreement by the parties."  Neither terminating event ever occurred.

Texas law governs the construction and enforcement of the Agreed Order.  *In re Deepwater Horizon,* 785 F.3d 986, 994 (5th Cir. 2015).  The Agreed Order complies with Tex. R. Civ. 11 and is interpreted in the same manner as contracts in general.  *See Golden Spread Elec. Co-op., Inc. v. Denver City Energy Associates, L.P.,* 269 S.W.3d 183, 190 (Tex. App. -

Amarillo 2008, pet. denied); *Dallas Cnty. v. Rischon Dev. Corp.,* 242 S.W.3d 90, 93 (Tex.App.–

Dallas 2007, pet. denied). Courts enforce parties' intent as stated in their agreement. *Kachina*

*Pipeline Co. v. Lillis,* 471 S.W.3d 445, 450 (Tex. 2015). Enforcement of a Rule 11 agreement

can occur years after the trial court lost jurisdiction of the case in which the agreement was

entered. *Coale v. Scott,* 331 S.W.3d 829, 831-832 (Tex. App. - Amarillo 2011, no pet.), *see*

*United States v. City of New Orleans,* 731 F.3d 434, 438-439 (5th Cir. 2013), *Williamson v.*

*Bank of New York Mellon,* 947 F.Supp.2d 704, 707 (N.D. Tex. 2013). Harvey is bound by and

breached the terms of the Agreed Order.

     5.    *Tortious Interference*

     Cooper must show (a) a reasonable probability that Cooper would have entered into a

business relationship; (b) Harvey's independently tortious or unlawful act prevented the

relationship from occurring; (c) Harvey did such act with a conscious desire to prevent the

relationship from occurring or Harvey knew the interference was certain or substantially certain

to occur as a result of the conduct; and (d) Cooper suffered actual harm or damages as a result of

Harvey's interference. *Sanger Ins. Agency v. HUB Intern., Ltd,* 802 F.3d 732, 748 (5th 2015);

*Wal-Mart Stores, Inc. v. Sturges,* 52 S.W.3d 711, 713 (Tex. 2001); *Mary Kay, Inc. v. Weber*, 601

F.Supp.2d 839, 863 (N.D. Tex.2009). Cooper had a reasonable probability of a contract with

MVD and lost that probability. Harvey testified that he did not want the videos to be published.

     Harvey's independent torts for a claim for tortious interference with business relations are

business disparagement and defamation. The elements of defamation and business

disparagement are a) plaintiff is a private individual, (b) defendant published a statement, (c)

statement was defamatory concerning the plaintiff, (d) defendant acted with negligence regarding

the statements truth, (e) plaintiff was injured. *In re Lipsky,* 460 S.W.3d 579, 593 (Tex. 2015);

*Neely v. Wilson*, 418 S.W.3d 52, 59 (Tex. 2013);  *WFAA–TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex.1998).  A statement is defamatory if it tends to (a) injure a person's reputation, (b) expose him to public hatred, contempt, ridicule, or financial injury, or (c) impeach his honesty, integrity, or virtue. *Am. Heritage Capital, LP v. Gonzalez*, 436 S.W.3d 865, 875 (Tex.App.— Dallas 2014, no pet.); *see also* Tex. Civ. Prac. & Rem. Code § 73.001.  Defamation *per se* includes (i) accusing someone of a crime, and (ii) disparaging another's fitness to conduct his or her business or trade. *In re Lipsky*, 460 S.W.3d at 596.

The status of the defamed person determines the requisite degree of fault. A private individual need only prove negligence, whereas a public figure or official must prove actual malice. *WFAA–TV, Inc.*, 978 S.W.2d at 571. "Actual malice" in this context means that the statement was made with knowledge of its falsity or with reckless disregard for its truth. *Huckabee v. Time Warner Entertainment Co., LP.*, 19 S.W.3d 413, 420 (Tex.2000). Finally, the plaintiff must plead and prove damages, unless the defamatory statements are defamatory per se. *Waste Mgmt. of Texas, Inc. v. Texas Disposal Systems Landfill, Inc.*, 434 S.W.3d 142, 162 fn.7 (Tex. 2014).

Harvey's statements to Google and MVD stating that Cooper did not have rights granted to him under the Contract are defamation *per se* as accusations that Cooper is committing fraud on the potential distributor of the videos and/or on Harvey, and as disparaging Cooper and his business.  Cooper was unable to contract with MVD.

6.    *Cooper's Sought Relief*

This Court held in *BCC Merchant Solutions, Inc. v. JetPay, LLC,* --- F.Supp.3d ---, 2015 WL 5227822, *26 (N.D. Tex. September 8, 2015),

" 'rule for measuring damages for the breach of a contract is just compensation for the loss or damage actually sustained.' " *Phillips v. Phillips*, 820 S.W.2d 785, 788

(Tex.1991) (quoting *Stewart v. Basey*, 150 Tex. 666, 245 S.W.2d 484, 486 (1952)). To recover such actual damages in a breach of contract action, the plaintiff must establish that its damages are "the natural, probable, and foreseeable consequence of the defendant's conduct." *Mead v. Johnson Grp., Inc.*, 615 S.W.2d 685, 687 (Tex.1981).

Tex. Civ. Prac. & Rem. Code § 41.001(4).

Regarding damages for tortious interference with business relations, the Fifth Circuit stated in *Homoki v. Conversion Servs., Inc.*, 717 F.3d 388, 398-399 (5th Cir.2013):

In Texas, tortious interference with contract and breach of contract typically share the same measure of damages: to place the injured party in the position he would have been had the contract been performed.

Cooper seeks a permanent injunction pursuant to Fed. R. Civ. P. 65(d)(1)(C) to enjoin Harvey from preventing Cooper from exercising his rights granted to him by the Contract.   The standards for a permanent injunction are set forth in *eBay Inc. v. Mercexchange, LLC,* 547 U.S. 388, 391 (2006):

According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

Cooper seeks a declaratory judgment pursuant to 28 U.S.C. §§ 2201-2202 defining his rights under the Contract.  A declaratory judgment requires, 28 U.S.C. §§ 2201(a):

In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

A request for declaratory relief is not a separate cause of action but a form of relief. *ahr Life Ins. v. Haworth,*  300 U.S. 227, 240 (1937).

**BRIEF IN SUPPORT OF COOPER'S MOTION FOR SUMMARY JUDGMENT - Page 8**

7.    *Harvey's Defenses*

Harvey raises affirmative defenses for which he has the burden of proof. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex. 1979).

Under Texas law, Harvey had the burden to challenge under oath his signature on the Contract. Tex. R. Civ. P. 93(7). Harvey did not raise the issue in his Answer.

Harvey uses the word "copyright" in his Answer, Document 123, but raises no defenses or cause of action under Title 17 of the U.S. Code.

