**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **JOSEPH COOPER,** | § | |
| | § | |
| *Plaintiff*, | § | |
| v. | § | **CAUSE NUMBER: 3:14-cv-04152-B** |
| | § | |
| **BRODERICK STEVEN "STEVE" HARVEY** | § | |
| | § | |
| *Defendant*. | § | |

---

**DEFENDANT'S BRIEF IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

AUBREY "NICK" PITTMAN
State Bar No. 16049750

**THE PITTMAN LAW FIRM, P.C.**
100 Crescent Court, Suite 700
Dallas, Texas 75201-2112
214-459-3454
214-853-5912 – fax
pittman@thepittmanlawfirm.com

WENDLE VAN SMITH
State Bar No. 18701400

**ANDERSON AND SMITH**
7322 Southwest Frwy, Suite 2010
Houston, TX 77074
713-622-5522
713-995-1499 – fax
wendle1v@flash.net

**Attorneys for Defendants**

**TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................................ii

TABLE OF AUTHORITIES ........................................................................................iv

I.  PRELIMINARY STATEMENT ....................................................................1

II.  SUMMARY JUDGMENT EVIDENCE .......................................................2

    A.  The Parties...........................................................................................2

    B.  The Alleged Video Invoice/Agreement ..............................................3

    C.  Plaintiff's Use of Harvey's Name, Image and Likeness.....................3

IV.  ARGUMENT AND AUTHORITIES ..............................................................4

    A.  Specific Grounds Upon Which the Motion for Summary Judgment is Based. .........4

    B.  Summary Judgment Standard ..............................................................4

    C.  Plaintiff Cannot Demonstrate That a "Breach" of Contract Occurred. ....................6

    D.  Plaintiff Cannot Demonstrate a Conveyance of the Contractual Rights He Claims to Have Under His Breach of Contract Claim. ..............................................6

        1.  There are no signed written agreements giving Harvey's copyright rights to Plaintiff. ..............................................................6

        2.  There has been no transfer of Harvey's copyrighted rights to Plaintiff........8

        3.  No interpretation of the Video Invoice would convey Harvey's copyrighted rights to Plaintiff. .........................................................9

        4.  It is unreasonable that Harvey would have granted Plaintiff complete ownership of his copyrights for every derivative work based upon the copyrighted works.........................................................11

    E.  Plaintiff's Claim is Barred by The Statute of Limitation...........................................12

    F.  Harvey is Entitled to Summary Judgment as a Matter of Law on Plaintiff's Tortious Interference Claim. .................................................13

        1.  Plaintiff had no reasonable probability of entering into an agreement with Music Video Distributors even before any communication by Harvey's counsel..........................................................14

2.     Harvey's conduct did not prevent Plaintiff from entering into an agreement with Music Video Distributors. ....................................................16

3.     The potential agreement between Plaintiff and Music Video Distributors would have constituted an unenforceable agreement to commit copyright infringement, and cannot form the basis of a tortious interference claim. .........................................................................................17

4.     There is no evidence of malicious and intentional conduct by the defendant that aborted a prospective business relationship. .........................18

5.     Harvey was justified in his communication with Music Video Distributors and this communication cannot constitute tortious interference. ...................................................................................................19

G.     The Court Has Already Granted Summary Judgment in Harvey's Favor on Cooper Declaratory Judgment and Injunctive Relief Claims. ...................................20

H.     Plaintiff's Claims Against Harvey, if Any, Are Barred in Whole or in Part as a Result of the Parol Evidence Rule. ...........................................................................20

I.      Plaintiff's Claims Against Defendant, if Any, Are Barred by The Doctrine of Waiver and Laches. .....................................................................................................21

J.      Plaintiff's Claims Against Defendant, if Any, Are Barred In Whole or in Part Under the Doctrine of Statute of Frauds. ...................................................................21

K.     Harvey is Entitled to Summary Judgment on His Misappropriation Claim. .............22

L.      Harvey is Entitled to Summary Judgment on His Injunctive Relief Claim. ..............24

M.     Defendant is Entitled to Judgment That He is Entitled to Attorneys' Fees for Defending Against Plaintiff's Specious Claims. .......................................................25

V.     CONCLUSION ...........................................................................................................25

CERTIFICATE OF SERVICE ........................................................................................27

## TABLE OF AUTHORITIES

### CASES

*Access Telecom, Inc. v. MCI Telecommunications Corp.*, 197 F.3d 694 (5th Cir.1999) ............ 17

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .................................................................. 5

*Arista Records, Inc. v. Kabani*, 2004 WL 884445 (N.D.Tex. Apr. 23, 2004) .............................. 24

*Astoria Indus. of Iowa, Inc. v. SNF, Inc.*, 223 S.W.3d 616 (Tex.App.-Fort Worth 2007, pet. denied) ........................................................................................................................................ 16

*Baty v. ProTech Ins. Agency*, 63 S.W.3d 841 (Tex.App.-Houston [14th Dist.] 2001, pet. denied) ........................................................................................................................................ 14

*Ben E. Keith Co. v. Lisle Todd Leasing, Inc.*, 734 S.W.2d 725 (Tex.App.-Dallas 1987, writ ref'd n.r.e.) ........................................................................................................................................... 17

*Benavidez v. Anheuser Busch, Inc.*, 873 F.2d 102 (5th Cir.1989) ................................................ 22

*Biko v. Siemens Corp.*, 246 S.W.3d 148 (Tex.App.-Dallas 2007, pet. denied) ........................... 22

*Boudreaux v. Unionmutual Stock Life Ins. Co., of Am.*, 835 F.2d 121(5th Cir.1988). ................... 5

*Bradford v. Vento*, 48 S.W.3d 749 (Tex.2001) ........................................................................... 18

*Brown v. Swett & Crawford of Texas, Inc.*, 178 S.W.3d 373 (Tex.App.-Houston [1st Dist.] 2005, no pet.) ...................................................................................................................................... 14

*Caller–Times Publ'g Co. v. Triad Commc'ns, Inc.*, 855 S.W.2d 18 (Tex.App.-Corpus Christi 1993, no writ) ............................................................................................................................ 14

*Cent. Point Software, Inc. v. Nugent*, 903 F.Supp. 1057 (E.D.Tex.1995) ................................... 24

*Chirco v. Crosswinds Communities, Inc.*, 474 F.3d 227 (6th Cir. 2007)...................................... 21

*COC Servs., Ltd. v. CompUSA, Inc.*, 150 S.W.3d 654 (Tex.App.-Dallas 2004, pet. filed) .......... 16

*Coker v. Coker*, 650 S.W.2d 391 (Tex.1983) ............................................................................. 10

*Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587 (Tex. 1996) ........... 11

*Copeland v. Alsobrook*, 3 S.W.3d 598 (Tex.App.-San Antonio 1999, pet. denied) ..................... 10

*Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472 (Tex.1995).................................... 16

*Dorsett v. Cross*, 106 S.W.3d 213 (Tex.App.2003, writ denied)................................................... 6

*Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415 (5th Cir.1996) (en banc). ...................... 19

*DP Solutions, Inc. v. Rollins, Inc*., 353 S.W.3d 421 (5th Cir.2003) .................................... 25

*DSC Comm'ns Corp. v. DGI Tech., Inc*., 81 F.3d 597 (5th Cir.1996) ........................................... 24

*Esquivel v. Murray Guard, Inc*., 992 S.W.2d 536 (Tex.App.-Houston [14th Dist.] 1999, pet. denied) ............................................................................................................................. 5

*Exxon Corp. v. Emerald Oil & Gas Co*., 348 S.W.3d 194 (Tex.2011)................................ 12, 17

*Forbau v. Aetna Life Ins. Co*., 876 S.W.2d 132 (Tex.1994)....................................................... 9

