# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **JOSEPH COOPER,** | § | |
| | § | |
| *Plaintiff,* | § | |
| **v.** | § | **CAUSE NUMBER: 3:14-cv-04152-B** |
| | § | |
| **BRODERICK STEVEN "STEVE" HARVEY** | § | |
| | § | |
| *Defendant* | § | |

---

## DEFENDANT'S MOTION TO EXCLUDE THE REPORT
## AND TESTIMONY OF MICHAEL EINHORN AND BRIEF IN SUPPORT

---

AUBREY "NICK" PITTMAN
State Bar No. 16049750

**THE PITTMAN LAW FIRM, P.C.**
100 Crescent Court, Suite 700
Dallas, Texas 75201-2112
214-459-3454
214-853-5912 – fax
pittman@thepittmanlawfirm.com

WENDLE VAN SMITH
State Bar No. 18701400

**ANDERSON AND SMITH**
7322 Southwest Frwy, Suite 2010
Houston, TX 77074
713-622-5522
713-995-1499 – fax
wendle1v@flash.net

**Attorneys for Defendant**

**TABLE OF CONTENTS**

TABLE OF CONTENTS..................................................................................................ii

TABLE OF AUTHORITIES ........................................................................................iii

I.      SUMMARY OF ARGUMENT ..........................................................................1

II.     ARGUMENT AND AUTHORITIES .................................................................1

        A.      Governing Principles Applicable to Plaintiff's Proffer of Einhorn's
                Testimony...............................................................................................1

        B.      The Nature of Einhorn's Alleged Expert Testimony Sought to Be Introduced. ...........3

        C.      Grounds Upon Which to Exclude Plaintiff's Expert....................................................3

                1.      Einhorn's report and testimony relates to a cause of action on which
                        summary judgment has been granted..............................................................3

                2.      Einhorn is not qualified and/or did not apply a proper methodology to
                        provide expert opinions..................................................................................5

                3.      Einhorn's testimony is not grounded on sufficient facts or data and is
                        not the product of reliable principles and methods. ......................................8

                        a.      Einhorn relied on the opinions of Plaintiff's counsel, who are
                                not damages or economics experts……………………………    9

                        b.      Einhorn relied on the opinion of another untested and alleged
                                expert………………………………………………………………… 12

                        c.      Einhorn ignored facts in the record and made up other facts. Thus,
                                all of his subjective and untested conclusions should be
                                excluded………………………………………………………….. 13

                        d.      Einhorn's fallacious methodology and speculation are fatal to his
                                report and all his testimony…………………………………… ..16

                4.      Plaintiff Cannot Meet His Burden on Einhorn's Testimony. ........................17

                5.      Einhorn's testimony is also inadmissible under Fed.R.Evid. 403. ...............18

III.    CONCLUSION ..................................................................................................20

CERTIFICATE OF SERVICE .......................................................................................21

# TABLE OF AUTHORITIES

### CASES

*Allison v. McGhan Medical Corp.*,
    184 F.3d 1300 (11th Cir.1999) ................................................................ 5

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
    303 F.3d 256 (2d Cir.2002) ..................................................................... 2

*Camowraps, LLC v. Quantum Digital Ventures LLC*,
    2015 WL 403187 (E.D.La. Jan. 28, 2015) ............................................. 11

*Claar v. Burlington N.R.R.*,
    29 F.3d 499 (9th Cir.1994) ............................................................... 2, 17

*Clark v. Takata Corp.*,
    192 F.3d 750 (7th Cir.1999) .................................................................. 6

*Concord Boat Corp. v. Brunswick Corp.*,
    207 F.3d 1039 (8th Cir.2000) ................................................................ 6

*Cummins v. Lyle Indus.*,
    93 F.3d 362 (7th Cir.1996) .................................................................... 6

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
    509 U.S. 579 (1993) ..................................................................... passim

*E.E.O.C. v. U-Haul Co. of Texas*,
    2005 WL 2860987 (S.D.Tex. 2005) .................................................. 4, 19

*E.I. du Pont de Nemours and Co., Inc. v. Robinson*,
    923 S.W.2d 549 (Tex. 1995) ............................................. 9, 13, 17, 18

*Exxon Pipeline Co. v. Zwahr*,
    88 S.W.3d 623 (Tex. 2002) ............................................................ 9, 13

*First United Fin. Corp. v. U.S. Fid. & Guar. Co.*,
    96 F.3d 135 (5th Cir.1996) ................................................................... 6

*General Electric Co. v. Joiner*,
    522 U.S. 136 (1997) ....................................................................... 6, 18

*Greenwell v. Boatwright*,
    184 F.3d 492 (6th Cir.1999) .......................................................... 17, 19

*Guidroz-Brault v. Mo. Pac. R.R. Co.*,
   254 F.3d 825 (9th Cir. 2001) ............................................... 16

*In re Air Crash at Little Rock Ark.*,
   291 F.3d 503 (8th Cir.2002) ................................................. 6

*In re James Wilson Assocs.*,
   965 F.2d 160 (7th Cir.1992) ................................................ 12

*In re Paoli R.R. Yard PCB Litig.*,
   35 F.3d 717 (3d Cir.1994)................................................. 2, 8

*In re Polypropylene Carpet Antitrust Litig.*,
   93 F.Supp.2d 1348 (N.D.Ga.2000)..................................... 13

*J.B. Hunt Transp., Inc. v. General Motors Corp.*,
   243 F.3d 441 (8th Cir.2001) ................................................. 6