8.    *Judicial Admissions and Judicial Estoppel*

Regarding the Contract and Cooper, Harvey made a numerous judicial admissions, *Jonibach Management Trust v. Wartburg Enterprises, Inc.,* 750 F.3d 486, 491 fn 2 (5th Cir. 2014), and statements that he is judicially estopped from contradicting. *In re Superior Crewboats,* 374 F.3d 330, 334 (5th Cir. 2004); *GlobeRanger Corp. v. Software AG*, 27 F.Supp.3d 723 (N.D. Tex. 2014). The elements of a judicial admission are (a) formal concession in pleadings, (b) regarding facts, (c) by a party or counsel. *Id.* at 744. The elements of judicial estoppel are (a) party changing positions, (b) the positions are clearly inconsistent, and (c) the party convinced a court to accept the previous position. *Ahrens v. Perot Sys. Corp*., 205 F.3d 831, 833 (5th Cir. 2000).

Harvey's admissions and estopped statements are described in Cooper's Motion for Summary Judgment.

9.    *Harvey's Discovery Responses*

Cooper submitted his Second Set of Interrogatories on specific allegations made in Harvey's Answer. Harvey's responses are incomplete and Harvey did not supplement or amend his responses to the cited responses. Fed. R. Civ. P. 37(c), *Heller v. City of Dallas,* 303 F.R.D.

466 (N.D. Tex. 2014).  The Fifth Circuit has held:

> disregard for the federal rules of discovery in this area created a "trial by ambush" which those rules are designed to prevent. The rules are designed to narrow and clarify the issues and to give the parties mutual knowledge of all relevant facts, thereby preventing surprise. *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947).

*Shelak v. White Motor Co.,* 581 F.2d 1155, 1159 (5th Cir. 1978).  In *Hickman v. Taylor*, 329 U.S. 495, 507 (1947), the Supreme Court wrote: "Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation."  Harvey's right to use documents and information that should have been provided in response to discovery is restricted.  Fed. R. Civ. P.  37(c) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.").

In response to Cooper's Second Interrogatories, Harvey made broad objections, and then provided position statements.  In most of his responses, Harvey provide little information that provides evidence supporting Harvey's allegations.  Cooper moved to compel, Document 76, and the motion was taken under advisement.  Document 84.  Harvey specifies none of plaintiff's documents or other evidence supporting his positions.  Harvey also swears with no specificity that "The parties, third parties, and experts can confirm the facts necessary for this defense, if any."  The documents and persons should have been disclosed.  Fed. R. Civ. P. 26(a)(1)(A)(ii).  Reasonable inquiry would have included designation of specific documents or groups of documents and the identification of "third persons and experts."  Fed. R. Civ. P. 26(g).  Cooper requests that Harvey be limited to his discovery responses as providing bases for his defenses.  Fed. R. Civ. P. 37(c)(1).

    B.      The Cooper's Contract Claims

       1.     *The Contract*

The language of the Contract is simple and clear.   *See Lamajak, Inc. v. Frazin,* 230 S.W.3d 786, 793 (Tex. App. - Dallas 2007, no pet.).   Harvey's attempts to find new language and meaning in the Contract fail because the Contract is not ambiguous.   Ambiguity is a question of law.   *BCC Merch. Solutions, Inc. v. Jet Pay, LLC,* 2015 WL 5227822 at *29.   Lack of clarity does not create ambiguity, nor does the fact that the parties have differing interpretations of the Contract.   *DeWitt Cnty. Elec. Coop v. Parks,* 1 S.W.3d 96, 100 (Tex. 1999).   Ambiguity exists when a contract is susceptible to more than one reasonable interpretation after applying established rules of construction.   *Univ. Health Servs., Inc. v. Renaissance Women's Grp., PA,* 121 S.W.3d 742, 746 (Tex. 2003).

Courts enforce contracts by reference to the parties' intent expressed in their contract. *Kachina Pipeline,* 471 S.W.3d at 450.   The Contract provides that Cooper

> reserves the right to use the original tape and/or reproductions for display, publication or other purposes.   Original videotapes remain the exclusive property of [Cooper].

Harvey seeks to impose his meanings on the Contract beyond its language claiming (a) "the absolute right to possess a copy of the" Videos, (b) "dominion and control over the sale or distribution of the Videos," and (c) it "authorized the creation of the [Videos] mandated that the videos be released to [Harvey] without restriction upon [his] full payment of said Invoice." Document 123, ¶¶ 12, 17, 23, 99.   Harvey swears in discovery that "The document in question [the Contract] conforms these facts. And the parties have evidence indicating that the invoice was paid as discussed above."   The Contract does not support Harvey's claimed meanings.

Harvey seeks to have the handwritten description of Cooper's services eliminate the printed portions of the Contract.   See Document 123, ¶ 12, 82, 87.   While handwritten and typed provisions control over *conflicting* printed provisions, printed provisions have meaning. *See McCreary v. Bay Area Bank & Trust,* 68 S.W.3d 727, 732 (Tex.App.-Houston [14th Dist.] 2001,

pet. dism'd).  "When discerning the contracting parties' intent, courts must examine the entire

agreement and give effect to each provision so that none is rendered meaningless."  *Kachina*

*Pipeline Co.,* 471 S.W.3d at 450.  Under Harvey's construction of the Contract, Cooper agreed to

film performances for an indefinite period of time and give Harvey use of Cooper's video

equipment for $2,000.  The value of the services Cooper provided to Harvey was between

$100,000 to $150,000.

      2.    *Consent*

Harvey consented to Cooper's use of his name and likeness to publish videos made from

the tapes.  Restatement (Third) of Unfair Competition, § 46.  "[I]t is a defense that the actor's

consent is manifested by an agreement between the parties or by other conduct from which the

owner's consent can be reasonably inferred."  Restatement (Third) of Unfair Competition § 29.

Consent is "A voluntary yielding to what another proposes or desires; agreement, approval, or

permission regarding some act or purpose, esp. given voluntarily by a competent person; legally

effective assent."  Black's Law Dictionary (10th ed. 2014).  Case law involving the right to use a

name and image validate Cooper's reading of the Contract.

The Contract in *Kimbrough v. Coca-Cola/USA*, 521 S.W.2d 719, 720 (Tex. App. -

Eastland 1975, writ ref'd n.r.e.) provided:

> There is also a contemplated use of these paintings in a series of institutional
> advertisements in behalf of college football, in Dave Campbell's TEXAS FOOTBALL
> Magazines.

When Coca-Cola used Kimbrough's image to advertise Coca-Cola, and Kimbrough sued.

Kimbrough argued that his consent was limited by the language "in behalf of college football."

The appellate court agreed that the quoted language raised an issue as to the scope of

Kimbrough's consent.  *Id*. 724.

In *King v. Ames,* 179 F.3d 370, 372 (5th Cir. 1999), reference to the parties' agreement resolved the scope of authorized use of a name or image.  The underlying question was whether the licensing agreement related to a single disc or three discs of Freddie King performances.  The King heirs successfully sued for breach of contract.