*Foxworthy v. Custom Tees, Inc*., 879 F.Supp. 1200 (N.D.Ga.1995) ............................................ 8

*Galliher v. Cadwell*, 145 U.S. 368 (1892) ................................................................................ 21

*Gibbs v. Gibbs*, 210 F.3d 491 (5th Cir.2000)............................................................................ 25

*Glover v. National Insurance Underwriters*, 545 S.W.2d 755 (Tex.1977) .................................. 10

*Granville v. Suckafree Records, Inc*., CIV.A.H–03–3002, 2006 WL 2520909 (S.D.Tex. June 28, 2006 ........................................................................................................................... 24

*GTE S.W., Inc. v. Public Util. Com'n* 102 S.W.3d 282 (Tex. App. – Austin 2003, pet. dism'd). 11

*Harper & Row, Publishers, Inc. v. Nation Enterprises,* 471 U.S. 539 (1985) .............................. 8

*Henley v. Dillard Dep't Stores*, 46 F.Supp.2d 587 (N.D.Tex.1999)........................................... 23

*Hill v. Heritage Res., Inc*., 964 S.W.2d 89 (Tex.App.-El Paso 1997, pet. denied)...................... 15

*Holloway v. Skinner*, 898 S.W.2d 793 (Tex.1995) ................................................................... 14

*Intratex Gas Co. v. Puckett,* 886 S.W. 2d 274 (Tex. App. – El Paso 1994, no writ)................... 11

*Juliette Fowler Homes, Inc. v. Welch Associates, Inc.,* 793 S.W.2d 660 (Tex.1990) ................. 17

*Kalmus v. Oliver*, 390 S.W.3d 586 (Tex.App.-Dallas 2012, no pet.). ........................................ 22

*Kimbrough v. Coca–Cola/USA,* 521 S.W.2d 719 (Tex.Civ.App.—Eastland 1975, writ ref'd n.r.e.) ......................................................................................................................................... 22

*Konigsberg Int'l, Inc. v. Rice,* 16 F.3d 355 (9th Cir.1994) .......................................................... 9

*Krohn v. Marcus Cable Assocs, L.P*., 201 S.W.3d 879 (Tex.App.Waco 2006, pet. denied)........ 13

*Leadbetter v. Gilley,* 385 F.3d 683 (6th Cir.2005)...................................................................... 5

*Lewis v. Bank of Am. NA*, 343 F.3d 540 (5th Cir.2003) ................................................................ 6

*Lewis v. East Texas Finance Co*., 136 Tex. 149, 146 S.W.2d 977, 980 (1941) ........................... 10

*Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871 (1990) ...................................................................... 5

*Milam v. Nat'l Ins. Crime Bureau*, 989 S.W.2d 126 (Tex.App.-San Antonio 1999, no pet.) ....... 14

*Moore v. Big Picture Co*., 828 F.2d 270 (5th Cir.1987) ................................................................. 23

*Morrow v. Washington*, 277 F.R.D. 172 (E.D.Tex.2011) ............................................................... 24

*Murphy v. Campbell*, 964 S.W.2d 265 (Tex.1997) ......................................................................... 12

*Murray v. San Jacinto Agency, Inc*., 800 S.W.2d 826 (Tex.1990) ........................................... 5, 13

*National Bank of Commerce v. Shaklee Corp*., 503 F.Supp. 533 (W.D.Tex.1980) ..................... 23

*National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101 (2002) .............................. 21

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. CBI Indus., Inc*., 907 S.W.2d 517 (Tex.1995) .... 10

*Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211 (Tex.2003) ................................... 12

*R & P Enterprises v. LaGuarta, Gavrel & Kirk, Inc*., 596 S.W.2d 517 (Tex.1980) .................... 10

*Rhône-Poulenc, Inc. v. Steel*, 997 S.W.2d 217 (Tex.1999) ............................................................ 6

*RRR Farms, Ltd. v. American Horse Protection Ass'n*, 957 S.W.2d 121 (Tex.App.—Houston [14th Dist.] 1997, writ denied) .................................................................................................. 18

*S & I Mgmt., Inc. v. Sungju Choi*, 331 S.W.3d 849, 854 (Tex.App.-Dallas 2011, no pet.) .......... 22

*Sakowitz, Inc. v. Steck*, 669 S.W.2d 105, 107 (Tex.1984) ............................................................ 20

*Spence & Howe Const. Co. v. Gulf Oil Corp*., 365 S.W.2d 631, 637 (Tex. 1963) ...................... 11

*Sun Oil Co. (Delaware) v. Madeley*, 626 S.W.2d 726, 732 (Tex.1981) ......................................... 9

*Sun Oil Co. v. Madeley*, 626 S.W.2d 726, 732 (Tex.1981) ........................................................... 20

*Texas Beef and Cattle Co. v. Green,* 921 S.W.2d 203, 210 (Tex.1996) ....................................... 19

*Three H Enters., L.L.C. v. Advanced Envtl. Recycling Techs*., Inc., 256 F.Supp.2d 568, 578 (W.D.Tex.2002) ........................................................................................................................ 10

*Travel Masters, Inc. v. Star Tours, Inc*., 827 S.W.2d 830, 833 (Tex.1991) ................................. 17

*Universal C.I.T. Credit Corp. v. Daniel*, 150 Tex. 513, 243 S.W.2d 154, 157 (1951)................. 10

*Wal–Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 713 (Tex.2001) ................................. 14, 16, 19

*World Help v. Leisure Lifestyles, Inc*., 977 S.W.2d 662, 683 (Tex.App.–Fort Worth 1998, pet. denied) .................................................................................................................. 25

**S**TATUTES

17 U.S.C. § 101 ................................................................................................................... 9

17 U.S.C. § 106 ................................................................................................................... 8

17 U.S.C. § 201(b) ............................................................................................................ 12

17 U.S.C. § 201(d)(2) .......................................................................................................... 8

17 U.S.C. § 204(a) ............................................................................................................... 9

**R**ULES

FED. R. CIV. P. 56(c) ........................................................................................................... 5

F**ED**. R. C**IV**. P. 56(c). ........................................................................................................... 5

FED. R. CIV. P. 56(e) ........................................................................................................... 5

**T**REATISES

McCarthy, J. Thomas, The Rights of Publicity and Privacy, § 11:32–Recovering the Fair Market Value of Identity ................................................................................................................. 24

RESTATEMENT (SECOND) OF TORTS § 652C, cmt. c (1977) ............................................. 23

Restatement (Second) of Torts, § 652C (1977) ............................................................... 22

R**ESTATEMENT** (S**ECOND**) OF T**ORTS**, § 652H (1977) (comment (a) ............................................. 24

**R**EGULATIONS

T**EX**. B**US**. C**OM**.C**ODE** A**NN**. 26.01(a) ............................................................................... 22

T**EX**.C**IV**.P**RAC**. & R**EM** C**ODE** A**NN**. § 16.051 ................................................................. 12, 13

T**EX**. C**IV**. P**RAC**. & R**EM**.C**ODE** A**NN**. § 38.001(8) ......................................................... 25

Defendant Broderick Steven "Steve" Harvey ("Defendant" or "Harvey") files this Brief in Support of Defendant's Motion for Partial Summary Judgment (the "Motion for Partial Summary Judgment") and show as follows:

## I.       PRELIMINARY STATEMENT

Although it is undisputed that Harvey wrote, performed and owns the copyrights on his live and taped performances, Plaintiff seeks to lay claim to these rights merely because he presents the Court with an unsigned video "invoice," during a time when he contracted to record promotional videos on Harvey in 1993, and was paid in full.  Plaintiff alleges that Harvey gave him sole ownership of Harvey's performances, as well as the right to use Harvey's name and likeness simply because Plaintiff had a work for hire agreement with Harvey in 1993. Harvey counters that he did not.  Nevertheless, the undisputed facts discussed herein establish that Plaintiff has no tenable claim against Harvey for breach of contract or tortious interference with contract.  As to his breach of contract claim, in addition to the absence of an enforceable written agreement, Plaintiff has been unable to identify an actionable promise made under the disputed agreement that Harvey allegedly failed to perform.  And even if the Court assumes that the alleged agreement if valid, there is no breach and, if so, it would be foreclosed by the statute of limitation.  Thus, Harvey is entitled to judgment as a matter of law on this claim.