*Kumho Tire Co., Ltd. v. Carmichael*,
   526 U.S. 137 (1999)......................................................... 3, 5

*Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*,
   387 F.Supp.2d 794 (N.D.Ill.2005) ................................. 11, 12

*McLean v. 988011 Ontario, Ltd.*,
   224 F.3d 797 (6th Cir.2000) ............................................... 19

*Moore v. Ashland Chem., Inc.*,
   151 F.3d 269 (5th Cir. 1998) .............................................. 17

*N. Dallas Diagnostic Ctr. v. Dewberry*,
   900 S.W.2d 90 (Tex.App.—Dallas 1995, writ denied) ...... 4, 19

*Navarro v. Fuji Heavy Indus., Ltd.*,
   925 F. Supp. 1323 (N.D. Ill. 1996) ..................................... 17

*Paz v. Brush Engineered Materials, Inc.*,
   555 F.3d 383 (5th Cir. 2009) .............................................. 16

*Pipitone v. Biomatrix, Inc.*,
   288 F.3d 239 (5th Cir.2002). ............................................... 5

*Pomella v. Regency Coach Lines, Ltd.*,
   899 F.Supp. 335 (E.D.Mich.1995)...................................... 19

*Salamone v. Wal–Mart Stores East, LP*,
   2011 WL 2787788 (E.D.Pa. July 15, 2011)........................... 9

*Sheehan v. Daily Racing Form, Inc.*,
104 F.3d 940 (7th Cir.1997)............................................................................ 2

*Smelser v. Norfolk Southern Railway*,
105 F.3d 299 (6th Cir.1997).......................................................................... 2

*Smith v. Rasmussen*,
249 F.3d 755 (8th Cir.2001) .......................................................................... 6

*TK–7 Corp. v. Estate of Barbouti*,
993 F.2d 722 (10th Cir.1993)........................................................................ 13

*U.S. v. Downing*,
753 F.2d 1224 (3rd Cir. 1985) ...................................................................... 18

*United States v. Bonds*,
12 F.3d 540 (6th Cir.1993)............................................................................. 3

*United States v. Bourgeois*,
950 F.2d 980 (5th Cir.1992) .......................................................................... 5

*United States v. Johnson*,
575 F.2d 1347 (5th Cir.1978) ....................................................................... 5

*United States v. Mejia*,
545 F.3d 179 (2d Cir.2008)........................................................................... 12

*United States v. Posado*,
57 F.3d 428 (5th Cir.1995) ............................................................................ 16

*Viterbo v. Dow Chem. Co.*,
826 F.2d 420 (5th Cir. 1987) ........................................................................ 16

*Volkswagen of Am., Inc. v. Ramirez*,
159 S.W.3d 897 (Tex. 2004)......................................................................... 18

*Weisgram v. Marley Company*,
169 F.3d 514 (8th Cir.1999).................................................................... 5, 6

*Young v. Brand Scaffold Servs.*,
2009 WL 4674053 (E.D.Tex. Mar.16, 2009) .............................................. 16

## RULES

FED.R.EVID. 702 ................................................................................... passim

FED.R.EVID. 703 .................................................................................. 11, 12

**DEFENDANT'S MOTION TO EXCLUDE THE REPORT**
**AND TESTIMONY OF MICHAEL EINHORN AND BRIEF IN SUPPORT**

Defendant Broderick Steven "Steve" Harvey ("Defendant" or "Harvey") files this motion to strike and/or exclude the testimony of Michael Einhorn ("Einhorn") and in support thereof shows the Court as follows:

## I.    SUMMARY OF ARGUMENT

To begin with, Einhorn's testimony must be excluded since the crux of his testimony and alleged damages' calculations are based upon claims that this Court dismissed in its Order on the parties' cross-motions for summary judgment.  Further, substantively, Einhorn's testimony does not meet the requirements of FED.R.EVID. 702 and *Daubert* because (1) he has not demonstrated that he is qualified to give expert opinions on matters for which he is being offered; (2) his testimony is not based upon scientific, technical or other specialized knowledge that will assist the trier of fact to understand the evidence or to determine a fact in issue; and (3) it is not based on sufficient facts or data and is not the product of reliable principles and methods he has applied reliably to the facts of the case. Einhorn's proposed testimony should also be excluded pursuant to FED.R.EVID. 403 because consideration of the Einhorn testimony, disguised as expert testimony, will result in confusion of the issues, misleading the jury, and prejudice to Defendant.

## II.    ARGUMENT AND AUTHORITIES

### A.    Governing Principles Applicable to Plaintiff's Proffer of Einhorn's Testimony.

*Daubert* and Federal Rule of Evidence 702 require that trial courts perform a "gate-keeping role" when considering the admissibility of expert testimony. *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579, 597 (1993).  Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in

1

the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED.R.EVID. 702.   The Court's role is two-fold. First, the Court must determine whether the testimony is reliable. See *Daubert*, 509 U.S. at 590. The reliability analysis focuses on whether the reasoning or methodology underlying the alleged expert's testimony is scientifically valid. *Id.*   A district court assessing the admissibility of expert testimony under FED.R.EVID. 702 serves a "gatekeeping" function: "it is charged with 'the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir.2002) (quoting *Daubert* 509 U.S. at 597.   The proponent of the testimony must establish, by a preponderance of the evidence, that the expert's testimony is reliable. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3d Cir.1994). In addition, the Court must consider "whether the experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying" because the former "provides important, objective proof that the research comports with the dictates of good science." *Smelser v. Norfolk Southern Railway*, 105 F.3d 299, 303 (6th Cir.1997).   Another factor that may be considered is "[w]hether the expert has adequately accounted for obvious alternative explanations." FED.R.EVID. 702 advisory committee's note (citing *Claar v. Burlington N.R.R.*, 29 F.3d 499 (9th Cir.1994)). Finally, the court may consider "[w]hether the expert 'is being as careful as he would be in his regular professional work outside his paid litigation consulting.'" FED.R.EVID. 702 advisory committee's note (quoting *Sheehan v. Daily Racing Form, Inc.*, 104 F.3d 940, 942 (7th Cir.1997)). The Supreme Court has emphasized that, in assessing the reliability of expert testimony, whether scientific or otherwise, the trial court may consider one or more of the *Daubert* factors when doing

so will help determine that expert's reliability.  *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 147 (1999).