In *Zim v. Western Publishing Co.,* 573 F.2d 1318 (5th Cir. 1978), again, the language of an agreement determined the rights to use the author's name and image.  The right to publish the books included the right to use the author's name.  If there was no consent to publish, there was no right to use the author's name.  *Id.* at 1327.

In *Orthopedic Systems, Inc. v. Schlein*, 202 Cal. App. 4th 529, 533-534 (Cal. App. - 1st Dist. 2011) the handshake deal to sell a product included the right to use the name of the product developer, *id.* at 534.  Termination of the agreement and of royalty payments ended the seller's rights to the products. *Id.* at 537.

Cooper's "right to use the original tape and/or reproductions for display, publication or other purposes" perforce includes consent to use Harvey's name and image to publish the Videos, otherwise, the right to display, publish or otherwise use would be meaningless.

3. *Harvey Seeks to Avoid the Contract*

Harvey raises a number of affirmative defenses.  Document 123, ¶¶ 65-96.  Whether a matter is an affirmative defense depends on the applicable state law.  *Lucas v United States,* 807 F.2d 414, 417 (5th Cir. 1986),  *Funding Systems Leasing Corp. v. Pugh*, 530 F.2d 91, 95 (5th Cir.1976).  Harvey has the burden to prove his affirmative defenses.  *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 678 (Tex. 1979).  Under Tex.R.Civ.P. 93, Harvey would have had the burden to file a verified answer raising lack of execution of the Contract, and that the Contract was without consideration or the consideration failed.  Harvey cannot meet his

burdens.

Harvey denies the elements of a contract and denies the fundamental rules applicable to contracts: (a) parties are bound by their contract, *Pacific Mutual Life Ins. Co. v. Westglen Park, Inc.*, 160 Tex. 1, 325 S.W.2d 113, 116 (1959), and (b) courts enforce contracts by reference to the parties' intent as reflected in the contract, *Kachina Pipeline Co., Inc. v. Lillis*, 471 S.W.3d at 450, and (c) a relationship does not have to be called a contract to be binding. *See Tekelec, Inc. v. Verint Systems, Inc.,* 708 F.3d 658, 661 (5th Cir. 2013) ("Blue Pumpkin/IEX Settlement & Cross-License Agreement").  Harvey needs to avoid basic contract law.

The reasons for Harvey's positions are that (a) Harvey is embarrassed by the content of his 1993-1994 performances, and/or (b) the Videos have more value in 2015 than in 1993, with Harvey receiving no benefit from that increased value.  In 1993, Harvey was "edgier" and not a celebrity.  Harvey could not support himself or pay his bills related to the Comedy House. Harvey paid Cooper $2,000 in installments.

> a.  *Harvey's Signature*

Harvey denies signing the Contract.  Document 123, ¶ 67.  Harvey agreed to provide "five exemplars if found."  No exemplars were found or produced.  Cooper saw Harvey sign the Contract.  Forgery is a criminal offense, Tex. Pen. Code 32.21.  Harvey admitted the existence of the Contract or is judicially estopped from denying the Contract and the binding effect of the Contract.

> b.  *Making a Contract*

The basic rules governing the terms of the Contract are simple:

> "When discerning the contracting parties' intent, courts must examine the entire agreement and give effect to each provision so that none is rendered meaningless." "We give contract terms their plain and ordinary meaning unless the instrument indicates the parties intended a different meaning. . . ."

*Kachina Pipeline Co., Inc. v. Lillis*, 471 S.W.3d at 450 (Citations omitted), *see BCC Merch.*

*Solutions, Inc. v. Jet Pay, LLC*, --- F.Supp.3d ---, 2015 WL 5227822, *29, 92 Fed.R.Serv. 3d 911

(September 8, 2015).

> It is a long-standing rule that where "parties got that which they bargained for and were not acting under mistake, fraud, or the like, the courts do not concern themselves with the relative values exchanged or the wisdom of the contract...." *Winningham v. Dyo*, 48 S.W.2d 600, 603 (Tex.Com.App. 1932)."

*In re Texans CUSO Ins. Group, LLC*, 426 B.R. 194, 218 (Bankr. N.D. Tex. 2010).  Harvey's

payment of the moneys required by the Contract, permitting Cooper to tape performances at the

Comedy House, Cooper's taping of the Comedy House performances, and the suit against

Cooper in the State Court lawsuit all evidence the existence of the Contract.

Harvey alleges that he did not accept the Contract.  Document 123, ¶ 67.  Acceptance is

an expression of assent to an offer as evidenced by what the parties said and did.  *Luchese Boot*

*Co. v. Rodriguez*, 473 S.W.3d 373 (Tex.App. - El Paso 2015, no pet.).  Harvey swore that

> the parties have evidence indicating that the invoice was paid as discussed above and that no rights were conveyed to Plaintiff. The parties also have no evidence that Defendant 'accepted' the terms or conveyance of rights advanced in Plaintiff's Complaint.

The evidence is that, even without Harvey's signature, Cooper performed his contractual

obligations, and, Harvey paid Cooper as agreed and, in 1998, Harvey sued Cooper regarding the

Contract.  The Contract is binding.  *Phillips v. Carlton Energy Grp., LLC,* --- S.W.3d ---, 2015

WL 2148951, *8 (Tex. 2015) ("While signature and delivery are often evidence of the mutual

assent required for a contract, they are not essential.").

Harvey attacks the consideration for the Contract in a variety of ways.  Document 123, ¶¶

67, 69-70, 72-74, 81, 87-88.  Consideration is fundamental to a contract.  *In re Capco Energy,*

*Inc.,* 669 F.3d 274, 280 (5th Cir. 2012).  What constitutes consideration of is a question of law.

*Bryant v. Cady,* 445 S.W.3d 815, 819 (Tex. App. - Texarkana 2014, no pet.).  Consideration is

presumed to exist.  *Doncaster v. Hernaiz,* 161 S.W.3d 594, 603 (Tex.App. - San Antonio 2015,

no pet.).

> Consideration is a present exchange bargained for in return for a promise.  It consists of
> either or a benefit to the promisor or a detriment to the promisee.

*Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 496 (Tex.1991) (citations omitted).

Performance and reliance on the Contract as a basis to make a claim against Cooper in the State

Court lawsuit proves the Contract.  Alternatively, Harvey is judicially estopped from denying the

Contract.

Harvey's claim that the Contract is unconscionable also attacks consideration.  Document

123, ¶¶ *.  Unconscionability is a question of law.  *In re Poly-America, L.P.,* 262 S.W.3d 337,

349 (Tex. 2008).  The Texas Supreme Court held

> A contract is unenforceable if, "given the parties' general commercial background and the
> commercial needs of the particular trade or case, the clause involved is so one-sided that
> it is unconscionable under the circumstances existing when the parties made the
> contract." Unconscionability is to be determined in light of a variety of factors, which
> aim to prevent oppression and unfair surprise; in general, a contract will be found
> unconscionable if it is grossly one-sided.