As to Plaintiff's allegation that Harvey interfered with a prospective contract, although Plaintiff attempted to negotiate with a third-party to sell Harvey's performances, the undisputed evidence demonstrates that there was no reasonable expectation that Plaintiff would have entered into a contract with the third party.  Furthermore, Harvey did not commit any tortious interference when he merely asserted his copyrightable rights in response to an inquiry from the third-party.  With regards to Harvey's counterclaims, undisputed evidence reveals that Plaintiff took affirmative steps to commercially market tapes of Harvey's stage performances, using

1

Harvey's name, image and likeness, and has indicated his intention to market the tapes in the future unless restrained.  Accordingly, the evidence and established legal precedent dictate that the Court grant summary judgment to Harvey on his claims for misappropriation and injunctive relief.

## II.    SUMMARY JUDGMENT EVIDENCE

Defendant includes with the Motion for Summary Judgment, the competent evidence referenced in the accompanying appendix and incorporate evidence into this Brief by reference for all purposes as if set forth in full.  Defendant also refers the Court to various pleadings that have been filed in this matter and incorporate those pleadings as if set forth in full herein.

## III.    UNDISPUTED ABBREVIATED FACTS

**A.    The Parties**

1.    Between 1984-1992, Plaintiff Joseph Cooper operated an unincorporated entity or d/b/a that he called Close Up Video, where he performed video production.  Cooper Deposition at 26:11 - 22 (Def.'s APP[1] 010)

2.    Plaintiff describes his trade or business as "just producing videos."  Cooper Deposition at 30:8-11 (Def.'s APP 011)

3.    Defendant Broderick Steven Harvey is an entertainer.  Harvey Deposition at 5:21 – 6:1 (Def.'s APP 042-043)

---

[1] "Def.'s APP" refers to Defendant's Appendix in Support of Defendant's Motion for Summary Judgment filed contemporaneously with this Brief.

**B.      The Alleged Video Invoice/Agreement**[2]

4.      Plaintiff claims that Harvey entered into a Video Invoice/Agreement with him in March 1993.  See, Plaintiff's Complaint.

5.    Harvey has testified that he did not see this document in 1993, did not sign this video invoice and did not otherwise agree to convey his copyright rights to Plaintiff in March 1993. Harvey Affidavit at ¶ 6 (Def.'s APP 002).

6.      One of the handwritten paragraphs on this alleged agreement contains the following language, which specifically details what services Plaintiff was rendering to the Steve Harvey Comedy House, and specifies the objective of the arrangement Plaintiff claims to have had with the Steve Harvey Comedy House in 1993:

> Services include: Produce videotapes of promotional material from the facility including interior shots, audience, stage performances, and graphics with official logos. Tape will also include names, dates and music sound tracks. Tapes will be looped for continuous play before, during and after show performances.[3]

7.      Plaintiff testified that he negotiated a price with Harvey for his videotaping services, Cooper Deposition at 78:2 – 79:1 (Def.'s APP 014-015).

8.      Plaintiff also stated that Harvey paid him in full for his services.  Cooper Deposition at 99:9-20 (Def.'s APP017).

**C.      Plaintiff's Use of Harvey's Name, Image and Likeness**

9.      Harvey testified that he has never given Plaintiff the permission to use his name, image, or likeness.  Harvey Affidavit at ¶ 11, 16 (Def.'s APP 002).

---

[2]  Defendant contends that this document is irrelevant since it was not seen or signed by Harvey on the date in 1993 when Plaintiff alleges it was signed. However, since Plaintiff has alleged that this document forms the basis of his request for relief, Defendant includes these facts here in the interest of completeness. Evaluation of this document, however, confirms that Plaintiff has no actionable claims.

[3] Cooper Deposition at 106:17 – 107:9 (Def's APP 018-019).

10.     Plaintiff admits to using Harvey's name, image, and likeness in several advertisements on his website and on the Internet, all to market products containing Harvey's performances.  Cooper Deposition at 301:8 – 304:10 (Def.'s APP 035-038).

## IV.     ARGUMENT AND AUTHORITIES

### A.     Specific Grounds Upon Which the Motion for Summary Judgment is Based.

The following grounds, among others, establish as a matter of law that Defendant is entitled to summary judgment:

1.     Plaintiff Cannot Demonstrate That a "Breach" of Contract Occurred;

2.     Harvey did not sign or assent to any agreement to convey to Plaintiff any of the contractual rights Plaintiff claims to have and, therefore, Harvey is not liable for breach of contract;

3.     Plaintiff's Claim is Barred by The Statute of Limitation;

4.     Harvey is Entitled to Summary Judgment as a Matter of Law on Plaintiff's Tortious Interference Claim;

5.     Plaintiff's Claims Against Harvey, if Any, Are Barred in Whole or in Part as a Result of the Parol Evidence Rule;

6.     Plaintiff's Claims Against Defendant, if Any, Are Barred by The Doctrine of Waiver and Laches;

7.     Plaintiff's Claims Against Defendant, if Any, Are Barred in Whole or in Part Under the Doctrine of Statute of Frauds;

8.     Harvey is Entitled to Summary Judgment on His Misappropriation Claim;

9.     Harvey is Entitled to Summary Judgment on His Injunctive Relief Claim; and

10.     Harvey is Entitled to Attorneys' Fees for Defending Against Plaintiff's Specious Breach of Contract Claim.

### B.     Summary Judgment Standard

Summary judgment is appropriate where the relevant evidence shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law."[4] Once the movant has discharged its initial burden to demonstrate the absence of a genuine issue of material fact, the nonmoving party must set forth specific facts, by affidavits or otherwise, showing there is a genuine issue for trial.[5] However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."[6] Indeed, although all of the evidence must be viewed in a light most favorable to the motion's opponent, the non-movant's "burden is not satisfied with 'some metaphysical doubt as to material facts,' . . . by 'conclusory allegations,' . . . by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence."[7] Summary judgment is also appropriate when the questions to be decided are issues of law and involves the interpretation of an unambiguous provision in a contract. *Esquivel v. Murray Guard, Inc*., 992 S.W.2d 536, 544 (Tex.App.-Houston [14th Dist.] 1999, pet. denied)(concluding summary judgment is appropriate when a case involves interpretation of an unambiguous contract); *Boudreaux v. Unionmutual Stock Life Ins. Co., of Am*., 835 F.2d 121, 123 (5th Cir.1988). Here, as discussed below, Harvey can show entitlement to summary judgment on Plaintiff's claims since Plaintiff cannot prove any entitlement to recover on his claims.

Likewise, a defendant is entitled to summary judgment on an affirmative defense if the defendant conclusively proves all of the elements of the affirmative defense. *Rhône-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex.1999). As discussed herein, Defendant also has competent evidence establishing each of the elements of various affirmative defenses. Because

---

[4] FED. R. CIV. P. 56(c).

[5] FED. R. CIV. P. 56(e).

[6] *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).

[7] *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 903 (1990).

no genuine issue exists as to any material fact under the summary judgment standards, Defendant is entitled to summary judgment for the reasons set forth herein.