The second prong of the gate-keeping role requires an analysis by the Court as to whether the expert's reasoning or methodology can be properly applied to the facts at issue, that is, whether the opinion is relevant.  See *Daubert*, 509 U.S. at 591-93. This relevance requirement ensures that there is a "fit" between the testimony and the issue to be resolved by the trial. See *United States v. Bonds*, 12 F.3d 540, 555 (6th Cir.1993).  Thus, an expert's testimony is admissible under Rule 702 only if it is predicated upon a reliable foundation and is relevant.  As explained herein, the testimony sought to be excluded through this motion violates each of the principles discussed above.

**B.    The Nature of Einhorn's Alleged Expert Testimony Sought to Be Introduced.**

On or about July 10, 2015, Plaintiff purportedly served Harvey with a copy of Einhorn's expert report (the "Einhorn Report"). See copy of the Einhorn Report at Def.'s APP 001-010. During Einhorn's deposition, which was taken on November 20, 2015, when asked to provide a summary of his role as a potential expert in this case, Einhorn explained:

> **Q:**    Sir, what do you perceive as your purpose and function in this case?
>
> **A:**    Estimating the damages resulting from tortious interference with rights that Mr. Cooper had to distribute and market videotapes of Steve Harvey's  performances.

Einhorn Depo at 9:9-14 (Def.'s APP 022).  For the reasons explained herein, Harvey asks that the Court exclude Einhorn's report, opinions and testimony.

**C.    Grounds Upon Which to Exclude Plaintiff's Expert.**

> **1.    Einhorn's report and testimony relates to a cause of action on which summary judgment has been granted.**

As discussed above, Einhorn testified that he was employed for the purposes of "estimating the damages from <u>tortious interference</u> with rights…." Einhorn Depo at 9:9-14

3

(Def.'s APP 022) (emphasis added). However, this Court granted summary judgment in Harvey's favor on Cooper's tortious interference with business relations and prospective business relations claims. See Dkt. No. 171. Nevertheless, in his damages analysis, Einhorn makes clear that his damages calculations are based on the same alleged "prospective business relations" document on which summary judgment was granted. For instance, Einhorn's report provides,

> 6.1) Per the terms of the Distribution Agreement entered in January, 2014 between Joseph Cooper and Music Video Distributors, Inc., Mr. Cooper was to receive a royalty of 75 percent of all sales of distributed works; the royalty base was wholesale revenues less production costs incurred by MVD (at §3a).
>
> ******
>
> 6.3) Per the terms of the contract, MVD was permitted to deduct as a cost an amount of no more than $1000 to recover costs of authoring and encoding (at §5). Less a $1000 deduction, net profits from the sale of Mr. Cooper's first DVD are $757,819.
>
> ******
>
> *6.8) As I believe that the distribution contract implicated in total a collection of five DVDs that were to be derived from Mr. Cooper's videotapes, I estimate that Mr. Cooper may have lost the opportunity to earn in the area of $2,671.310.*

(Def.'s APP 008). Thus, as is demonstrated by his written report, Einhorn's testimony centers upon claims that the Court dismissed in its Order on the parties' cross-motions for summary judgment. *See* Dkt. No. 171. As such, Einhorn's testimony must be excluded under Fed.R.Evid. 403 since it has no probative value, and is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. *Daubert*, 509 U.S. at 595 ("Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses."); s*ee also, E.E.O.C. v. U-Haul Co. of Texas*, 2005 WL 2860987 (S.D.Tex. 2005); *N. Dallas Diagnostic Ctr. v. Dewberry*, 900 S.W.2d 90, 94 (Tex.App.—Dallas 1995, writ denied) ("courts should exclude . . . evidence [when] the expert's opinion would be more likely to prejudice or confuse than to assist

4

the trier of fact."). Accordingly, Einhorn's subjective conclusions, based on a previously dismissed cause of action, do not pass muster.

### 2. Einhorn is not qualified and/or did not apply a proper methodology to provide expert opinions.

Arguing in the alternative, if Einhorn is not precluded from testifying for the reasons identified above, he should be precluded based on his lack of qualifications and application of a faulty methodology. Before certifying an expert and admitting his or her testimony, a district court must ensure that the requirements of Federal Rule of Evidence 702 have been met. See *Daubert* 509 U.S. at 592–93. The Fifth Circuit holds that "[t]o qualify as an expert, 'the witness must have such knowledge or experience in his field or calling as to make it appear that his opinion or inference will probably aid the trier in its search for truth.'" *United States v. Bourgeois*, 950 F.2d 980, 987 (5th Cir.1992) (second alteration in original) (quoting *United States v. Johnson*, 575 F.2d 1347, 1361 (5th Cir.1978)). As a rule, expert testimony must be based on the expert's specialized knowledge, training, experience, and first-hand observation, while supported by solid evidence in the scientific community." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 247 (5th Cir.2002). Ultimately, the trial court's duty is to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire* 526 U.S. 137. Furthermore, although a witness may be qualified as an expert in one area of expertise, the expert may be precluded from offering opinions beyond that area of expertise or which are not founded on a reliable methodology. See, e.g*., Kumho Tire*, 526 U.S. at 154-55; *Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1317-19 (11th Cir.1999); *Weisgram v. Marley Company*, 169 F.3d 514, 518 (8th Cir.1999); *Cummins v. Lyle Indus.*, 93 F.3d 362, 371 (7th