*Id.* at 348-49 (citations omitted).  Nothing in the Contract or the facts prove an unconscionable

contract.

Harvey alleges unjust enrichment, Document 123, ¶ 71, which occurs "when one person

has obtained a benefit from another by fraud, duress, or the taking of an undue advantage."

*Heldenfels Bros., Inc. v. Corpus Christi*, 832 S.W.2d 39, 41 (Tex.1992).  Knowingly entering

into the Contract precludes the defense of unjust enrichment.  *Harris Cnty. Texas v.*

*MERSCORP, Inc.,* 791 F.3d 545, 561 (5th Cir. 2015).  Under Harvey's theory, a person who

purchased a house in 1993 which appreciated has been unjustly enriched.  Harvey and Cooper

negotiated and entered into a valid contract, and Cooper seeks to enjoy the benefits of the

Contract, that is not unjust.

Harvey's lack of consideration defense, Document 123, ¶ 72, requires that on March 20,

1993, the consideration for the Contract was "so inadequate as to shock the conscience, being

tantamount to fraud." *Garcia v. LumaCorp, Inc.,* 429 F.3d 549, 555 (5th Cir. 2005), *In re

C.H.C.,* 396 S.W.3d 33, 45 (Tex. App. - Dallas 2013, no pet.).  Harvey's only complaint of

unfairness is that the Videos have value today that they did not have in 1993.  The Contract is

supported by consideration.

Consideration did not fail.  Document 123, ¶ 73.  "[A] failure of consideration occurs

when, because of some supervening cause arising after the contract is formed, the promised

performance fails." *Cheung-Loon, LLC v. Cergon Grp., Inc.,* 392 S.W.3d 738, 747 (Tex. App. -

Dallas 2012, no pet.).  From Harvey's perspective the failure had to be Cooper's.  Cooper taped

the performances as agreed, there was no failure of consideration.

Harvey alleges conditions precedent did not occur.  Document 123, ¶¶ 74, 81, 88.  A

condition precedent is an event that must happen or be performed before a right can accrue to

enforce an obligation. *Solar Applications Eng'g, Inc. v. T.A. Operating Corp.,* 327 S.W.3d 104,

107 (Tex. 2010).  Harvey swore regarding the alleged failure of a condition precedent that

"Plaintiff has rendered no services or provided no consideration that would entitle him to what is

being sought." The Contract creates one condition precedent for Cooper, taping of performances

at the Comedy House.  The condition has been satisfied. *See Greathouse v. Charter Bank -

Southwest,* 851 S.W.3d 173, 174 (Tex. 1992).

    c.     *Terms*

Harvey alleges that the Contract terms are indefinite.  Document 123, ¶ 69.  Harvey

responded discovery on that allegation swearing that "Even if the document in question were considered a contract, the terms of it appear on the document."  The terms of a contract must be sufficiently definite it is terms so that a court can understand what the promisor undertook.  *T.O. Stanley Boot Co., Inc. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex.1992).  In accordance with the stated terms of the Contract, Harvey paid Cooper and vested Cooper with ownership of the tapes taken pursuant to the Contract, with the right to publish or use the tapes, and Cooper taped performances.  The parties evidence no uncertainty about the terms of the Contract.

To prove fraudulent inducement, Document 123, ¶ 95, Harvey must prove  (a) Cooper made a material misrepresentation; (b) Cooper knew the representation was false or made the representation recklessly without any knowledge of its truth; (c) Cooper made the representation with the intent that the other party would act on that representation or intended to induce the party's reliance on the representation; (d) Harvey suffered an injury by actively and justifiably relying on that representation, and (e) Harvey entered into the parties' contract based on Cooper's false representations. *Haase v. Glazner*, 62 S.W.3d 795, 798-799 (Tex.2001); *Exxon Corp. v. Emerald Oil & Gas Co., LLC,* 348 S.W.3d 194, 217 (Tex. 2011).  The parties' representations are contained in the Contract, and the provisions of the Contract are not false.  Cooper's only representation was that he would tape performances that the Comedy House, which he did.

Harvey made no mistake in entering the Contract.  Harvey alleges his mistake was that the Contract does not reflect his "intent" that the Videos be used only for promotional purposes.  Document 123, ¶ 87.  Cooper's alleged mistake is believing he has rights granted under the Contract.  The elements of mutual mistake are (a) a mistake of fact, (b) held mutually by the parties, and (c) which materially affects the agreed-upon exchange." *City of the Colony v. N. Tex. Mun. Water Dist.*, 272 S.W.3d 699, 735 (Tex.App.-Fort Worth 2008, pet. dism'd).  Harvey's

alleged mistake seemingly arises not reading the Contract.  Cooper's alleged mistake comes from

not accepting Harvey's aspirations for the Contract.  A party is bound to the contract he signs

regardless of whether he read it or believed it had different terms.  *In re McKinney,* 167 S.W.3d

833, 835 (Tex. 2005).  There was no mistake.

         d.     *Other Contractual Issues*

Harvey alleges that Cooper's "claims are barred, in whole or part, by the statute of

frauds."  Document 123, ¶ 68.  Harvey swore regarding the statute of frauds that

> The document in question conforms other facts alleged herein. And the parties have
> evidence indicating that the invoice was paid as discussed above and that no rights were
> conveyed to Plaintiff. The parties also have no evidence that Defendant 'accepted' the
> terms or conveyance of rights advanced in Plaintiff's Complaint.

The Texas Statute of Frauds, Tex. Bus. & Com. Code § 26.001 and 17 U.S.C. § 204 are

inapplicable.  The Contract is the writing that consents to Cooper's ownership and publishing of

the Videos which includes consent to use of Harvey's name and image in publishing the Videos.

Harvey signed the Contract, Cooper taped performances, Harvey paid moneys due, Harvey sued

Cooper on the Contract, and now Harvey attempts to deny the Contract.

    C.    *Tortious Interference with Business Relations*

       1.    *Cooper's Claims*

Cooper's experience is that the Videos can be sold through the Internet.  Before MVD's

attorney talked to Harvey's attorney, MVD agreed to give Cooper a $25,000 advance against

moneys Cooper would earn under his anticipated agreement with MVD.  Harvey admits that

MVD was told that Cooper had no right to publish the Videos.  The communication stopped

MVD from entering an agreement with Cooper, which caused Cooper injury and, at the least,

prevented Cooper from receiving the $25,000 advance.  Additionally, Cooper spent time and

money creating the tapes and videos.

Pursuant to the Digital Millennium Copyright Act, 17 U.S.C. § 512(c), Harvey sent twelve "take down" notices to cause Google to remove Cooper's materials on YouTube. The documents sent to Google state,

> The owner of this Trademark, our Client, Mr. Steve Harvey, has not authorized or licensed YouTube or its users to use this Trademark. We ask that this video be removed."