### C.   Plaintiff Cannot Demonstrate That a "Breach" of Contract Occurred.

Plaintiff has to prove the following elements to sustain a claim for breach of contract under Texas law: (1) the existence of a valid contract, (2) that it performed or tendered performance of its duties under the contract, (3) that Defendant breached the contract, and (4) that he suffered damages as a result of the breach. *See, e.g., Lewis v. Bank of Am. NA*, 343 F.3d 540, 545 (5th Cir.2003). A defendant breaches a contract only when it fails to do something it has promised to do. *Dorsett v. Cross*, 106 S.W.3d 213, 217 (Tex.App.2003, writ denied).  Here, Plaintiff has not proved or presented any evidence as to (i) what he is alleging that Harvey promised to do under the alleged agreement, (ii) where is the promise found in the alleged agreement; and (iii) how and when Harvey allegedly failed to perform the promise.  Since Plaintiff cannot present any evidence to establish these elements of a breach of contract claim, Harvey is not liable, as a matter of law, for breach of contract.

### D.   Plaintiff Cannot Demonstrate a Conveyance of the Contractual Rights He Claims to Have Under His Breach of Contract Claim.

Plaintiff also cannot establish the existence of a valid contract that would provide him with the rights he claims to have.  Accordingly, Harvey is not liable, as a matter of law, for breach of contract.

### 1.   There are no signed written agreements giving Harvey's copyright rights to Plaintiff.

In this matter, Plaintiff alleges that the parties entered into a written agreement in March 1993, giving him rights to Harvey's stage performances that Harvey paid him simply to videotape.  However, the evidence demonstrates that there is no written executed agreement, and certainly no agreement awarding Plaintiff the rights he claims to have in this action.

6

### a. The Video Invoice is not signed by Harvey, is not a valid contract, and has not been breached.

The crux of Plaintiff's claim is that a video recording invoice for taping performances dated March 20, 1993 (that Plaintiff has termed "Video Contract") is a valid contract to convey performance, derivative, and distribution rights.  However, Harvey has testified that he did not sign this video invoice and did not otherwise agree to convey his copyright rights to Plaintiff in March 1993.  Harvey Affidavit at ¶ 6 (Def's APP 002).  In addition, the video recording invoice, even if it were signed by Harvey, is clear in its expression of the invoice's objective and provides that Plaintiff would record "promotional material" that would be used "for continuous play before, during, and after show performances." Cooper Deposition at 106:17 – 107:9 (Def's APP 018-019).  Plaintiff has not produced any evidence that Harvey breached this clear objective of the videotaping "services" rendered by Plaintiff in 1993. There was no consideration or assent for anything else. Consequently, Plaintiff cannot establish the existence of a valid contract or a breach as a matter of law.

### b. The alleged "agreement" in the State Court lawsuit is not valid or enforceable.

Plaintiff also claims that the parties entered into an agreement in 1998 during a "State Court Lawsuit." See, Plaintiff's Complaint.  However, Plaintiff's own "evidence" demonstrates that the parties entered into a Rule 11 agreement merely to temporarily extend a mutual temporary restraining order.  Plaintiff also concedes that the State Court lawsuit "was non-suited by the parties on October 13, 2000.  See, Plaintiff's motion for summary judgment at p. 2. Therefore, the arrangement terminated when the lawsuit was dismissed, and no other agreement was entered into during the State Court proceedings.  Harvey Affidavit at ¶ 18 (Def.'s APP 003).

Thus, Plaintiff is unable to prove the existence of a "State Court Agreement" as a matter of law, and therefore is unable to establish that there has been a breach of this alleged agreement.

**2.**     **There has been no transfer of Harvey's copyrighted rights to Plaintiff.**

It is unquestionable that the promotional videotapes at issue are of Harvey's live stage performances, which constitute copyrightable subject matter. See, e.g. *Foxworthy v. Custom Tees, Inc.*, 879 F.Supp. 1200, 1219 (N.D.Ga.1995)).  Thus, the original work belongs to Harvey. See, 17 U.S.C. § 201(a)(copyright in a work protected under this title vests initially in the author or authors of the work.).   As provided by Section 106 of the Copyright Act, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following:

(1)     to reproduce the copyrighted work in copies or phonorecords;

(2)     to prepare derivative works based upon the copyrighted work;

(3)     to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;

(4)     in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly;

(5)     in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and

(6)     in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.[8]

Any of the aforementioned rights may be transferred and owned separately.  17 U.S.C. § 201(d)(2).  In other words, copyright ownership is virtually infinitely divisible.  That is, each of the rights, in any subdivision conceivable, may be sold, licensed or transferred separately. However, under 17 U.S.C. § 204(a) of the Copyright Act, "[a] transfer of copyright ownership,

---

[8] 17 U.S.C. § 106; *Harper & Row, Publishers, Inc. v. Nation Enterprises,* 471 U.S. 539, 546-547, (1985).

other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent." 17 U.S.C. § 204(a).  A grant of an exclusive license is considered a "transfer of copyright ownership." 17 U.S.C. § 101 (2005). Section 204(a)'s requirement, while sometimes called the copyright statute of frauds, is in fact different from a statute of frauds. *Konigsberg Int'l, Inc. v. Rice,* 16 F.3d 355, 357 (9th Cir.1994). Under § 204(a) "a transfer of copyright is simply 'not valid' without a writing." *Id*.  Although Plaintiff claims to own the rights to the derivatively recorded tapes of Harvey's performances, he is unable to produce any writing signed by Harvey conveying such a right.  Indeed, even if the Video Invoice were considered a contract, it would not convey all six of Section 106's rights to Plaintiff.  Plaintiff even concedes that he has never negotiated a contract where someone gave him their copyrightable works.  Cooper Deposition at 59:7-9 (Def.'s APP 013).  Thus, Plaintiff has no rights to prepare derivative works from the tapes or to distribute the tapes for sale.  As shown in the language on the Video Invoice, the exclusive purpose of the Video Invoice was simply to record promotional materials "for continuous play before, during, and after performances."  See, Dkt. No. 62-2, page 10; Harvey Affidavit at ¶ 5 (Def.'s APP 002).

**3.      No interpretation of the Video Invoice would convey Harvey's copyrighted rights to Plaintiff.**

The primary concern of a court in construing a written contract is to ascertain the true intent of the parties as expressed in the instrument. *Forbau v. Aetna Life Ins. Co*., 876 S.W.2d 132, 133 (Tex.1994). Only if a contract is first determined to be ambiguous may a court consider the parties' subjective interpretation, *see Sun Oil Co. (Delaware) v. Madeley*, 626 S.W.2d 726, 732 (Tex.1981), and admit extraneous evidence to determine the meaning of the instrument, *see R & P Enterprises v. LaGuarta, Gavrel & Kirk, Inc*., 596 S.W.2d 517, 518

9

(Tex.1980); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex.1995). If a written contract can be given a definite or certain legal meaning, then it is not ambiguous. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983); *see also Universal C.I.T. Credit Corp. v. Daniel*, 150 Tex. 513, 243 S.W.2d 154, 157 (1951). If a contract is subject to two or more reasonable interpretations, it is ambiguous. *See Glover v. National Insurance Underwriters*, 545 S.W.2d 755, 761 (Tex.1977); *see also Coker*, 650 S.W.2d at 393; *Universal*, 243 S.W.2d at 157. Parol evidence is not admissible to create an ambiguity. *See Universal*, 243 S.W.2d at 157; *Lewis v. East Texas Finance Co.*, 136 Tex. 149, 146 S.W.2d 977, 980 (1941). Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered. See *Coker*, 650 S.W.2d at 394; *R & P Enterprises*, 596 S.W.2d at 518.