Cir.1996).  Nor may an expert go beyond the scope of his expertise in giving his opinion. *First United Fin. Corp. v. U.S. Fid. & Guar. Co.*, 96 F.3d 135, 136 (5th Cir.1996).

As explained herein, there is nothing to indicate that Einhorn is qualified to provide, or has adequate scientific basis to support, his conclusory opinions.  *See Smith v. Rasmussen*, 249 F.3d 755, 758-59 (8th Cir.2001). As the Supreme Court held in *General Electric Co. v. Joiner*, 522 U.S. 136 (1997):

> [N]othing either in Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.
>
> *Joiner*, 522 U.S. at 146. *See also J.B. Hunt Transp., Inc. v. General Motors Corp.*, 243

F.3d 441, 444 (8th Cir.2001)("Expert testimony that is speculative is not competent proof and contributes nothing to a legally sufficient evidentiary basis.")(citing *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1057 (8th Cir.2000); *In re Air Crash at Little Rock Ark.*, 291 F.3d 503, 514 (8th Cir.2002)(there must be adequate nexus between scientific theory and subject of opinion); *Clark v. Takata Corp.*, 192 F.3d 750, 756-57 (7th Cir.1999); *Weisgram v. Marley Co.*, 169 F.3d 514, 521 (8th Cir.1999) (expert testimony not reliable where there is lack of nexus between theory and conclusion).

To begin with, Einhorn admits in his report that he is aware that an expert must use proper procedures and sources, wherein he states,

> Economics is the social science that seeks to describe the factors that determine the production, distribution, and consumption of goods and services. <u>When doing an economic evaluation, it is necessary to utilize accepted procedures and sources that are deemed reliable per the techniques of the economics profession.</u>

Einhorn Report at p. 9 (Def.'s APP 009) (emphasis added). Notably, Einhorn has never been peer-reviewed and has never written books or articles on damages calculations in matters involving copyrightable subject matter.  In his deposition notice *duces tecum* (Def.'s APP 011-

018), Einhorn was asked to bring the following documents, among others, to his deposition so

that he could be questioned regarding his methodology and overall work in this case:

> 2.      All publications that you have authored or co-authored within the
>         last ten (10) years.
>
> 3.      All articles, papers, etc. that you have written or co-written on the
>         subjects of damages calculations, accounting, forensics, or
>         economics that have been peer-reviewed.
>
> 4.      A list of (a) any and all suits (by title, court and number) in which
>         you were deposed or testified as to matters in the field of your
>         expertise during the past four (4) years and (b) the attorneys who
>         engaged you in each suit.
>
> 5.      Up to four textbooks, course books, seminar papers, articles,
>         surveys, or other written composition, if any, that best reflect the
>         methodology you employed in rendering your opinions in this
>         matter.
>
> 6.      Up to four textbooks, course books, seminar papers, articles,
>         surveys, or other written composition, if any, that best reflect the
>         methodology used in the industry to calculate damages in lawsuits.
>
> 7.      All books, standards, treatises or studies that were relied upon or
>         referred to in conducting your analysis, calculations and
>         conclusions in this case.

During his deposition, however, when pressed to identify any source from which this

Court can ascertain the appropriateness of the methodology he supposedly used, Einhorn

testified,

> **Q:**     So if the court wanted to know of a textbook or course book or
>            seminar paper that reflects the methodology you used, you would
>            not be able to identify one for the court; is that correct?
>
> **A:**     I would not be able at this point to identify one for the court.

Einhorn Depo at 21:14-19 (Def.'s APP 024).  Even later in his deposition, Einhorn was unable to

identify a single source for his methodology,

> **Q:**     So you have no book, paper, article or any kind of written
>            composition that you can show us that reflects the methodology
>            that you used in this case; is that correct?
>
> **A:**     From my memory, correct.

7

****

**Q:** That wasn't my question.  Let me ask you:  Are you aware that when a court looks at an expert, a court looks to see whether the expert uses a methodology that is accepted by experts in the field?  Are you aware of that?

**A:** Correct.

**Q:** So my question to you is: Can you show the court any documentation that reflects the methodology that you used?

**A:** I'm having a difficult time understanding this.

**Q:** Okay.  Now, do you believe that that methodology is reflected in some paper or documentation that other experts prepared or used?

**A:** I do.

**Q:** And you can't identify any of those; is that right?

**A:** I cannot at this moment recall exactly papers and reports that I can source in a professional citation manner that would accommodate that last request.

Einhorn Depo at 22:22 – 24:10 (Def.'s APP 025-027).  Thus, although Einhorn was asked to bring information to his deposition that would support the correctness of the methodology he allegedly employed, he was unable to do so. That is because his so-called "methodology" is unsupported. As demonstrated further in his Report and deposition, Einhorn also did not use a complete, reliable or acceptable methodology that other experts would use.  The record is also clear that even if Einhorn does possess FRE 702 expertise in some areas, he is not an expert in all areas in which he purports to provide testimony.  Thus, Plaintiff has not established, and cannot establish, that Einhorn is qualified to perform in this matter.  Nor can Plaintiff identify a methodology that Einhorn applied.  For these reasons, Einhorn's testimony and his report must be excluded.