The identified IP Addresses relate to materials Cooper posted on YouTube. Anderson's statements made to Google are false because they deny Cooper's ownership interest in the Videos as granted in the Contract.

2.      *Harvey's Defenses*

Harvey affirmatively pleads First Amendment, privilege and justification in response to Cooper's tortious interference claims. Document 123, ¶ 89. These are defenses to the underlying independent torts of defamation and business disparagement needed for the tortious interference claims. *Wal–Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726–27 (Tex.2001). Harvey swore that

> Plaintiff has rendered no services or provided no consideration that would entitle him to what is being sought. Even if Plaintiff had a valid contract, Defendants action were justified.

Cooper and Harvey performed under the Contract, which consented to Cooper's right to publish. Cooper does not claim that Harvey improperly used the Videos, thus, these defenses do not apply. *See Zacchini v. Scripps-Howard Broad. Co.,* 433 U.S. 562 (1977).

The elements of common law privilege or justification[1] are (a) communication made without actual malice, i.e. good faith, (b) concerning a subject matter that is of sufficient interest to the actor or in reference to a duty owed by the actor, and (c) communicated to a person who

---

[1]      *See  Wal-Mart Stores, Inc. v. Sturges,* 52 S.W.3d 711, 726-727 (Tex. 2001).

**BRIEF IN SUPPORT OF COOPER'S MOTION FOR SUMMARY JUDGMENT - Page 20**

has a corresponding interest or duty.  *San Antonio Credit Union v. O'Connor*, 115 S.W.3d 82, 99

(Tex.App.-San Antonio 2003, pet. denied).  Central to this case, statements that Cooper has no

rights to the Videos were not made in good faith in the context of the Contract, the State Court

lawsuit and the Agreed Order.  Harvey's attorney, who made the contacts with Google and

MVD, verified the Original Petition which relied upon the Contract and his law firm agreed to

the Agreed Order.  His statements were knowingly false.  In the face of such knowledge, Harvey

did not act in good faith.

Truth is a defense to Cooper's claimed independent torts of defamation and business

disparagement.  Document 123, ¶ 93.  A claim for defamation can be made "when discrete facts,

literally or substantially true, are published in such a way that they create a substantially false

and defamatory impression by omitting material facts or juxtaposing facts in a misleading way."

*Turner v. KTRK Television, Inc.,* 38 S.W.3d 103, 115 (Tex. 2000).  Under the Contract, Cooper

has rights that Harvey, through Ricky Anderson, told Google and MVD did not exist.  The

statements were false.

Good faith in the performance of contract is a phrase without meaning on its own.  *See*

*Northwest, Inc. v. Ginsberg,* --- U.S. ---, 134 S.Ct. 1422, 1431 (2014).

Good faith is a qualified privilege to make a statement where the person making the

statement makes it in good faith on a subject matter in which the person has a common interest

with the person to whom the statement is made or if the speaker has a duty to communicate with

the other person.  *Levine v. Steve Scharn Custom Homes, Inc.,* 448 S.W.3d 637, 648 (Tex. App. -

Houston [1st Dist.] 2014, pet. denied).  Good faith does not apply to knowingly false statements.

The First Amendment defense does not apply to this case as Cooper is not a public

official or public figure, there is no public concern about what was published to private persons

and not in the media, and as stated, based on the terms of the Contract and Harvey's actions in the State Court lawsuit, the statements were false and were known by Harvey to be false. *Compare Klentzman v. Brady,* 456 S.W.3d 239, 263-264 (Tex.App. - Houston [1st Dist.] 2014, pet. filed).

     D.     Additional Harvey Affirmative Defenses

     1.     *Failure to state claim upon which relief, No cognizable claim, ¶¶ 4, 94.*

Harvey files a Fed. R. Civ. P. 12(b)(6) Motion to Dismiss, Document *, which was denied and granted in part.  Document 14.  "A plaintiff's claim must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Varela v. Gonzales*, 773 F.3d 704, 707 (5th Cir. 2014).

     2.     *Statute of Limitations*

Harvey asserts Cooper's claims are barred by the statute of limitations.  Document 123, ¶ 75.  The elements of the statute limitations are (a) the type of claim, (b) the applicable statute of limitations period, (c) when the cause of action accrued, (d) the statute of limitations accrues when facts are discovered that a cause of action exists.  *Hooks v. Samson Lone Star, LP,* 457 S.W.3d 52, 57 (Tex. 2015).  The Texas statutes of limitation for torts is two years from the date of accrual, Tex. Civ. Prac. & Rem. Code § 16.003, and four years for breach of contract. Tex. Civ. Prac. & Rem. Code § 16.004.  The elements are the passage of time and when a cause of action accrued.  *See Pasan v. Jackson Nat. Life Ins. Co.,* 52 F.3d 94, 98 (5th Cir. 1995).

In 1998, Cooper countersued Harvey for injunctive relief and the parties submitted the Agreed Order to the Court which accepted the Agreed Order.  Cooper does not sue on Harvey's 1999 actions, this suit is based on wrongful acts which occurred in May 2013 for Google and May 2014 for MVD.  *See Graham v. Pirkey,* 212 S.W.3d 507, 511-512 (Tex.App. - Austin 2006,

no pet.); *McMillan v. Dooley,* 144 S.W.3d 159, 170 (Tex.App. - Eastland 2004, pet. denied);

*United States v. Upper Valley Clinic Hospital, Inc.,* 615 F.2d 302, 305-306 (5th Cir. 1980).

3.      *Res Judicata/Collateral Estoppel*

Harvey asserts that Cooper's claims are barred by res judicata/collateral estoppel.

Document 123, ¶ 80.  The elements of res judicata (claim preclusion) are (a) the parties are

identical or in privity; (b) the judgment in the prior action was rendered by a court of competent

jurisdiction; (c) the prior action was concluded by a final judgment on the merits; and (d) the

same claim or cause of action was involved in both actions  *Comer v. Murphy Oil USA, Inc.,* 718

F.3d 460, 466 (5th Cir. 2013).  There was no final judgment on the merits in the State Court

lawsuit.

Collateral estoppel is issue preclusion.  The elements of collateral estoppel are (a) an

identical issue that was previously adjudicated, (b) the issue was actually litigated, and (c) the

previous determination was necessary to the decision."  *Bradberry v. Jefferson Cnty., Texas,* 732

F.3d 540, 548 (5th Cir. 2013).  The only issue that might fall into this category is this Court's

dismissal of Cooper's claims for copyright infringement.  Document 14.  At best, the law of this

case is that Cooper does not have a claim for copyright infringement.  *See Christianson v. Colt*

*Indus. Operating Corp.*, 486 U.S. 800, 816-817 (1988).