Under Texas law, "'the determination of the meeting of the minds ... that is required for contract formation is based on the objective standard of what the parties said and did and not on their subjective state of mind.'" *Three H Enters., L.L.C. v. Advanced Envtl. Recycling Techs.*, Inc., 256 F.Supp.2d 568, 578 (W.D.Tex.2002) (quoting *Copeland v. Alsobrook*, 3 S.W.3d 598, 604 (Tex.App.-San Antonio 1999, pet. denied)).   In this case, even if it is believed that the Video Invoice is a valid, signed agreement, it is clear that it did not convey to Plaintiff the rights to prepare derivative works from the tapes or to distribute the tapes for sale.  Plaintiff cannot provide his intent under the document since he did not even draft the Video Invoice.  It was simply a standard commercial form agreement.  Cooper Deposition at 80:1-22 (Def.'s APP 016).  And, there are no provisions in video invoice that discuss that Plaintiff has the right to commercially exploit Harvey's rights through selling and distribution.  Therefore, Plaintiff has no valid contract for these rights and hence no claim for breach of contract.

**4.** **It is unreasonable that Harvey would have granted Plaintiff complete ownership of his copyrights for every derivative work based upon the copyrighted works.**

In appropriate situations, a court may consider the circumstances surrounding the formation of the contract even in situations where the contract is not ambiguous. *See Spence & Howe Const. Co. v. Gulf Oil Corp.*, 365 S.W.2d 631, 637 (Tex. 1963) ("[C]onsideration may be given to the subject matter of the contract and the surrounding facts and circumstances, not for the purposes of varying or adding to the contract but in order to find out the intention with which words are used."); *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 591 (Tex. 1996) (noting that, when interpreting an agreement, attention should be paid to the "circumstances surrounding the formulation of the contract") (internal citations omitted); *GTE S.W., Inc. v. Public Util. Com'n* 102 S.W.3d 282, 295 (Tex. App. – Austin 2003, pet. dism'd) ("it is also clear that even with unambiguous contracts courts may 'consider the commercial context of the transaction.'" (citing *Intratex Gas Co. v. Puckett,* 886 S.W. 2d 274, 278 (Tex. App. – El Paso 1994, no writ). Courts commonly look to evidence of the state of an industry, industry definitions of terminology used in contracts, as well as the commercial context in which the disputed transaction took place, in order to interpret and construe the language used in a contract. *GTE* 102 S.W.3d at 295(distinguishing between consideration of evidence from the parties regarding "what they intended the contract to mean" and consideration of evidence to assist in interpreting specific contractual provisions).

Examining the Video Invoice in the context of the circumstances and positions of the parties when the agreement was allegedly entered, it is abundantly clear that the services in the Video Invoice relate to recording performances for "promotional purposes" only -- and nothing more. This Court need only look to the specific terminology used in the agreements, coupled

11

with the lack of discussion of selling or distributing the recordings in the Video Invoice, as well as the roles of the parties – performer and videographer -  at the time the services under the Video Invoice were performed, to conclude that Harvey would never agree to give away all of his exclusive rights to prepare and sell his derivative works - for free.  In fact, Plaintiff admits that if there is nothing in the Video Invoice that says that he was going to sell the videos or CD's, then that means that that wasn't part of the agreement.  Cooper Deposition at 57:6-19 (Def.'s APP 012).  Clearly, Plaintiff's video services were performed as a "work for hire," under which Harvey owned all right to the performances.  See, 17 U.S.C. § 201(b).  Indeed, Plaintiff testified that he negotiated a price with Harvey for the videotaping services, Cooper Deposition at 78:2 – 79:1 (Def.'s APP 014-015), and that Harvey paid him in full for his services.  Cooper Deposition at 99:9-20 (Def.'s APP 017).

### E.       Plaintiff's Claim is Barred by The Statute of Limitation.

Even if Plaintiff were able to establish the existence of a contract, his breach of contract claim is barred by the statute of limitation. Texas law provides that the four-year limitations period prescribed in section 16.051 of the Texas Civil Practice and Remedies Code applies to claims for breach of contract.  A cause of action accrues, and the statute of limitations begins to run, when facts come into existence that authorizes a claimant to seek a judicial remedy. *Exxon Corp. v. Emerald Oil & Gas Co*., 348 S.W.3d 194, 202 (Tex.2011) (op. on reh'g) (citing *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex.2003)). The general rule governing when a claim accrues, to start limitations running, is the "legal injury rule," which provides that a claim accrues "when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred." *Murphy v. Campbell*, 964 S.W.2d 265, 270 (Tex.1997).  In other words, limitations occur when the purported wrongful fact occurs resulting in some damage to the plaintiff. *See Murray v. San*

*Jacinto Agency, Inc.*, 800 S.W.2d 826, 828 (Tex.1990); *Krohn v. Marcus Cable Assocs, L.P.*, 201 S.W.3d 879, 879 (Tex.App.Waco 2006, pet. denied).

There appears to be different theories advanced by Plaintiff as to what agreements he alleged had with Harvey and when the alleged breaches occurred.  However, regardless of which theory Plaintiff eventually decides to assert, the statute of limitation precludes any recovery on the breach of contract claim.  Here, Plaintiff claims that breach of the alleged 1993 video invoice agreement occurred, at the very latest, in 1998 when Harvey sued Plaintiff in the State Court Lawsuit. See, Cooper Affidavit (Dkt. No. 62-2) at ¶ 17.  As far as the alleged State Court Agreement, Plaintiff has sworn under oath that the alleged agreement was entered into in 1998 and was "breached" immediately thereafter (and certainly prior to 2010). See, Cooper Affidavit (Dkt. No. 62-2) ¶¶ 20-21.  With regard to the allegation that Harvey agreed to "purchase the video for $5,000,000," Plaintiff states that breach of this alleged promise occurred in 1998. Cooper Deposition at 208:5-9 (Def.'s APP 032); see also Plaintiff's Second Amended Complaint at ¶ 25.  The docket sheet confirms that Plaintiff filed the original complaint on or about November 21, 2014, which is more than four years after each of the alleged breaches of contract. As a result, the Court must conclude as a matter of law that Plaintiff's "breach of contract" was untimely filed. See TEX.CIV.PRAC. & REM CODE ANN. § 16.051. Thus, summary judgment is appropriate as a matter of law on this claim.

**F.      Harvey is Entitled to Summary Judgment as a Matter of Law on Plaintiff's Tortious Interference Claim.**

In his Complaint, Plaintiff claims that Harvey tortiously interfered with "Cooper's actual and perspective business relations." To establish a claim for tortious interference with contractual relations, the plaintiff must show: (i) the existence of a contract subject to interference, (ii) the occurrence of an act of interference that was willful and intentional, (iii) the

act was a proximate cause of plaintiff's alleged damage, and (iv) actual damage or loss occurred. *Holloway v. Skinner*, 898 S.W.2d 793, 795-96 (Tex.1995). However, as discussed herein, Plaintiff had no "contract" with any party.   Thus, he cannot support a claim for tortious interference with contractual relations.

As to Plaintiff's claims of a potential agreement with Music Video Distributors, that claim, as explained herein, is also not sustainable as a matter of law. To establish a cause of action for tortious interference with prospective business relationships, a plaintiff must show that (1) there was a reasonable probability that the parties would have entered into a business relationship; (2) the defendant committed an independently tortious or unlawful act that prevented the relationship from occurring; (3) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; and (4) the plaintiff suffered actual harm or damages as a result of the defendant's interference. *See Wal–Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 713 (Tex.2001); *Brown v. Swett & Crawford of Texas, Inc.*, 178 S.W.3d 373, 381–82 (Tex.App.-Houston [1st Dist.] 2005, no pet.); *Baty v. ProTech Ins. Agency*, 63 S.W.3d 841, 858 (Tex.App.-Houston [14th Dist.] 2001, pet. denied). Because this claim lacks merit, the Court should grant Harvey's Motion.