### 3.   Einhorn's testimony is not grounded on sufficient facts or data and is not the product of reliable principles and methods.

An expert's testimony must "fit" the facts of the case.  *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742–43 (3d Cir.1994).  To assess reliability of expert testimony, courts consider whether the expert opinion is based on methods and procedures of science rather than the

expert's subjective belief or unsupported speculation. *In re Paoli*, 35 F.3d at 742. Factors guiding this analysis include: (1) whether the method features a testable hypothesis; (2) whether the method has been subjected to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the technique is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the expert's qualifications to testify based on the methodology; and (8) the method's history of non-judicial uses. *Id*. at 742 n. 7; *see also Salamone v. Wal–Mart Stores East, LP*, 2011 WL 2787788, at *1 (E.D.Pa. July 15, 2011). Einhorn's testimony fails each of these elements or analyses. Expert opinions are admissible only if they are the product of reliable principles and methods. FED.R.EVID. 702 advisory committee's note; *Daubert*, 509 U.S. at 591-95. The Texas Supreme Court has also held "expert testimony is unreliable if it is not grounded 'in the methods and procedures of science' and is no more than 'subjective belief or unsupported speculation.'" *Exxon Pipeline Co. v. Zwahr*, 88 S.W.3d 623, 629 (Tex. 2002) (quoting *Robinson*, 923 S.W.2d at 556 (quoting *Daubert*, 509 U.S. at 590)).

Much of Einhorn's testimony ignores undisputed facts, is neither relevant nor reliable, relies on the work and opinions of others, was prepared strictly for this litigation, and is tailored solely to benefit Plaintiff in this litigation. In addition, Einhorn's Report reflects a demonstrably flawed methodology in his supposed analysis.

> **a.      Einhorn relied on the opinions of Plaintiff's counsel, who are not damages or economics experts.**

During Einhorn's deposition, he was presented with copies of various drafts of his report. He was questioned whether he had prepared the Einhorn Report himself, and revealed that much of the substance in his Report was actually prepared by Plaintiff's counsel, not the expert. See, e.g. Einhorn Depo at 57:16 – 70:3 (Def.'s APP 028-041). This fact alone requires that Einhorn

be precluded from testifying.  Indeed, from just a small sampling of Einhorn's testimony, it is clear that his testimony and conclusions are the product of Plaintiff's counsel, and is not reliable or admissible:

> **Q:**   So on Exhibit 8, Mr. Weston, Mr. Cooper's attorney, has taken your report, and he's gone through, and on Page 2 he has made some substantial edits to it, hasn't he?
>
> **A:**   He has -- yes.  He has made some – offered some ideas.
>
> **Q:**   Well, these are ideas that you accepted??
>
> **A:**   I accepted, yes.[1]
>
> ****
>
> **Q:**   Correct.  You didn't change the substance.  You just changed -- maybe he didn't have the proper sentence structure
>
> **A:**   I'll accept that -- I'll accept that I accepted the substance.  I thought these were good ideas.[2]
>
> ****
>
> **Q:**   Well, let me ask you -- let me let you look at this other exhibit, and then you tell me what's true and what's not.   Let me -- I'm handing you a copy of what I have marked as Exhibit 11.  Do you see Exhibit 11?  It's an email between you and Mr. Cooper's lawyers, correct?
>
> **A:**   Yes.
>
> **Q:**   And you see -- starting at the bottom of Page 2, you see where on July 9th, 2015 at 2:40, you tell Mr. Weston that you have "basically accepted all your changes." Do you see that?
>
> **A:**   Okay.
>
> **Q:**   And you see -- starting at the bottom of Page 2, you see where on July 9th, 2015 at 2:40, you tell Mr. Weston that you have "basically accepted all your changes." Do you see that?
>
> **A:**   Okay.
>
> **Q:**   So Mr. Weston provided some changes to you, and you told him the day before the report was due that you basically accepted all of Mr. Cooper's attorneys' changes, correct?
>
> **A:**   Okay.[3]

---

[1] Einhorn Depo at 58:4-11 (Def's. APP 029).

[2] Einhorn Depo at 61:22 – 62:2 (Def's. APP 032-033).

****

**Q:**   And do you see further on 1.12 it says, "In the area of entertainment, significant factors that may impact on economic performance cannot be measured to the required for use and economic rejection." Do you see that?

**A:**   I do.

**Q:**   And that language comes from Mr. Cooper's attorneys, correct?

**A:**   Correct.[4]

****

**Q:**   Well, sir, my question is simply whether -- well, let me ask you this. Do you know whether Mr. Weston has an economic background?

**A:**   No.  I have an economics background.

**Q:**   Do you know whether he has one?

**A:**   No.  I presume that he doesn't.[5]

It was improper for Einhorn to rely on the opinions of Plaintiff's counsel.  *See e.g. Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*, 387 F.Supp.2d 794, 807 (N.D.Ill.2005), where the court determined that the expert's testimony violated Rule 703 because the numbers he relied upon to determine economic loss "came from the defendants' employees, on whom [the expert] uncritically relied." *See also, Camowraps, LLC v. Quantum Digital Ventures LLC*, 2015 WL 403187 (E.D.La. Jan. 28, 2015)(expert was not permitted to offer opinion testimony based on the intellectual property treatises provided to her by plaintiff's counsel).  Since most of his ideas and opinions, as well as the "methodology" he applied, were provided to him by Plaintiff's counsel, Einhorn's report and testimony must be excluded in total.