4.      *Estoppel*

Harvey raises various estoppel defenses, Document 123, ¶ 82, and can prove none.  In

response to discovery about the defenses of estoppel, quasi-estoppel and promissory estoppel,

Harvey responded

Plaintiff has rendered no services or provided no consideration that would entitle him to
what is being sought. Even if Plaintiff had a valid contract, he cannot have it both ways -

getting paid for services and attempting to own rights in the work for hire materials.[2]

In fact, there is nothing to restrict consideration to only one type of benefit.  *See Pasan v. Jackson Nat. Life Ins. Co.,* 52 F.3d 94, 98 (5th Cir. 1995).  Cooper provided the agreed upon services and has the rights granted by the Contract.

The elements of equitable estoppel are (a) one party, (b) due to the fault of another, (c) was induced, (d) to change his position for the worse.  *Office of Atty. Gen. of Texas v. Scholer,* 403 S.W.3d 859, 862 (Tex. 2013).  The elements of quasi-estoppel are (a) asserting a right, (b) to another's disadvantage, (c) inconsistent with a position previously taken.  *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 864 (Tex.2000).  The elements of promissory estoppel are (1) a promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantial reliance by the promisee to its detriment.  *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983).  Cooper did nothing to cause Harvey to change his position.  Any change in Harvey's position arises from the facts that he changed his style of comedy, became a celebrity, and the videos he agreed that Cooper could own and publish seemingly became more valuable.

5.     *Ratification, Laches, Waiver, Disclaimer, and Accord and Satisfaction*[3]

The elements of ratification of a contract are (a) a person's adoption or confirmation, (b) with knowledge of all material facts, (c) of a prior act that did not then legally bind the person, and that the person had the right to repudiate.  *Thomson Oil Royalty, LLC v. Graham*, 351 S.W.3d 162, 165 (Tex.App.-Tyler 2011, no pet.).  No such prior acts have been alleged, Cooper and Harvey negotiated and entered into the Contract and the Agreed Order.

The elements of waiver are (a)  an intentional relinquishment of (b) a known right, or

---

[2]     Cooper's taping of performances under the Contract does not create a work for hire under 17 U.S.C. § 101, the parties did not agree to work for hire in writing.  *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 750-751 (1989)

[3]     Document 123, ¶ 83.

intentional conduct inconsistent with claiming the right.  *Ulico Cas. Co. v. Allied Pilots Ass'n,* 262 S.W.3d 773, 778 (Tex. 2009).  Cooper has always asserted his known rights of owning the tapes and having the right to publish.  Cooper has maintained these positions in the face of Harvey's filing of the State Court lawsuit and filing his counterclaim in this Action.

The elements of disclaimer are (a) statement, (b) that one has no responsibility for, knowledge of, or involvement with something, or to renounce or disavow a legal claim.  *See* Black's Law Dictionary (10th ed. 2014).  About disclaimer, Harvey swore that

> Plaintiff has rendered no services or provided no consideration that would entitle him to what is being sought. Even if Plaintiff had a valid contract, the delay in his conduct in arguing these rights prevents him from recovering years later.

Cooper taped the performances as agreed and has not disclaimed his rights under the Contract. Harvey statement only makes sense if (a) the videos are valuable as claimed by Cooper, and (b) the 1993 Contract is reviewed in the context of circumstances existing in 2014-2015.  Cooper has not renounced his rights against Harvey.

The elements of accord and satisfaction are (a) a contract, (b) in which the parties agree to the discharge (c) an existing obligation, (b) by means of a subsequent payment tendered and accepted, and (d) the parties specifically and intentionally agreed to discharge a party's obligations.  *Katy Intern., Inc. v. Jinchun Jiang,* 451 S.W.3d 74, 86 (Tex.App. - Houston [14th Dist.] 2014, pet. denied).  The only possible accord and satisfaction is the Agreed Order.  The Agreed Order does not contain an agreement to discharge the Contract, there was no subsequent payment more or accepted, and nothing demonstrated any agreement to discharge Harvey from his obligations under the Contract.

6.      *Laches*

The elements of *laches* are (a) an unreasonable delay in asserting a right or claim; (b) that

is not excused, and (c) that results in undue prejudice to the defendant.  *E.E.O.C. v. Rock–Tenn Services Co., Inc.*, 901 F.Supp.2d 810, 832 (N.D. Tex. 2012).  In response to an interrogatories asking about the defenses of *laches*, Harvey swore that Cooper

> rendered no services or provided no consideration that would entitle him to what is being sought. Even if Plaintiff had a valid contract, the delay in his conduct in arguing these rights prevents him from recovering years later.

Cooper taped the performances as agreed.  There is no evidence of an unreasonable delay committed by Cooper when the suit was filed a year and three months after Anderson's contact with Google.  Document 1.  *See Caldwell v. Barnes,*  975 S.W.2d 535, 538-539 (Tex. 1998). The evidence shows no change in Harvey's position due to any delay in filing suit by Cooper.  *Id.*

7.     *Prior Material Breach*

The elements of prior material breach, Document 123, ¶ 84, are (a) breach of contract by a party, (b) that was material, (c) before the subsequent breach by the other party.  *Mustang Pipeline Co. v. Driver Pipeline Co.,* 134 S.W.3d 195, 196 (Tex. 2004).  Harvey swore that Cooper

> rendered no services or provided no consideration that would entitle him to what is being sought. Even if Plaintiff had a valid contract, Plaintiff's failure to exploit the right earlier rights prevents him from recovering years later.

Cooper performed under the Contract.  Cooper attempted to sell, market and distribute the Harvey videos, which is the only thing that would have mitigated the damages suffered by Cooper.  *See Great Am. Ins. v. North Austin MUD,* 908 S.W.2d 415, 426 (Tex. 1995).  The only possible material breach by Cooper would have been failing to tape performances.  Harvey seemingly argues that Cooper's delay in attempting to sell Videos constituted a prior material breach of the Contract.  How long a party takes to "use" the consideration received under a contract, unless the contract create a time limit is not limited.  Nothing in the Contract states a

deadline by which time Cooper must publish videos.

8.     *Mitigation*

The elements of mitigation, Document 123, ¶ 85, are (a) non-breaching party, (b) could

avoid damages (c) by reasonable efforts (d) which could be avoided at a trifling expense or with

reasonable exertions, (e) did not mitigate damages due to a lack of diligence, and (f) the amount

by which the damages were increased by the failure to mitigate.  *Turner v. NJN Cotton Co.,* ---

S.W.3d ---, 2015 WL 9311588, *7 (Tex. App. - Eastland 2015, no pet.); *Cocke v. White*, 697

S.W.2d 739, 744 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.).  Regarding the alleged

failure to mitigate, Harvey swore Cooper

> rendered no services or provided no consideration that would entitle him to what is being
> sought. Even if Plaintiff had a valid contract, Plaintiff's failure to exploit the right earlier
> rights prevents him from recovering years later.