        **1.**      **Plaintiff had no reasonable probability of entering into an agreement with Music Video Distributors even before any communication by Harvey's counsel.**

To support a claim for tortious interference, a plaintiff must prove that more than mere negotiations occurred. *See Milam v. Nat'l Ins. Crime Bureau*, 989 S.W.2d 126, 132 (Tex.App.-San Antonio 1999, no pet.); *Caller–Times Publ'g Co. v. Triad Commc'ns, Inc.*, 855 S.W.2d 18, 24 (Tex.App.-Corpus Christi 1993, no writ). Although it is not necessary to prove that the contract would have certainly been made but for the interference, that result must have been

reasonably probable, considering all of the facts and circumstances attendant to the transaction. *See Hill v. Heritage Res., Inc*., 964 S.W.2d 89, 109 (Tex.App.-El Paso 1997, pet. denied).  Here, the evidence demonstrates that Plaintiff was merely negotiating a possible licensing and distribution agreement with Music Video Distributors.  In his Complaint, Plaintiff alleges that he had "negotiated and was prepared [to] execute" an agreement with MVD.  However, MVD's testimony does not support this a statement. In fact, Music Video Distributors' ("MVD") Chief Operating Officer, Ed Seaman, testified that when he sent a working draft potential agreement to Plaintiff, he "hadn't seen his alleged ownership when I sent that proposal."  Seaman Depo at 24:11-17 (Def's APP 053).  Later during the early stages of the negotiations, Seaman asked Plaintiff for proof that he owned the rights to Harvey's videoed stage performances. Seaman Depo at 18:1-19 (Def's APP 048-049).  Once Plaintiff presented Seaman with his alleged proof of ownership, Seaman testified that Plaintiff's so-called proof did not seem rock solid and that it gave him pause in terms of Plaintiff's "claimed ownership."  Seaman Depo at 20:18 – 21:8 (Def's APP 050-051).

In fact, Seaman testified further that he was uncomfortable with what Plaintiff was presenting as so-called proof of his alleged ownership and that "it didn't seem right."  Seaman Depo at 30:23 – 31:10 (Def's APP 057-058).  Accordingly, this evidence establishes that there was no reasonable probability that MVD would have entered into a future contractual relationship with Plaintiff considering the concerns MVD had about Plaintiff's "claimed ownership."  And these concerns existed prior to MVD having any contact with Harvey's counsel. Thus, Plaintiff's tortious interference with prospective relations fails as a matter of law.

### 2. Harvey's conduct did not prevent Plaintiff from entering into an agreement with Music Video Distributors.

The plaintiff must also show that the defendant's conduct was either independently tortious or unlawful, that is, that the conduct violated some other recognized tort duty. *Sturges*, 52 S.W.3d at 726; *Astoria Indus. of Iowa, Inc. v. SNF, Inc*., 223 S.W.3d 616, 632 (Tex.App.-Fort Worth 2007, pet. denied). The "prevented the relationship from occurring" element requires "at minimum, that the tortious conduct constitute a cause in fact that prevented the prospective business relationship from coming to fruition in the form of a contractual agreement. The test for cause in fact, or 'but for causation,' is whether the act or omission was a substantial factor in causing the injury 'without which the harm would not have occurred.'" *COC Servs., Ltd. v. CompUSA, Inc*., 150 S.W.3d 654, 679 (Tex.App.-Dallas 2004, pet. filed) (quoting *Doe v. Boys Clubs of Greater Dallas, Inc*., 907 S.W.2d 472, 477 (Tex.1995)).

Plaintiff has no evidence with which to establish that any conduct from Harvey's counsel "prevented the relationship from occurring." In fact, when Plaintiff's counsel asked MVD's COO if it would have entered into the agreement if the company's attorney had not spoken to Harvey's counsel, he replied,

> It's hard to say. I can't really answer that fairly. I know that I didn't feel good about things. So, you know, typically if I don't feel good about something, I don't do it. So I can't answer that question fairly.

Seaman Depo at 23:24 – 24:9 (Def's APP 052-053).   This and other evidence demonstrates as a matter of law that no reasonable probability exists that, without the one telephone call between Harvey's attorney and MVD's attorney, MVD would have agreed to proceed to do business with Plaintiff. Accordingly, the Court should find that summary judgment is proper as to Plaintiff's claim of tortious interference with a prospective business relationship.

**3.    The potential agreement between Plaintiff and Music Video Distributors would have constituted an unenforceable agreement to commit copyright infringement, and cannot form the basis of a tortious interference claim.**

In *Access Telecom, Inc. v. MCI Telecommunications Corp*., 197 F.3d 694 (5th Cir.1999) the Court concluded that under Texas law, the existence of a valid contract (or the potential for one in claims for interference with prospective contracts) is an element of a claim for tortious interference. *See, Juliette Fowler Homes, Inc. v. Welch Associates, Inc.,* 793 S.W.2d 660, 665 (Tex.1990).  The Court went on to conclude that there is no remedy for interference with illegal contracts, *see Ben E. Keith Co. v. Lisle Todd Leasing, Inc.,* 734 S.W.2d 725, 727 (Tex.App.-Dallas 1987, writ ref'd n.r.e.). In other words, if a prospective contract is unenforceable because it is void, the unenforceability of the contract provides a defense for tortious interference claims. *Juliette Fowler Homes, Inc. v. Welch Assocs., Inc*., 793 S.W.2d 660, 664 (Tex.1990); *Exxon Corp. v. Allsup*, 808 S.W.2d 648, 654–55 (Tex.App.—Corpus Christi 1991, writ denied); *see also Travel Masters, Inc. v. Star Tours, Inc*., 827 S.W.2d 830, 833 (Tex.1991).

As discussed above, there are no agreements between Plaintiff and Harvey that specifically provided that Plaintiff owned any of Harvey's copyrights, or had permission to use Harvey's name and likeness, for which Plaintiff could transfer to a third party.  Here, the unlikely agreement that Plaintiff discussed with Music Video Distributors would have had a detrimental effect on Harvey's statutory right to prepare his own derivative works and to market his own performances.  Furthermore, as also discussed above, Plaintiff never had the right to prepare derivative works and therefore did not have a legal right to enter into an agreement with Music Video Distributors.  Consequently, there could be no interference as a matter of law.

17

**4.      There is no evidence of malicious and intentional conduct by the defendant that aborted a prospective business relationship.**

Even if the Music Video Distributors agreement were a valid prospective contract, regarding tortious inference, one simple statement demonstrates why summary judgment is appropriate in this case – tortious interference claims require proof of malice.  An act is deemed malicious only if it is "done intentionally without just cause or excuse." *RRR Farms, Ltd. v. American Horse Protection Ass'n*, 957 S.W.2d 121, 131 n. 6 (Tex.App.—Houston [14th Dist.] 1997, writ denied).  Here, the very existence of a contractual conveyance of Harvey's rights to Plaintiff is hotly disputed. And if there were a contractual conveyance, both parties rely on different interpretations of the video invoice, thus this Court cannot glean an intent to interfere, and the evidence that Plaintiff presents fails to provide a basis for his claim.   However, the evidence from Harvey shows plainly that there was no malicious and/or intentional act by him to abort the relationship that Plaintiff was negotiating, if any, with Music Video Distributors. Harvey Affidavit at ¶ 22 (Def.'s APP 004).  Plaintiff does not counter with any competent and admissible evidence to support his claim.