---

[3] Einhorn Depo at 63:24 – 64:14 (Def's. APP 034-035).

[4] Einhorn Depo at 66:11-19 (Def's. APP 037).

[5] Einhorn Depo at 67:20-25 (Def's. APP 038).

**b.     Einhorn relied on the opinion of another untested and alleged expert.**

In the Einhorn Report, as well as during his deposition, Einhorn refers to information he relied on from Nash Information Services ("Nash"). However, Einhorn admits that he has never used Nash before and heard about Nash only from Plaintiff's counsel.  Einhorn Depo at 13:6-19 (Def.'s APP 023). Einhorn also concedes that he relied (blindly) on Nash's information, that he does not know if Nash has ever been accepted as an expert, that he did nothing to investigate Nash, and that Einhorn did no independent investigation of the Nash information himself. Einhorn Depo at 75:25 – 78:16 (Def.'s APP 042-045).  Therefore, the Nash information is not only unreliable, it is irrelevant and impermissible hearsay. In *United States v. Mejia*, 545 F.3d 179, 197 (2d Cir.2008), the court made clear that experts may not simply transmit hearsay to the jury. Specifically, "the expert must form his own opinions by applying his extensive experience and a reliable methodology to the inadmissible materials." *Id*. (internal quotation marks omitted). Otherwise the expert may simply parrot impermissible hearsay evidence, thereby allowing a party to circumvent the rules against hearsay. *Id*.

Indeed, courts serve a gate-keeping function with respect to FED.R.EVID. 703 opinions to ensure "the expert isn't being used as a vehicle for circumventing the rules of evidence." *In re James Wilson Assocs*., 965 F.2d 160, 173 (7th Cir.1992). Rule 703 "was not intended to abolish the hearsay rule and to allow a witness, under the guise of giving expert testimony, to in effect become the mouthpiece of the witnesses on whose statements or opinions the expert purports to base his opinion." *Loeffel*, 387 F.Supp.2d at 808. The rule "was never intended to allow oblique evasions of the hearsay rule." *Id*.  Einhorn's failure to undertake any investigation or analysis of Nash or Nash's alleged findings also militate in favor of denying Einhorn's opinions. Experts may not simply repeat or adopt the findings of other experts without investigating them. *In re*

12

*Polypropylene Carpet Antitrust Litig.*, 93 F.Supp.2d 1348 (N.D.Ga.2000) (citing *In re TMI Litig.*, 193 F.3d 613, 715–16 (3d Cir.1999) (finding blind reliance by expert on other expert opinions demonstrates flawed methodology under *Daubert* ); *TK–7 Corp. v. Estate of Barbouti*, 993 F.2d 722, 732–33 (10th Cir.1993) (excluding expert opinion relying on another expert's report because witness failed to demonstrate a basis for concluding report was reliable and showed no familiarity with methods and reasons underlying the hearsay report).

In sum, Einhorn has not (1) identified a recognizable methodology showing that the Nash information is the type of information that experts would reasonably rely upon in forming opinions such as those formed in the Einhorn Report; (2) demonstrated that the Nash information is reliable; and (3) identified and proven in the Einhorn Report that Nash's specific findings are critical to Einhorn's opinions.  Nonetheless, even if he could satisfy these prerequisites, Einhorn should be ordered to avoid repeating the Nash information, as well as commenting on the merits or quality of the Nash information.  In other words, the Nash information is irrelevant, unreliable, hearsay, and unduly prejudicial.

> **c.  Einhorn ignored facts in the record and made up other facts. Thus, all of his subjective and untested conclusions should be excluded.**

The Texas Supreme Court has held "expert testimony is unreliable if it is not grounded 'in the methods and procedures of science' and is no more than 'subjective belief or unsupported speculation.'" *Exxon Pipeline Co. v. Zwahr*, 88 S.W.3d 623, 629 (Tex. 2002) (quoting *Robinson*, 923 S.W.2d at 556 (quoting *Daubert*, 509 U.S. at 590)).  In this case, Einhorn has provided several statements that are transparently inconsistent with the actual facts, and are subjective and unreliable.  For instance, in his report, Einhorn opined:

6.1.  Per the terms of the Distribution Agreement entered in January, 2014 between Joseph Cooper and Music Video Distributors, Inc., Mr. Cooper was to

receive a royalty of 75 percent of all sales of distributed works; the royalty base was wholesale revenues less production costs incurred by MVD (at §3a).

However, when Einhorn was questioned about the basis for this opinion, he acknowledged that he is "assuming" the contract was entered into in 2014. Einhorn Depo at 91:11-25 (Def.'s APP 046). Here, the evidence demonstrates that Plaintiff was merely negotiating a possible licensing and distribution agreement with Music Video Distributors ("MVD"). In his Complaint, Plaintiff alleges that he had "negotiated and was prepared [to] execute" an agreement with MVD. On the other hand, MVD's testimony does not support this statement. In fact, Music Video Distributors' Chief Operating Officer, Ed Seaman, testified that when he sent a working draft potential agreement to Plaintiff, he "hadn't seen his alleged ownership when I sent that proposal." Seaman Depo at 24:11-17 (Def.'s APP 062). Later during the early stages of the negotiations, Seaman asked Plaintiff for proof that he owned the rights to Harvey's videoed stage performances. Seaman Depo at 18:1-19 (Def.'s APP 057). Once Plaintiff presented Seaman with his alleged proof of ownership, Seaman testified that Plaintiff's so-called proof did not seem rock solid and that it gave him pause in terms of Plaintiff's "claimed ownership." Seaman Depo at 20:18 – 21:8 (Def.'s APP 059-060). Actually, Seaman testified further that he was uncomfortable with what Plaintiff was presenting as so-called proof of his alleged ownership and that "it didn't seem right." Seaman Depo at 30:23 – 31:10 (Def.'s APP 063-064).