Cooper performed under the Contract.  Cooper attempted to sell, market and distribute the

Harvey videos, which is the only thing that would have mitigated the damages suffered by

Cooper.  *See Great Am. Ins. v. North Austin MUD,* 908 S.W.2d 415, 426 (Tex. 1995).  The State

Court lawsuit and in Cooper's Second Amended Complaint evidence Harvey's conduct which

prevented the mitigation.

9.     *Causation and Fault*

Harvey alleges that Cooper's own act or omissions caused the injury and damages.

Document 123, ¶ 86.  The elements of causation for breach of contract are (a) Cooper's actions or

omissions, (b) and the damages are the natural, probably, and foreseeable consequence of

Cooper's conduct.  *Mead v. Johnson Grp., Inc*., 615 S.W.2d 685, 687 (Tex.1981).  Under the

Contract, Cooper had the duty to tape performances and did tape performances.  Cooper did not

cause Harvey's breach the Contract or Harvey's agent making false statements to Google and

MVD.

Harvey affirmatively pleads that contributing, concurring, intervening and/or superseding fault of Cooper and/or other persons other than Harvey caused Cooper's damages.  Document 123, ¶ 90.  It is assumed that this allegation seeks a finding on proportionate responsibility under Tex. Civ. Prac. & Rem. Code, Chapter 33 regarding proportionate responsibility, which only applies to tort claims.  Tex. Civ. Prac. & Rem. Code § 33.002.  The elements of proportionate responsibility are (a) determination of percentage of responsibility, (b) based on negligent act or omission or other conduct or activity that violates an applicable legal standard by (c) plaintiff or a responsible third person, (d) for the responsible third person, a designation of the responsible third person by filing a motion to leave to designate the responsible third person or or before the 6oth day before the trial date.  Tex. Civ. Prac. & Rem. Code §§ 33.003-.004.  The issue is not properly before the Court.  Tex. Civ. Prac. & Rem. Code §§ 33.004.  Cooper did not commit a negligent act or omission or engage in other conduct or activity related to Harvey's tortious interference with business relations.

The elements of unclean hands or *in pari delecto*, Document 123, ¶ 91, are (a) seeking equitable relief, (b) guilty of unlawful or inequitable conduct, (c) regarding the issue in dispute. *Chambers v. Hunt Petroleum Corp.,* 320 S.W.3d 578, 584 (Tex.App. - Tyler 2010, no pet.).

Harvey swore

> Plaintiff has rendered no services or provided no consideration that would entitle him to what is being sought. Even if Plaintiff had a valid contract, his underhanded acts of attempting to use Defendant's property prevent him from recovering years later.

Cooper performed under the Contract, which consented to Cooper's right to publish.  Again, Harvey seeks to have the Court judge the 1993 contract by today's conditions.  Cooper has not attempted to use Harvey's property.  The Contract gives Cooper his rights and the Agreed Order

recognizes those rights.  *See Pinter v. Dahl,* 486 U.S. 622, 632 (1988); *Owen v. Jim Allee*

*Imports, Inc.,* 380 S.W.3d 276, 286 (Tex. App. - Dallas 2012, no pet.).

Harvey raises the issue of "improper motive."  Document 123, ¶ 92.  No application of

this issue to the pending contract and tortious interference claims has been found.  Harvey swore

that Cooper

> rendered no services or provided no consideration that would entitle him to what is being
> sought. Plaintiffs conduct of suing Defendant is brought for the improper motive of
> forcing money from Defendant.

Cooper performed under the Contract.  Again, Cooper provided the agreed upon services,

Harvey paid the moneys due, and disputes the existence of the Contract because he views the

1993 Contract in the prism of today.

Harvey claims that Cooper has acted improperly.  Document 123, ¶ 89.  If Harvey alleges

Cooper has "unclean" hands, there is no evidence that Cooper acted illegally or inequitably in his

dealings with Harvey.  Illegality on the part of Cooper must be plead specifically or be apparent

from Cooper's pleadings or the undisputed facts.  *See Zacchini v. Scripps-Howard Broad. Co.*

10.     *Cooper's Damages*

Harvey claims that Cooper suffered no damages.  Document 123,¶ 96.  The measure of

damages for breach of contract is just compensation for the loss or damage actually suffered.

*Phillips v. Phillips*, 820 S.W.2d 785, 788 (Tex.1991).  The measure for tortious interference is

the same and stated as putting "the plaintiff in the same economic position he would have been in

had the contract interfered with been actually performed." *Am. Nat'l. Petroleum Co. v.*

*Transcontinental Gas Pipe Line Corp.*, 798 S.W.2d 274, 278 (Tex.1990).  Cooper alleges his

damages as between $20-30,000,000.  Document *.  Cooper has not moved for summary

judgment as to the amount of damages.  The evidence related to MVD evidences Cooper's

damages of at least $25,000, which is the advance Cooper would have received if the MVD

agreement had been completed.  The evidence shows Cooper incurred expenses in creating the

videos, which are recoverable.

11.    *Terms*

Harvey "denies that Plaintiffs have any copyright or related ownership interest that

allows Plaintiffs to sell or distribute the videos at issue . . . ."  Document 123, ¶ 17.  Regarding

the allegation, Harvey swore

> The document in question confirms other facts alleged herein. And the parties have
> evidence indicating that the invoice was paid as discussed above and that no rights were
> conveyed to Plaintiff.

Harvey is bound by the language of the Contract, which gives Cooper ownership of the tapes and

the right to display, publish and otherwise use the Videos.  *Parker Drilling Co. v. Romfor Supply*

*Co.*, 316 S.W.3d at 72.

E.    Harvey's Counter Claims

Harvey alleges that he has claims against Cooper for invasion of privacy, violation of

right to publicity, and conversion.  Document 123, ¶¶ *.  Under the heading of invasion of

privacy, Harvey mentions misappropriation of Harvey's name or likeness, interference with his

exclusive use of his own name, likeness and identity, and claims that he did not give Cooper

permission or consent to use Harvey's name.  The Contract gives Cooper consent.

1.    *Invasion of Privacy*

The Dallas Court of Appeals in *Express One Intern., Inc. v. Steinbeck,* 53 S.W.3d 895,

900 (Tex. App. - Dallas 2001, no pet.) held:  "The three elements of invasion of privacy by

misappropriation are: (1) the defendant appropriated the plaintiff's name or likeness for the value

associated with it; (2) the plaintiff can be identified from the publication; and (3) there was some

advantage or benefit to the defendant."  The issue becomes one of consent.  *See Kimbrough v. Coca-Cola/USA, King v. Ames* and *Zim v. Western Publ'g Co.*; *see also Busch v. Viacom Intern., Inc.,* 477 F.Supp.2d 764, 769 fn 3 (N.D. Tex. 2007).  Restatement (Third) of Unfair Competition § 29 states that consent is a defense to this claim.  Cooper has Harvey's consent in the Contract.