Furthermore, interference is not improper if the actor had no desire to interfere, even if he knows that by his action, interference would be a mere incidental result of his conduct. See *Bradford v. Vento*, 48 S.W.3d 749, 757 (Tex.2001).  Here, the record establishes that Harvey did not initiate contact with MVD.  Instead, when MVD was unsatisfied with Plaintiff's proof of alleged ownership, MVD made the call to Harvey's attorney.  Seaman Depo at 19:21 – 20:10 and 34:13 – 35:14 (Def's APP 049-050 and APP 059-060).   Additionally, the truth is that it was Plaintiff's statements to MVD about his dispute is what led to MVD contacting Harvey's counsel in the first place.   Cooper Depo at 223:22 – 224:10 (Def's APP 033-034).

And although Plaintiff's Complaint alleges that Harvey's counsel "threatened" to "come after" MVD, the company's representative testified that Harvey's counsel never threatened to sue MVD.  Seaman Depo at 24:24 – 25:23 (Def's APP 053-054).  Indeed, Plaintiff's conclusory allegation to the contrary is not competent evidence. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir.1996) (en banc).  Nevertheless, even if the Court were to find that Harvey's attorney informed MVD that Harvey would come after MVD in order to ensure the enforcement of Harvey's rights, that would not constitute an actionable statement.  That is because the Texas Supreme Court makes clear that conduct that is merely "sharp" or unfair is not actionable and cannot be the basis for an action for tortious interference with prospective relations. *Sturges*, 52 S.W.3d at 726.  Here, Plaintiff has not alleged any conduct that is "actionable under a recognized tort." *Id*.  As discussed above, Plaintiff has vaguely alleged that Harvey's counsel made an alleged "threat" to enforce Harvey's copyright rights.  Such conduct, however, is a far cry from the threats of "physical harm if [a prospective customer] does business with the plaintiff" that the Texas Supreme Court found actionable in *Sturges*. 52 S.W.3d at 726.  Indeed, when MVD's executive was asked whether he found the conversation between the two parties to be improper, Seaman testified "I don't see anything wrong with that at all, no."  Seaman Depo at 35:15 – 36:4 (Def's APP 060-061).  Thus, Plaintiff's claim fails as a matter of law.

### 5.     Harvey was justified in his communication with Music Video Distributors and this communication cannot constitute tortious interference.

Even if Plaintiff were able to establish the other elements of tortious interference, Harvey would prevail under the affirmative defense of justification. *Texas Beef and Cattle Co. v. Green,* 921 S.W.2d 203, 210 (Tex.1996).  The justification defense may be established through proof of the exercise of either the defendant's own legal rights or a good-faith (but ultimately mistaken)

claim to a colorable legal right. *Id.* at 211 (citing *Sakowitz, Inc. v. Steck,* 669 S.W.2d 105, 107 (Tex.1984)). "Thus, if the trial court finds as a matter of law that the defendant had a legal right to interfere with a contract, then the defendant has conclusively established the justification defense, and the motivation behind assertion of that right is irrelevant." *Id.* (internal citations omitted). It is clear that if Harvey's counsel had a telephone conversation with Music Video Distributors it was merely to protect his exclusive copyright interests.  Harvey Affidavit at ¶ 22 (Def.'s APP 004).  Plaintiff is unable to show that Harvey did not have a legal right to assert as it relates to his copyrights.  Accordingly, Harvey's motion should be granted.

> **G.   The Court Has Already Granted Summary Judgment in Harvey's Favor on Cooper Declaratory Judgment and Injunctive Relief Claims.**

In his complaint, Plaintiff sought declaratory judgment and injunctive relief.  In Dkt. Nos. 126 and 127, Harvey moved for summary judgment that Plaintiff's request for declaratory judgment and injunctive relief be denied as a matter of law and on December 17, 2015, the Court granted Harvey summary judgment as to these claims.  See, Dkt. No. 136, p. 3.  Thus, Plaintiffs are not moving on these claims in the present motion.

> **H.   Plaintiff's Claims Against Harvey, if Any, Are Barred in Whole or in Part as a Result of the Parol Evidence Rule.**

To the extent Plaintiff alleges that some other oral or written promise was made allowing him to market, sell and distribute Harvey's videotapes, this alleged promise is inadmissible under the Texas parol evidence rule. *See, e.g. Sun Oil Co. v. Madeley*, 626 S.W.2d 726, 732 (Tex.1981). That is because the video invoice that Plaintiff alleges provides him with contractual rights, is silent on the issue of whether Plaintiff can market, sell, and distribute Harvey's 1993 videotapes. Thus, the Court should dismiss Plaintiff's contention, if any, that there was another oral or written agreement allowing him to market, sell and distribute Harvey's videotapes and grant judgment to Harvey as a matter of law.

**I.     Plaintiff's Claims Against Defendant, if Any, Are Barred by The Doctrine of Waiver and Laches.**

Laches is one such equitable doctrine. It applies in those extraordinary cases where the plaintiff "unreasonably delays in filing a suit," *National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101, 121 (2002), and, as a result, causes "unjust hardship" to the defendant, *Chirco v. Crosswinds Communities, Inc.*, 474 F.3d 227, 236 (6ᵗʰ Cir. 2007) (emphasis deleted). Its purpose is to avoid "inequity." *Galliher v. Cadwell*, 145 U.S. 368, 373 (1892). "Waiver is the intentional relinquishment of a right actually known, or intentional conduct inconsistent with claiming that right." *Ulico Cas. Co.*, 262 S.W.3d at 778. The elements of waiver are "(1) an existing right, benefit, or advantage held by a party; (2) the party's actual knowledge of its existence; and (3) the party's actual intent to relinquish the right, or intentional conduct inconsistent with the right." *Id*.

Here, it is clear that Plaintiff's decision not to market, sell, and distribute Harvey's 1993 videotapes earlier constitutes a laches and/or waiver. Plaintiff testified that initially in the years 1994 – 1997 he did not try and commercially exploit the videos of Harvey's stage performances. Cooper Deposition at 130:8-19 (Def's APP 028). Each month and year was an intentional act by Plaintiff with knowledge of the alleged contractual rights and obligations of the parties. In other testimony, Plaintiff admits that he believes that breaches of his alleged rights happened circa 1998 and that he "decided not to bring the violations to the court because I was tired of fighting and had other work that I needed to do." Cooper Affidavit (Dkt. No. 62-2) at ¶ 20. This conduct triggers the waiver and laches doctrines and precludes Plaintiff from recovering as a matter of law.

**J.     Plaintiff's Claims Against Defendant, if Any, Are Barred In Whole or in Part Under the Doctrine of Statute of Frauds.**

As discussed above, none of the alleged agreements on which Plaintiff relies contains a conveyance to Plaintiff of Harvey's copyrightable works. Nor do any of the alleged written statements contain any right for Plaintiff to market, distribute and sell the videotapes or to use Harvey's name, image, or likeness. To the extent Plaintiff alleges that some other promise was made, the statute of frauds doctrine precludes this argument. Under the statute of frauds, certain contracts are not enforceable unless they are in writing and signed by the person against whom enforcement of the contract is sought. See TEX. BUS. COM.CODE ANN. 26.01(a); *S & I Mgmt., Inc. v. Sungju Choi*, 331 S.W.3d 849, 854 (Tex.App.-Dallas 2011, no pet.). The statute of frauds applies to, inter alia, "an agreement which is not to be performed within one year from the date of the making of the agreement." TEX. BUS. COM.CODE ANN. 26.01(b)(6). When a promise or agreement, either by its terms or by the nature of the required acts, cannot be completed within one year, it falls within the statute of frauds and is unenforceable unless it is in writing and signed by the person to be charged. *See id.* § 26.01(a), (b)(6); *Kalmus v. Oliver*, 390 S.W.3d 586, 589 (Tex.App.-Dallas 2012, no pet.). The question of whether an agreement falls within the statute of frauds is one of law. *See Biko v. Siemens Corp.*, 246 S.W.3d 148, 159 (Tex.App.-Dallas 2007, pet. denied). Here, none of the alleged agreements at issue was performable in a year. Accordingly, the Court should dismiss Plaintiff's contention, if any, that there are some other promises between Harvey and Plaintiff and grant Defendant a judgment as a matter of law.