In addition, Plaintiff has no evidence with which to establish that any conduct from Harvey's counsel "prevented the relationship from occurring." When Plaintiff's counsel asked MVD's COO if the company would have entered into the agreement if the company's attorney had not spoken to Harvey's counsel, he replied,

It's hard to say. I can't really answer that fairly. I know that I didn't feel good about things. So, you know, typically if I don't feel good about something, I don't do it. So I can't answer that question fairly.

Seaman Depo at 23:24 – 24:9 (Def.'s APP 061-062). This and other evidence demonstrates as a matter of law that no reasonable probability exists that, without the one telephone call between Harvey's attorney and MVD's attorney, MVD would have agreed to proceed to do business with Plaintiff. Therefore, it is inconsistent with the evidence for Einhorn to conclude that a contract has been executed. Einhorn also acknowledges that if there were no such contract or that the alleged contract was not impacted by Harvey's action, it would be improper to use it to measure damages. Einhorn Depo at 92:7-13 (Def.'s APP 047). Based on these admissions and the applicable law, the Court should preclude Einhorn from giving testimony regarding an alleged contract and any damages that would result from this fictional contract. In another section of his report, Einhorn notes:

> 6.8.  *As I believe that the distribution contract implicated in total a collection of five DVDs that were to be derived from Mr. Cooper's videotapes, I estimate that Mr. Cooper may have lost the opportunity to earn in the area of $2,671.310.*

When asked about this statement, Einhorn again stated that he relied solely on Plaintiff's counsel for this statement and admits that he did not see this provision in the contract and did not contact the contracting parties to determine if this was a true statement. Einhorn Depo at 96:21 – 97:20 (Def. APP 049). Einhorn makes these unproved statements despite having undertaken no independent investigation to determine the veracity of these statements. Under no circumstances should Einhorn be permitted to provide opinions or calculations related to an alleged five DVD deal or five years of damages. More importantly, this Court has already ruled that Plaintiff is not entitled to a cause of action for tortious interference of the very "alleged MVD agreement" that Einhorn used to do his damages computations.

Indeed, the record is clear that Einhorn has no methodology, scientific or otherwise, to speak of, in support of his opinions. His statements, therefore, are only his subjective conclusions. *See Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 421-22 (5th Cir. 1987) ("it is not so simply because 'an expert says it is so ...; if an expert brings to the court 'little more than his credentials and a subjective opinion,' his opinion amounts to no evidence"). Although Rule 702 does not require absolute certainty, it does mandate that the proffered knowledge be based on "good grounds" and that the testimony is "more than speculative belief or unsupported speculation." *United States v. Posado*, 57 F.3d 428, 433 (5th Cir.1995)(citing *Daubert*, 509 U.S. at 589-90). See also FED.R EVID. 702 advisory committee's note ("The trial judge in all cases of proffered expert testimony must find that it is properly grounded, well-reasoned, and not speculative before it can be admitted."). Because Einhorn's "methodology" and "opinions" consist only of arbitrary, subjective, and unsupported conclusions, it is unreliable, and his testimony should be excluded in its entirety.

> **d.     Einhorn's fallacious methodology and speculation are fatal to his report and all his testimony.**

Einhorn's failures mandate that his testimony be excluded since his calculations are not sufficiently tied to the facts or supported by other evidence in the record. *See Daubert*, 509 U.S. at 591; *Young v. Brand Scaffold Servs.*, 2009 WL 4674053 (E.D.Tex. Mar.16, 2009); *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 388 (5th Cir. 2009) (holding that "where an expert's opinion is based on insufficient information, the analysis is unreliable"). The data and methodology that Einhorn relied upon in determining damages are insufficient and, therefore, excludable. An expert opinion is properly excluded where it relies on an assumption that is unsupported by evidence in the record and is not sufficiently founded on facts. *See Guidroz-Brault v. Mo. Pac. R.R. Co.*, 254 F.3d 825, 829-31 (9th Cir. 2001); *Greenwell v. Boatwright*, 184

16

F.3d 492, 497 (6th Cir.1999) ("Expert testimony, however, is inadmissible when the facts upon which the expert bases his testimony contradict the evidence). Considering that Einhorn's opinions are all speculative and not grounded in actual facts, the testimony must be excluded.