### 2.  *Violation of Right to Publicity*

The right to publicity has been recognized as another name for misappropriation.  *Henley v. Dillard Dept. Stores,* 46 F.Supp. 2d 587, 590 (N.D. Tex. 1999).   Utilizing the Fifth Circuit's elements of misappropriation of name and likeness, the elements of a claim for a violation of right to publicity are:  (a) appropriation of the plaintiff's name or likeness for the value associated with it, and not in an incidental manner or for a newsworthy purpose; (b) the plaintiff can be identified from the publication; and (c) there was some advantage or benefit to the defendant.  *Matthews v.. Wozencraft*, 15 F.3d 432, 437 (5th Cir.1994).  Cooper has Harvey's consent to publish, which includes the consent to use Harvey's name, likeness and image for that publication.

### 3.  *Conversion*

Elements of conversion are (1) the plaintiff owned, had legal possession of, or was entitled to possession of the property; (2) the defendant, unlawfully and without authorization, assumed and exercised dominion and control over the property to the exclusion of, or inconsistent with, the plaintiff's rights; (3) the plaintiff made a demand for the property; and (4) the defendant refused to return the property. *Wells Fargo Bank Nw., N.A. v. RPK Capital XVI, L.L.C.*, 360 S.W.3d 691, 699 (Tex. App.-Dallas 2012, no pet.).  Harvey's claim for conversion is that Cooper exercised control over the tapes of Harvey's performances.  Harvey alleges that he owns the videos.  Document 123, ¶ *.  Under the Contract, Cooper owns the tapes.  No

conversion occurred.

    4.    *Damages*

Harvey seeks as damages lost profits, injury to reputation and quantum meruit. The elements of lost profits: (a) a reasonable certainty, (b) by competent evidence, (c) that profit would have been made. *ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 876 (Tex.2010). Harvey's claim for injury to reputation, which relates to slander, defamation, libel, is inapplicable. The theory of quantum meruit does not apply to this case. *See Heldenfels Bros. v. City of Corpus Christi,* 832 S.W.2d 39, 41 (Tex. 1992).

Harvey does not seek the damages allowed for invasion of privacy: mental anguish, *Billings v. Atkinson,* 489 S.W.2d 858, 861 (Tex. 1973), loss of earning capacity, *Big Bird Tree Serv. v. Gallegos,* 365 S.W.3d 173, 179 (Tex.App.—Dallas 2012, pet. denied), and nominal damages, *K–Mart Corp. Store No. 7441 v. Trotti*, 677 S.W.2d 632, 638 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). Harvey has no claim for invasion of privacy.

Damages for violation of right to publicity are the value lost by plaintiff, *Houston Mercantile Exchange Corp. v. Dailey Petroleum Corp.,* 930 S.W.2d 242 (Tex.App. - Houston 1996, no writ), not sought by Harvey, and lost profits, *ERI Consulting Eng'rs, Inc. v. Swinnea,* 318 S.W.3d 867, 876 (Tex.2010), listed by Harvey, and the value gained by defendant, *see Calce v. Dorado Expl., Inc.*, 309 S.W.3d 719, 738 (Tex.App. - Dallas 2010, no pet.). Harvey has presented no evidence of lost profits. Harvey's expert opined as to reasonable compensation not lost profits.

Elements of damages for conversion. Either (a) the lost value of the property or (b) have the property returned and recover damages for loss of use during the property's detention. *R.J. Suarez Enterprises, Inc. v. PNYX L.P.,* 380 S.W.3d 238, 243 (Tex.App. - Dallas 2012, no pet.).

Harvey sued for neither.  Harvey's conversion claim fails because does not own the property in question and he claims no recoverable damages.

F.    Cooper's Defenses to Harvey's Counterclaim

1.    *Statute of Limitations*

The Texas statutes of limitation for torts is two years from the date of accrual, Tex. Civ. Prac. & Rem. Code § 16.003, and four years for breach of contract. Tex. Civ. Prac. & Rem. Code § 16.004.  Document 111, ¶ 29.  The elements are the passage of time and when a cause of action accrued.  A cause of action accrues when some legal injury occurs.  *Murphy v. Campbell,* 964 S.W.2d 265, 270 (Tex. 1997), *Atkins v. Crosland,* 417 S.W.2d 150, 153 (Tex. 1967).  The date of accrual is a question of law.  *Valdez v. Hollenbeck,* 465 S.W.3d 217, 228 (Tex. 2015).

The elements of laches, Document 111, ¶ 32, are (a) an unreasonable delay in asserting a right or claim; (b) that is not excused, and (c) that results in undue prejudice to the defendant. *E.E.O.C. v. Rock–Tenn Services Co., Inc.*, 901 F.Supp.2d 810, 832 (N.D. Tex. 2012).

Harvey testifed that he first requested the tapes in 1993.  Under Harvey's theories, Cooper took the tapes at the latest, this occurred in 1994 because after that date any actual or proposed use of the tapes not only converted the tapes but also would involve Cooper violating Harvey's claimed right to privacy and right to publicity.  Unquestionably, such violations occurred before December 1998 when Harvey sued Cooper in the State Court lawsuit.  Harvey's claims are barred by limitations.

2.    *Harvey's Conduct*

The elements of unclean hands or *in pari delecto*, Document 111, ¶ 33, are (a) seeking equitable relief, (b) guilty of unlawful or inequitable conduct, (c) regarding the issue in dispute. *Chambers v. Hunt Petroleum Corp.,* 320 S.W.3d 578, 584 (Tex.App. - Tyler 2010, no pet.).

Harvey's described actions support this defense.

The elements of equitable estoppel, Document 111, ¶34, are (a) one party, (b) due to the fault of another, (c) was induced, (d) to change his position for the worse. *Office of Atty. Gen. of Texas v. Scholer,* 403 S.W.3d 859, 862 (Tex. 2013). Harvey's described actions support this defense.

The elements of waiver, Document 111, ¶35, are (a) an intentional relinquishment of (b) a known right, or intentional conduct inconsistent with claiming the right. *Ulico Cas. Co. v. Allied Pilots Ass'n,* 262 S.W.3d 773, 778 (Tex. 2009). Harvey's described actions support this defense.

III.     CONCLUSION

Based on the foregoing, Joseph Cooper prays that he be granted partial summary judgment against defendant Broderick Steven Harvey.

**Respectfully submitted,**

**BENNETT, WESTON, LAJONE & TURNER, P.C.**

**s/ J. Michael Weston**

_____
J. Michael Weston
SBN: 21232100
jmweston@bennettweston.com
Casey S. Erick
SBN: 24028564
cerick@bennettweston.com
1603 LBJ Freeway, Suite 280
Dallas, TX 75234
214.691.1776
Fax: (214) 373-6810

**BRIEF IN SUPPORT OF COOPER'S MOTION FOR SUMMARY JUDGMENT - Page 34**

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing Brief in Support of Cooper's Brief in Support of Motion for Partial Summary Judgment was served on all counsel through the electronic filing on this 1st day of February 2016.

s/ J. Michael Weston

_____