**K.     Harvey is Entitled to Summary Judgment on His Misappropriation Claim.**

Under Texas law, "[o]ne who appropriates to his own use or benefit the name or likeness of another is subject to liability to the other for invasion of his privacy." Restatement (Second) of Torts, § 652C (1977); *see also Benavidez v. Anheuser Busch, Inc.*, 873 F.2d 102, 104 (5th Cir.1989)(recognizing § 652C of the Restatement of Torts as descriptive of Texas law); *Kimbrough v. Coca–Cola/USA,* 521 S.W.2d 719 (Tex.Civ.App.—Eastland 1975, writ ref'd n.r.e.)

22

(recognizing cause of action for misappropriation under Texas law). "'To prove a cause of action for misappropriation, a plaintiff must show that his or her personal identity has been appropriated by the defendant for some advantage, usually of a commercial nature, to the defendant.'" *Moore v. Big Picture Co.*, 828 F.2d 270, 275 (5th Cir.1987) (quoting *National Bank of Commerce v. Shaklee Corp.*, 503 F.Supp. 533, 540 (W.D.Tex.1980)).  Name misappropriation is a species of invasion of privacy, and requires that "the defendant must have appropriated to his own use or benefit the reputation, prestige, social or commercial standing, public interest or other values of the plaintiff's name or likeness." See *Moore*, 828 F.2d at 275 (citing RESTATEMENT (SECOND) OF TORTS § 652C, cmt. c (1977)).  Furthermore, plaintiffs in misappropriation of name or likeness actions are not required to show that the defendant made money from the commercial use of the name or likeness. *See Henley v. Dillard Dep't Stores*, 46 F.Supp.2d 587, 597 (N.D.Tex.1999).

Here, it is undisputed that Plaintiff is using Harvey's name and likeness to market the videotapes for commercial purposes.  Harvey has never given Plaintiff the permission to use his name, image, or likeness.  Harvey Affidavit at ¶ 11, 16 (Def.'s APP 002-003).  Nevertheless, Plaintiff admits to using Harvey's name, image, and likeness in several advertisements on his website and on the Internet, all to market products containing Harvey's performances.  Cooper Deposition at 301:8 – 304:10 (Def.'s APP 035-038).  These examples were marked as Exhibits 32, 33, and 34 at Cooper's Deposition.  (Def.'s APP 063-065).  Harvey has also shown damages as a result of the misappropriation.  Expert Scott Barnes has opined that Harvey is entitled to approximately $350,000, which represents the fair market value of compensation for the use of Mr. Harvey's name, likeness or other personal attributes.  (Def.'s APP 066-093).  Comment (a) to the Restatement § 652H, provides that: "One whose name, likeness or identity is appropriated

23

to the use of another, under § 652C, may recover for the loss of the exclusive use of the value so appropriated. RESTATEMENT (SECOND) OF TORTS, § 652H (1977) (comment (a)) (emphasis added); see also, McCarthy, J. Thomas, The Rights of Publicity and Privacy, § 11:32– Recovering the Fair Market Value of Identity.  Thus, Harvey has proved entitlement to judgment as a matter of law and accompanying damages.

### L.    Harvey is Entitled to Summary Judgment on His Injunctive Relief Claim.

To establish entitlement to permanent injunctive relief in matters such as this, the party seeking the injunction must demonstrate the following: "(1) actual success on the merits; (2) no adequate remedy at law; (3) that the threatened injury outweighs any damage to the defendant; and (4) the injunction will not disserve the public interest." *Arista Records, Inc. v. Kabani*, 2004 WL 884445, at *4 (N.D.Tex. Apr. 23, 2004) (citing *DSC Comm'ns Corp. v. DGI Tech., Inc*., 81 F.3d 597, 600 (5th Cir.1996)).  In short, an injunction is appropriate if liability has been established and if there is a continuing threat of further infringement of Plaintiffs' copyrights. See *Fermata*, 712 F.Supp. at 1262*; see also Granville v. Suckafree Records, Inc*., CIV.A.H–03–3002, 2006 WL 2520909 at *6–7 (S.D.Tex. June 28, 2006); *Cent. Point Software, Inc. v. Nugent*, 903 F.Supp. 1057, 1060 (E.D.Tex.1995) ("Courts have traditionally granted permanent injunctions where a continuing threat of copyright infringement exists and liability has been established"). "The purpose of an injunction is to prevent future violations[.]" *Morrow v. Washington*, 277 F.R.D. 172, 200 (E.D.Tex.2011).  Here, the evidence establishes that Harvey owns the contents of the videotapes that are at issue.  Harvey Affidavit at ¶¶ 3-10 (Def.'s APP 001-002).  Plaintiff has indicated that he plans to place Harvey's products into interstate commerce (unless restrained by the Court.)  Cooper Affidavit (Dkt. No. 62-2) at ¶¶ 36-38.  Thus, an injunction is warranted as a matter of law.

**M.**        **Defendant is Entitled to Judgment That He is Entitled to Attorneys' Fees for Defending Against Plaintiff's Specious Claims.**

The underlying contractual issues in this case should be decided by applying Texas law. Therefore, the fee award and reasonableness of that award is governed by Texas law. *DP Solutions, Inc. v. Rollins, Inc.*, 353 F.3d 421, 433 (5th Cir.2003). A "district court has broad discretion in determining the appropriateness of an award of attorneys' fees." *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir.2000); *World Help v. Leisure Lifestyles, Inc.*, 977 S.W.2d 662, 683 (Tex.App.–Fort Worth 1998, pet. denied) (citing TEX. CIV. PRAC. & REM.CODE ANN. § 38.001(8)).  Defendant asks the court to take judicial notice of the usual and customary attorney fees in this district and permit Defendant's attorneys and/or expert witnesses to submit affidavits or declarations substantiating reasonable and necessary attorneys' fees within thirty (30) days after judgment is rendered in this matter.

## V.        CONCLUSION

For the above-stated reasons and on the summary judgment evidence produced, Defendant is entitled to summary judgment as a matter of law on all of Plaintiff's claims and on Defendant's defenses.

**WHEREFORE, PREMISES CONSIDERED,** Defendant prays that this Honorable Court (i) grant summary judgment in his favor, (ii) dismiss with prejudice all claims filed by Plaintiff Joseph Plaintiff against Defendant, (iii) enter an Order that Plaintiff is responsible for payment of all costs and Defendant's attorneys' fees; and (iv) grant Defendant such other and further relief to which he may be entitled.

Respectfully Submitted,


s/ Aubrey "Nick" Pittman                          AUBREY "NICK" PITTMAN

State Bar No. 16049750

**THE PITTMAN LAW FIRM, P.C.**
100 Crescent Court, Suite 700
Dallas, Texas 75201-2112
214-459-3454
214-853-5912 – fax
pittman@thepittmanlawfirm.com

s/Wendle Van Smith
WENDLE VAN SMITH
State Bar No. 18701400

**ANDERSON AND SMITH**
7322 Southwest Frwy, Suite 2010
Houston, TX 77074
713-622-5522
713-995-1499 – fax
wendle1v@flash.net

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 1, 2016, the foregoing pleading was filed with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to all attorneys of record who have consented in writing to accept this Notice as service of documents by electronic means.

s/Wendle Van Smith
WENDLE VAN SMITH