### 4.      Plaintiff Cannot Meet His Burden on Einhorn's Testimony.

The burden is on the proponent of the expert testimony to demonstrate that the expert witness has adhered to the standards set forth in *Daubert*. *See Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998). An expert's *ipse dixit* has repeatedly been found to be inherently unreliable under *Daubert*. *See, e.g.*, *Viterbo*, 826 F.2d at 421. An expert's opinions must be supported by data; his bare opinion will not suffice. "Experts cannot float their conclusions on cushions of air; they must rest those conclusions upon foundations built from reliable scientific explanation." *Navarro v. Fuji Heavy Indus., Ltd.*, 925 F. Supp. 1323, 1328 (N.D. Ill. 1996), *aff'd*, 117 F.3d 1027 (7th Cir.), *cert. denied*, 1185 S.Ct. 600 (1997). Scientific knowledge requires more than guesswork, it must be grounded in a body of known facts or a body of ideas inferred from such facts; otherwise, reliability is lost and the trier of fact is not assisted by what may be no more than speculation or subjective belief. *Posado*, 57 F.3d at 433; *Claar v. Burlington N. R.R. Co*., 29 F.3d 499 (9th Cir. 1994); *E.I. du Pont de Nemours and Co., Inc. v. Robinson*, 923 S.W.2d 549, 556 (Tex. 1995); *Onweuteaka v. Gill*, 908 S.W.2d 276, 283 (Tex. App.—Houston [1st Dist.] 1995, no writ). As discussed herein, Einhorn cannot identify a proper methodology he utilized.   Additionally, the record demonstrates that Einhorn's report and testimony depends completely on the unreliable and unsupported work of others, none of whom has been shown to be qualified.   In other words, Einhorn's opinions float only on cushions of air.   And in these situations, it would be improper to admit the testimony.

Indeed, expert testimony is unreliable when "there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). In *Joiner*, the United States Supreme Court held the district court did not abuse its discretion in excluding expert testimony on the basis that it was not supported by the underlying data on which the expert relied. *Id*. at 142. The data upon which an expert relies must be closely connected to his opinion:

> [N]othing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the ipse dixit of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.

*Id*. (emphasis added).  To be relevant, the proposed expert testimony must be sufficiently tied to the facts of the case such that it will aid the jury in resolving a factual dispute. *Robinson*, 923 S.W.2d at 556 (quoting *U.S. v. Downing*, 753 F.2d 1224, 1242 (3rd Cir. 1985)); *see also Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 905 (Tex. 2004) (applying the "analytical gap" test to scientific testimony and excluding expert testimony because there was no explanation of how the data relied upon supported the conclusion reached). In other words, when the underlying data on which the expert relies does not actually support the expert's opinions, those opinions are inherently unreliable. Such is the case with Einhorn's conclusory and speculative opinions.

## 5. Einhorn's testimony is also inadmissible under FED.R.EVID. 403.

Einhorn's purported expert testimony should be excluded also because its probative value, if any, is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. FED.R.EVID. 403; *Daubert*, 509 U.S. at 595 ("Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it.  Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the

18

present rules exercises more control over experts than over lay witnesses."); s*ee also, E.E.O.C. v. U-Haul Co. of Texas*, 2005 WL 2860987 (S.D.Tex. 2005); *N. Dallas Diagnostic Ctr. v. Dewberry*, 900 S.W.2d 90, 94 (Tex.App.—Dallas 1995, writ denied) ("courts should exclude . . . evidence [when] the expert's opinion would be more likely to prejudice or confuse than to assist the trier of fact.").  A review of the Einhorn Report shows that it contains subjective conclusions that have no basis in fact.

Einhorn's strained attempt to maximize the alleged damages calculation clearly evinces that his testimony is specially tailored to suit Plaintiff's litigation strategy of maximizing damages, without resort to the true facts.  *See McLean* 224 F.3d at 800-01 ("[A]n expert's opinion must be supported by more than subjective belief and unsupported speculation and should be supported by good grounds, based on what is known.") (quoting *Pomella v. Regency Coach Lines, Ltd*., 899 F.Supp. 335, 342 (E.D.Mich.1995)).  An expert opinion is properly excluded where it relies on an assumption that is unsupported by evidence in the record and is not sufficiently founded on facts. *See Guidroz-Brault,* 254 F.3d at 829-31; *Greenwell,* 184 F.3d at 497 ("Expert testimony, however, is inadmissible when the facts upon which the expert bases his testimony contradict the evidence.").

Einhorn's baseless and subjective conclusions and pronouncements should not be labeled as "expert opinions," either because he does not hold the expertise he professes to possess, his opinions are neither relevant nor reliable, his opinions are not based on accepted accounting or economic principles, his opinions are biased, and/or his testimony would serve only to confuse and mislead a jury that his conclusory statements are supposedly expert opinions.

### III.      <u>CONCLUSION</u>

Permitting Einhorn to testify using the previously excluded MVD proposal would be improper.  Similarly, allowing his testimony without him having applied a proper methodology in his work and without having considered all relevant evidence would cause severe prejudice to Harvey.  It is also clear that Einhorn is ether not qualified or simply chose not to utilize a methodology used by other experts in the field.  Harvey therefore requests that the Court strike the Einhorn Report and accompanying testimony, not consider the same as evidence for any purpose, and grant Harvey such other and further relief, in law or in equity, to which Harvey may be entitled.

Respectfully Submitted,


/s/ Aubrey "Nick" Pittman
AUBREY "NICK" PITTMAN
State Bar No. 16049750

THE PITTMAN LAW FIRM, P.C.
100 Crescent Court, Suite 700
Dallas, Texas 75201-2112
214-459-3454
214-853-5912 – fax
pittman@thepittmanlawfirm.com

/s/Wendle Van Smith
WENDLE VAN SMITH
State Bar No. 18701400

ANDERSON AND SMITH
7322 Southwest Frwy, Suite 2010
Houston, TX 77074
713-622-5522
713-995-1499 – fax
wendle1v@flash.net

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 18, 2016, the foregoing pleading was filed with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to all attorneys of record who have consented in writing to accept this Notice as service of documents by electronic means.


/s/Wendle Van Smith
WENDLE VAN SMITH